## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BRANDON L. JOHNSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **CHEROKEE COUNTY, KANSAS,** | ) | |
| **by and through THE BOARD OF COUNTY** | ) | |
| **COMMISSIONERS OF THE COUNTY OF** | ) | |
| **CHEROKEE, KANSAS,** | ) | |
| | ) | |
| **Serve:** | ) | |
| **Rodney D. Edmondson** | ) | |
| **Cherokee County Clerk** | ) | |
| **110 W. Maple** | ) | |
| **Columbus, Kansas 66725,** | ) | |
| | ) | |
| **DAVID M. GROVES, Individually,** | ) | |
| | ) | |
| **Serve:** | ) | |
| **David M. Groves** | ) | |
| **Cherokee County Sheriff** | ) | |
| **915 E. Country Road** | ) | |
| **Columbus, Kansas 66725,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

COMES NOW plaintiff Brandon L. Johnson, by and through the undersigned counsel, pursuant to the Federal Rules of Civil Procedure, and for his complaint against defendants, Cherokee County, Kansas, by and through the Board of County Commissioners of the County of Cherokee, Kansas, and David M. Groves, individually, states and alleges as follows:

### <u>Parties</u>

1.      Plaintiff Brandon L. Johnson is an individual and resident of the State of Kansas, residing at 22 Locust Drive, Parsons, Kansas 67357.

{0204509.DOCX}

2.      Defendant Cherokee County, Kansas (hereinafter, "County") is a Kansas county organized and existing under the laws of the State of Kansas, pursuant to K.S.A. § 18-111.  The County acts by and through the Board of County Commissioners of the County of Cherokee, Kansas (hereinafter, "Board"), located at 110 W. Maple, Columbus, Kansas 66725.  The Board is, on information and belief, a body corporate and politic, organized and existing under the laws of the State of Kansas, pursuant to K.S.A. § 19-101, *et seq.*  Pursuant to K.S.A. §§ 19-103 and 19-105, the powers of the County are exercised by the Board and the Board shall be named in all suits or proceedings brought against the County.  The County, by and through the Board, may be served by serving Rodney D. Edmondson, Cherokee County Clerk, 110 W. Maple, Columbus, Kansas 66725.

3.      Defendant David M. Groves (hereinafter, "Sheriff Groves") is or was, at all relevant times, the duly-elected sheriff of the County.  On information and belief, Sheriff Groves and the other individuals described in this complaint were, at all relevant times, agents, employees, and/or servants of the County, such that it is liable for their wrongful acts, as hereinafter described and as permitted by federal law.  Sheriff Groves may be served personally at the Cherokee County Sheriff's Office, located at 915 E. Country Road, Columbus, Kansas 66725.

## Jurisdiction

4.      This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981 (as amended by the Civil Rights Act of 1991); and the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

5.      This court has jurisdiction of this action under 28 U.S.C. § 1331.

6.      Venue is proper under 28 U.S.C. § 1391 in that the parties reside and the cause of action arose in the District of Kansas.

## Administrative Proceedings

7.      On December 18, 2015, Mr. Johnson filed a complaint of discrimination with the Kansas Human Rights Commission ("KHRC"), Case No. 38365-16, alleging racial discrimination against the County, based substantially upon the facts set forth below, under both the Kansas Act Against Discrimination and Title VII.

8.      On information and belief, pursuant to the "Worksharing Agreement" executed between the KHRC and the U.S. Equal Employment Opportunity Commission ("EEOC"), Mr. Johnson's complaint became dual-filed with the EEOC following its receipt by the KHRC on December 18, 2015.  The EEOC thereafter assigned Mr. Johnson's complaint a charge number of 28D-2016-00141.

9.      On July 26, 2017, Mr. Johnson, by and through counsel, sent a letter to the EEOC requesting the issuance of a Right-to-Sue letter in reference to his complaint.

10.      On August 9, 2017, the EEOC mailed Mr. Johnson the above-requested Right-to-Sue letter, a copy of which is attached to the present complaint as "Exhibit A."

11.      Mr. Johnson has exhausted his administrative remedies prior to bringing his claim for racial discrimination under Title VII.

## Facts Common to All Counts

12.      On or about March 28, 2013, Mr. Johnson began working at the Cherokee County Sheriff's Office ("Sheriff's Office").  As described more fully below, defendants unlawfully terminated Mr. Johnson from the Sheriff's Office on June 25, 2015.

13.      During the majority of his tenure at the Sheriff's Office, Mr. Johnson worked full time as a patrol deputy, making approximately $14.00 per hour at the time of his unlawful discharge.  He also had benefits including health insurance, life insurance and a retirement plan.

{0204509.DOCX}

14.     Though Mr. Johnson worked at the Sheriff's Office, at all relevant times, the County technically employed and paid him.  On information and belief, at all relevant times, the County employed (and continues to employ) 15 or more persons.

15.     Mr. Johnson is of mixed race.  His ancestry is both African-American and Caucasian, although, physically, Mr. Johnson has dark hair, dark eyes, and dark skin.

16.     Since 2009, David M. Groves has served as the Cherokee County Sheriff.  During Mr. Johnson's tenure at the Sheriff's Office, Chief Deputy Shane Gibson served as Mr. Johnson's direct supervisor, to whom Mr. Johnson reported.  Chief Deputy Gibson in turn reported to Sheriff Groves.

17.     Pursuant to K.S.A. § 19-805(d), any personnel action taken by Sheriff Groves is and was subject to the "[p]ersonnel policies and procedures established by the [Board] for all county employees other than elected officials," and "any pay plan established by the [Board] for all county employees other than elected officials."  Under the above-quoted statutes, at all relevant times, Sheriff Groves had final policymaking authority, such that the County is directly subject to liability for the wrongful acts hereinafter described.

18.     Sheriff Groves and others at the Sheriff's Office knew of Mr. Johnson's mixed race status, as he had told deputies that he had experienced racial discrimination at a previous law enforcement employer.

19.     During his entire tenure at the Sheriff's Office, Mr. Johnson received only one formal written reprimand (on September 5, 2014).  Specifically, Chief Deputy Gibson reprimanded Mr. Johnson for allegedly speeding in his patrol car to the scene of an emergency—a suicidal individual armed with a gun who lived across the street from Riverton Grade School.

20.     On numerous occasions, Chief Deputy Gibson directed foul language and threats at Mr. Johnson during his tenure at the Sheriff's Office.  On information and belief, Chief Deputy Gibson mistreated and discriminated against Mr. Johnson because of his mixed race status.  When Mr. Johnson tried to report Chief Deputy Gibson's misconduct to Sheriff Groves, Sheriff Groves refused to hear him or do anything about it.  Sheriff Groves told Mr. Johnson that he didn't like "tattletales," explaining that "they won't work here."

21.     The Sheriff's Office has a history of white deputies engaging in a pattern and practice of racial discrimination against African-American or mixed race deputies.  On one occasion, Dean Kidd, a white deputy, directed repeated racial jokes and slurs at another mixed race deputy.  The mixed race deputy told Deputy Kidd to stop but Deputy Kidd refused to do so.  Enraged, the mixed race deputy then tased (i.e., with a Taser gun) Deputy Kidd, rendering him temporarily incapacitated.  This event, which predated Mr. Johnson's employment, was well known to Sheriff Groves and others at the Sheriff's Office.  Despite the incident, the County, by and through the Sheriff's Office, continued to employ Deputy Kidd, who then directed his discriminatory behavior at Mr. Johnson once Mr. Johnson became employed at the Sheriff's Office.

22.     Deputy Kidd began harassing Mr. Johnson with racial jokes.  He also called Mr. Johnson "boy" and told him to pick up trash "after the white folk because isn't that what your kind does?"  He continued with such behavior until Mr. Johnson's unlawful termination.  On information and belief, one or more other deputies at the Sheriff's Office engaged in similar behavior with Mr. Johnson.

23.     In early 2015, Deputy Kidd applied for a part-time position with the nearby Columbus Police Department.  In evaluating Deputy Kidd's suitability for employment, the

Columbus police chief called Mr. Johnson to inquire about Kidd's workplace behavior because, on information and belief, the police chief was already aware of the above-described tasing incident.  Mr. Johnson told the police chief about Deputy Kidd's racially discriminatory behavior and the police chief ultimately refused to hire Deputy Kidd.  Thereafter, Deputy Kidd increased his anger and racially discriminatory behavior toward Mr. Johnson.  On information and belief, Deputy Kidd learned of Mr. Johnson's conversation with the Columbus police chief and relayed this fact to Chief Deputy Gibson and Sheriff Groves.

24.     In approximately May of 2015, Deputy Kidd displayed an offensive YouTube video to Mr. Johnson while on duty.  The video showed a bullet bearing the phrase, "I'm going to get you nigger," chasing after something.  Deputy Kidd laughed at the video while Mr. Johnson found it highly offensive.

25.     On information and belief, the defendants delayed giving Mr. Johnson a pay raise because of his mixed race status.  Further, on information and belief, Sheriff Groves and the Sheriff's Office also discriminated against Mr. Johnson in refusing to promote him to a higher paying "detective" position.  Instead of Mr. Johnson, the position was awarded to an unexperienced white officer, despite Mr. Johnson's 14 years of experience and overall qualification for the position.

26.     In early June of 2015, Chief Deputy Gibson sent Mr. Johnson an e-mail requesting him to attend a funeral for a fellow deputy's sister who had died from cancer.  Mr. Johnson went to Chief Deputy Gibson's office to inquire about whether the request was mandatory, explaining that he did not like to attend funerals for personal reasons (he also did not know the decedent).  Chief Deputy Gibson yelled at and berated Mr. Johnson with foul language, and eventually told him to get out of his office.  Then, Chief Deputy Gibson leapt out of his chair so violently that it

crashed back into a file cabinet and he rushed at Mr. Johnson as though he would hit him. Mr. Johnson braced for an attack, fearing that the chief deputy would strike him. Chief Deputy Gibson extended his arm to within inches of Mr. Johnson and again told him to "GET OUT OF HERE!!!"

27.    Mr. Johnson thereafter reported Chief Deputy Gibson's assault to Sheriff Groves but Sheriff Groves refused to take any action against Gibson. Instead, he and the rest of the Sheriff's Office continued to subject Mr. Johnson to a hostile work environment based upon Mr. Johnson's mixed race status.

28.    Mr. Johnson also inquired to Sheriff Groves and/or others at the Sheriff's Office about a worker's compensation claim he had made due to an injury he had sustained while on duty but he got no response. About a week later, on June 25, 2015, Sheriff Groves terminated Mr. Johnson from his position as patrol deputy without any notice and without any opportunity to be heard. When Mr. Johnson asked why he was being terminated, Sheriff Johnson refused to give him any verbal or written explanation. He did not provide Mr. Johnson with any written documentation showing that Mr. Johnson had violated policies and procedures or otherwise failed to properly carry out his duties as a patrol deputy.

### Count I: Against Defendant County
**(Violation of Title VII for Racial Discrimination and Hostile Work Environment)**

29.    Mr. Johnson re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 28 above.

30.    The County is an employer within the meaning of Title VII.

31.    Mr. Johnson, a mixed race male as described above, is a member of a class of persons protected by Title VII.

32.    The County has discriminated against Mr. Johnson with respect to the terms, conditions, and privileges of employment because of Mr. Johnson's race, in violation of Title VII.

33.     Mr. Johnson's wrongful termination came after he had been subjected to a pattern and practice of racial discrimination and harassment by Sheriff Groves and other County deputies, based upon Mr. Johnson's mixed race status (African-American and Caucasian).

34.     The above-described racial discrimination and harassment was sufficiently severe or pervasive that a reasonable person in Mr. Johnson's position would find Mr. Johnson's work environment to be hostile or abusive.

35.     At the time the above described conduct occurred and as a result of that conduct, Mr. Johnson believed his work environment to be hostile and abusive.  Sheriff Groves and the other County deputies' conduct adversely affected the terms, conditions and/or privileges of Mr. Johnson's employment with the County and unreasonably interfered with Mr. Johnson's work performance.

36.     The County knew or should have known of the above-described improper conduct, but the County failed to take prompt and appropriate corrective action to end Sheriff Groves and the other County deputies' harassment of Mr. Johnson.

37.     During Mr. Johnson's employment with the County, the County took adverse action against him by subjecting him to terms, conditions and/or privileges of continued employment that were different and less favorable than the terms, conditions and/or privileges of employment to which similarly situated, non-African-American or non-mixed race employees were subjected.

38.     Mr. Johnson's race was a motivating and/or determining factor in the County's actions, omissions and conduct, including adversely subjecting him to terms, conditions and/or privileges of continued employment that were different and less favorable than the terms,

conditions and/or privileges of employment to which similarly situated, non-African-American or non-mixed race employees were subjected.

39.     After being notified of the discriminatory and unwelcome and offensive harassing conduct to which Mr. Johnson was being subjected, Sheriff Groves and the County failed to exercise reasonable care to prevent and promptly correct the above-described racially harassing behavior.

40.     As shown by the foregoing, Mr. Johnson suffered intentional discrimination at the hands of Sheriff Groves and the other County deputies during the course of his employment at the County based on his race, in violation of Title VII.

41.     As a direct and proximate result of the County's actions and/or inactions, Mr. Johnson has been deprived of income, as well as other monetary and non-monetary benefits.

42.     As a further direct and proximate result of the County's actions and/or inactions, Mr. Johnson has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish, and related compensatory damages.

43.     The County failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including racial harassment.

44.     The County failed to properly train and/or otherwise inform its Sheriff, deputies and other employees concerning their duties and obligations under the civil rights laws, including Title VII.

45.     Sheriff Groves and/or the County, responsible for setting or enforcing policy in the area of discrimination, was aware of Mr. Johnson's complaints of harassment, but failed to respond to those complaints.  Instead, Sheriff Groves terminated Mr. Johnson's employment.

46.      By failing to take prompt and effective remedial action, and instead terminating Mr. Johnson's employment, Sheriff Groves in effect condoned, ratified and/or authorized the harassment of plaintiff.

47.      The County, by its negligence or otherwise, subjected Mr. Johnson to disparate treatment, racial discrimination, and maintained or allowed to exist a work environment overrun by racial antagonism.

48.      As shown by the foregoing, the County engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of Mr. Johnson.  Mr. Johnson is therefore entitled to an award of punitive damages in an amount sufficient to punish the County or to deter it and others from like conduct in the future.

49.      Mr. Johnson is entitled to recover from the County reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Mr. Johnson requests that the Court enter judgment in his favor and against the County for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT II:  Against Defendant County
### (Violation of Title VII for Retaliation)

50.      Mr. Johnson re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 49 above.

51.      At the time Mr. Johnson complained to Sheriff Groves about the racially harassing conduct to which he was subjected, Mr. Johnson was satisfactorily performing all duties of his job.

52.      After Mr. Johnson complained several times to Sheriff Groves about the discriminatory conduct and offensive and unwelcome harassing conduct to which he was being

subjected, the County, by and through Sheriff Groves and the other deputies, retaliated against him for exercising his federally and statutorily protected rights by adversely altering the terms, conditions and/or privileges of his continued employment, including, but not limited to, terminating his employment.

53.     Mr. Johnson's complaints regarding the above-described racially harassing behavior and his decision to pursue a worker's compensation claim were motivating factors in Sheriff Groves' decision to terminate Mr. Johnson's employment.  The County therefore violated Section 704 of Title VII, 42 U.S.C. § 2000e-3(a).

54.     As a direct and proximate result of the County's actions, Mr. Johnson has been deprived of income, as well as other monetary and non-monetary benefits and has suffered the losses and damages described in Count I above.

WHEREFORE, Mr. Johnson requests that the Court enter judgment in his favor and against the County for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT III:  Against Both Defendants
**(Violation of Section 1981, as amended by the Civil Rights Act of 1991)**

55.     Mr. Johnson re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 54 above.

56.     This count is brought against the County and Sheriff Groves, individually, pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

57.     At all relevant times, Mr. Johnson had an employment contract and/or an implied employment contract with the County, and was within the class of persons protected by 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

58.     Subsequent to Mr. Johnson's hiring in 2013, defendants engaged in the above-described post-contract formation harassment and racially discriminatory behavior, thereby impairing Mr. Johnson from performing his contract or implied employment contract and thus depriving him of all the benefits, privileges, terms and conditions inherit in said contract or implied contract, all in violation of subparagraphs (b) and (c) of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

59.     Defendants therefore deprived Mr. Johnson of his right to make and enforce contracts and to the full and equal enjoyment of the benefits of employment with the County because of his race, in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

60.     As a direct and proximate result of defendants' actions, Mr. Johnson has been deprived of income, as well as other monetary and non-monetary benefits and has suffered the losses and damages described in Count I above.

WHEREFORE, Mr. Johnson requests that the Court enter judgment in his favor and against both defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT IV:  Against Both Defendants
### (Violation of Section 1983-Procedural Due Process)

61.     Mr. Johnson re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 60 above.

62.     This count is brought against the County and Sheriff Groves, individually, pursuant to the remedial provisions of 42 U.S.C. § 1983 for the purpose of enforcing the rights guaranteed to Mr. Johnson under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

63.     Mr. Johnson had a constitutionally protected property interest in his employment contract and/or implied employment contract with the County, as more fully described above.

64.     Defendants, both state actors acting under color of state law, deprived and continue to deprive Mr. Johnson of his property interest without proper notice or an opportunity to be heard. Further, Sheriff Johnson and the other deputies acted pursuant to a custom or policy of discriminatory employment practices.

65.     Defendants' actions constituted and constitute an unlawful denial of Mr. Johnson's procedural due process rights in violation of the Fourteenth Amendment to the United States Constitution.

66.     As a direct and proximate result of defendants' actions, Mr. Johnson has been deprived of income, as well as other monetary and non-monetary benefits and has suffered the losses and damages described in Count I above.

WHEREFORE, Mr. Johnson requests that the Court enter judgment in his favor and against both defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT V:  Against Both Defendants
### (Violation of Section 1983-Substantive Due Process)

67.     Mr. Johnson re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 66 above.

68.     This count is brought against the County and Sheriff Groves, individually, pursuant to the remedial provisions of 42 U.S.C. § 1983 for the purpose of enforcing the rights guaranteed to Mr. Johnson under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

69.     Mr. Johnson had a constitutionally protected property interest in his employment contract and/or implied employment contract with the County, as more fully described above.

70.     Defendants, both state actors acting under color of state law, deprived and continue to deprive Mr. Johnson of his property interest without proper notice or an opportunity to be heard. Further, Sheriff Johnson and the other deputies acted pursuant to a custom or policy of discriminatory employment practices.

71.     Defendants' decision to deprive Mr. Johnson of his protected property interest was arbitrary, capricious, and without a rational basis.

72.     Defendants' actions constituted and constitute an unlawful denial of Mr. Johnson's procedural due process rights in violation of the Fourteenth Amendment to the United States Constitution.

73.     As a direct and proximate result of defendants' actions, Mr. Johnson has been deprived of income, as well as other monetary and non-monetary benefits and has suffered the losses and damages described in Count I above.

WHEREFORE, Mr. Johnson requests that the Court enter judgment in his favor and against both defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

*Respectfully Submitted*,

**NORRIS & KEPLINGER, L.L.C.**

By: ___*/s/ Christopher J. Lucas*_____
Christopher J. Lucas, cjl@nkfirm.com, #20160 KS
9225 Indian Creek Parkway
Corporate Woods, Building 32, Suite 750
Overland Park, Kansas  66210
(913) 663-2000/(913) 663-2006 FAX
ATTORNEYS FOR PLAINTIFF

# DEMAND FOR JURY TRIAL

COMES NOW plaintiff Brandon L. Johnson, by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 38(b), and hereby requests a jury trial on all issues in the above-captioned matter.

*Respectfully Submitted*,

**NORRIS & KEPLINGER, L.L.C.**

By: ___*/s/ Christopher J. Lucas*_____
Christopher J. Lucas, cjl@nkfirm.com, #20160 KS
9225 Indian Creek Parkway
Corporate Woods, Building 32, Suite 750
Overland Park, Kansas  66210
(913) 663-2000/(913) 663-2006 FAX
ATTORNEYS FOR PLAINTIFF

## DESIGNATION OF PLACE OF TRIAL

COMES NOW plaintiff Brandon L. Johnson, by and through the undersigned counsel, pursuant to D. Kan. Rule 40.2(a), and hereby designates Kansas City, Kansas as the place of trial in the above-captioned matter.

*Respectfully Submitted*,

**NORRIS & KEPLINGER, L.L.C.**

By:     */s/ Christopher J. Lucas*
Christopher J. Lucas, cjl@nkfirm.com, #20160 KS
9225 Indian Creek Parkway
Corporate Woods, Building 32, Suite 750
Overland Park, Kansas  66210
(913) 663-2000/(913) 663-2006 FAX
ATTORNEYS FOR PLAINTIFF