**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BRANDON JOHNSON,** | |
| **Plaintiff,** | **Case No. 2:17-cv-02644-JAR-GEB** |
| **v.** | |
| **CHEROKEE COUNTY BOARD OF COUNTY COMMISSIONERS and DAVID M. GROVES,** | |
| **Defendants.** | |

**REPLY IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY
AND DAVID M. GROVES**

Defendants Board of County Commissioners of Cherokee County ("BOCC") and David

M. Groves ("Sheriff Groves") (collectively "Defendants"), by and through undersigned counsel

and pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1, 7.6, 56.1, hereby submit the following

Reply in Support of their Joint Motion for Summary Judgment.

Respectfully submitted,

**Case Linden P.C.**

s/ Kevin D. Case
Kevin D. Case, MO 41491; KS 14570
Jennifer G. Ahlbrandt, MO 67434; KS 26980
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:  (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
jennifer.ahlbrandt@caselinden.com
Attorneys for Defendant

## Table of Contents

Page

I. **Reply in Support of Statement of Uncontroverted Material Facts** ............................1

   A. **The parties** ...............................................................................................................1

      1. Plaintiff Brandon Johnson ........................................................................ 1
      2. Defendant Board of County Commissioners of Cherokee County ..................... 1
         2.1. BOCC facilitates funding of the annual operating budget .................... 1
         2.2. BOCC sets the annual operating budget .............................................. 1
         2.3. BOCC cannot override Sheriff Groves' decisions ................................ 1
         2.4. BOCC does not need to approve pay raises ........................................... 1
      3. Defendant Sheriff David M. Groves .......................................................... 2
         3.1. Sheriff Groves' compensations ........................................................... 2
         3.2. Sheriff Groves is the final policy maker and decision maker ............... 2
         3.3. Sheriff Groves hires and fires ............................................................ 2
         3.4. Sheriff Groves determines pay raises .................................................. 2
         3.5. Policies and procedures of Cherokee County Sheriff's Dept ................. 2
            3.5.1. Cherokee County does not tolerate discrimination .................... 2
            3.5.2. Incidents of discrimination shall be reported ............................ 3
            3.5.3. Retaliation is prohibited ......................................................... 3
         3.6. Sheriff Groves has employed no less than thirty deputies ..................... 4
            3.6.1. Undersheriff Terry Clugston ................................................... 5
            3.6.2. Chief Deputy Shane Gibson .................................................... 5
            3.6.3. Deputy Beau Hamlin .............................................................. 5
            3.6.4. Former Chief Investigator Doug Wydick ................................. 5
            3.6.5. Former Deputy Mike Potter ..................................................... 6
            3.6.6. Former Deputy Dean Kidd ...................................................... 6
            3.6.7. Former Deputy Brian Kerns .................................................... 6
            3.6.8. Former Deputy Tina (Blockburger) Rosenberg ........................ 6
            3.6.9. Organizational chart ............................................................... 7
      4. Jason Daniels ......................................................................................... 7

   B. **Events predating Plaintiff's employment** ...........................................................7

      5. Prior incident between Kerns and Kidd ...................................................... 7
         5.1. Kidd was making jokes ....................................................................... 8
         5.2. Kerns was becoming irritated .............................................................. 8
         5.3. Kerns dry-tased Kidd........................................................................... 8
            5.3.1. Description of a dry-tase ......................................................... 8
         5.4. Kerns and Kidd remain friends ............................................................ 8
         5.5. Kerns did not want Kidd disciplined/fired .......................................... 9
         5.6. Plaintiff not present for tasing incident ............................................ 10
         5.7. Hartman was present for tasing incident ............................................ 10
         5.8. Hartman unaware whether anyone else knew of tasing incident .......... 10
         5.9. Hartman thought tasing incident was two friends joking .................... 10
         5.10. Groves/Gibson did not learn of tasing incident until litigation ............ 10

**C.    Plaintiff's application for employment** ............................................................. **11**

6.    Plaintiff applies with Cherokee County Sheriff's Department .......................... 11
6.1.    Employment with the Parsons Police Department No. 1 ...................... 11
6.1.1.    Plaintiff told to resign to avoid discipline / legal action........... 11
6.1.2.    Plaintiff says he "resigned due to a racial situation".............. 12
6.2.    Employment with the Erie Police Department ...................................... 12
6.3.    Employment with the Coffeyville Police Department ........................... 12
6.4.    Employment with the Parsons Police Department No. 2 ...................... 13
6.5.    Employment with the Altamont Police Department ............................. 13
6.6.    Employment with the Wilson Police Department ................................ 13
7.    Plaintiff is hired by Sheriff Groves ................................................................. 13
8.    Job description of Patrol Deputy ................................................................... 13

**D.    Plaintiff's performance while employed** ....................................................... **14**

9.    Plaintiff begins working as part-time deputy ................................................. 14
10.    Plaintiff begins working as full-time deputy ................................................. 14
11.    February 5, 2014: Plaintiff issued performance review No. 1 .......................... 14
11.1.    Plaintiff did not make any complaints ................................................ 14
11.2.    Plaintiff's rated "below average" for paper service completion ........... 15
11.3.    Plaintiff did not seek out opportunities for additional ....................... 15
11.4.    Plaintiff had difficulty accepting constructive criticism ..................... 15
11.5.    Plaintiff made excessive requests ...................................................... 16
12.    June 21, 2014: Plaintiff not responding to alarm call ................................... 16
13.    July 1, 2014: Plaintiff issued performance review No. 2 ................................. 17
13.1.    Plaintiff did not make any complaints ................................................ 17
13.2.    Plaintiff rated "below average" for reliability/dependability ............... 17
13.3.    Plaintiff rated "below average" for working relationships .................. 18
13.4.    Plaintiff not willing to work extra shifts/events ................................ 18
13.5.    Plaintiff not recognizing important of teamwork ............................... 18
13.6.    Plaintiff struggling with creating strong relationships ........................ 18
13.7.    Plaintiff needs to work on his relationships with personnel ................ 19
14.    July 24, 2014: Plaintiff notified of overdue Case No. 1 .................................. 19
15.    August 29, 2014: Complaint regarding Plaintiff driving recklessly ................. 20
15.1.    August 29, 2014: 11:17 AM ............................................................. 20
15.2.    August 29, 2014: 11:20 AM ............................................................. 20
15.3.    September 5, 2014: Written reprimand ............................................. 20
15.4.    Not Plaintiff's first verbal warning for driving too fast ...................... 20
16.    November 25, 2014: Plaintiff complains about 12 hour schedule ................... 21
16.1.    Plaintiff says schedule is inconvenient for him .................................. 21
16.2.    Plaintiff prematurely departs meeting ............................................... 22
16.3.    Plaintiff's departure is an act of insubordination .............................. 22
17.    February 19, 2015: Plaintiff notified of overdue Case No. 2 ........................... 23
18.    May 30, 2015:  Discovery of missing video ................................................... 23
18.1.    June 1, 2015:  Groves requests Gibson to locate video ...................... 24
18.2.    June 1, 2015:  Gibson reviews Plaintiff's car/body video .................... 25
18.3.    June 4, 2015:  Gibson determines incident is missing ......................... 25
18.4.    Plaintiff had not reported problems with car/body video .................... 26

|  |  | 18.5. | June 10, 2015:  Gibson discovers another non-recorded stop | 26 |
| 19. | | June 8, 2015: Plaintiff declines to participate in funeral procession | | 27 |
| 20. | | June 21, 2015: Plaintiff fails to respond to a theft call | | 27 |
|  |  | 20.1. | Plaintiff seen by Harper watching YouTube videos | 28 |
| 21. | | Sheriff Groves receives complaints regarding Plaintiff | | 29 |
| 22. | | Plaintiff develops a reputation for showing poor initiative | | 29 |
|  |  | 22.1. | Piepho described Plaintiff as "fairly lazy" | 30 |
|  |  | 22.2. | Hartman described Plaintiff as "lazy" | 30 |
|  |  | 22.3. | Kerns said others had to pick up Plaintiff's slack | 31 |
|  |  | 22.4. | Plaintiff refused to take a police report | 32 |
|  |  | 22.5. | Plaintiff failed to serve a PFA | 32 |
|  |  | 22.6. | Plaintiff failed to take an injury accident report | 33 |
|  |  | 22.7. | Complaints made about Plaintiff hanging out at gas station | 33 |
|  |  | 22.8. | Plaintiff complained about doing neighborhood canvas | 34 |
|  |  | 22.9. | Plaintiff spent too much time on Facebook looking at videos | 34 |

**E.     Plaintiff's termination** ...........................................................................**35**

| 23. | | June 25, 2014: Plaintiff is terminated by Sheriff Groves | | 35 |

**F.     Plaintiff's post-termination discoveries** ...........................................**35**

| 24. | | Hamlin allegedly calls Wydick's  black dog a "nigger" | | 35 |
|  |  | 24.1. | Plaintiff did not witness this | 35 |
|  |  | 24.2. | Plaintiff learned of this after his termination | 36 |
| 25. | | Plaintiff's coworkers used the term "white privilege" | | 36 |
|  |  | 25.1. | Plaintiff did not understand what "white privilege" meant | 36 |
|  |  | 25.2. | Plaintiff researched the term "white privilege" | 37 |
|  |  | 25.3. | Plaintiff concluded the term "white privilege" was offensive | 37 |

**G.     Plaintiff's charge of discrimination** ...................................................**37**

| 26. | | December 18, 2015: Plaintiff files his charge of discrimination | | 37 |

**H.     Internal investigation of Cherokee County Sheriff's Department** ....**37**

| 27. | | Cherokee County Sheriff's Department conducts an investigation | | 38 |
|  |  | 27.1. | Investigation revealed tasing incident had occurred | 38 |
|  |  | 27.2. | Investigation revealed inappropriate video had been shown | 38 |
|  |  | 27.3. | Investigation could not validate claim of racist comments | 38 |
|  |  | 27.4. | Investigation could not validate claim of discrimination | 39 |
| 28. | | January 19, 2016: Kidd is terminated based on investigation results | | 40 |

**I.     Plaintiff's pending lawsuit includes allegations not mentioned in his charge of discrimination** .............................................................................**41**

| 29. | | November 6, 2017: Plaintiff files suit | | 41 |

Plaintiff alleges that Defendants failed to promote him in 2014.
| 30. | | January 2, 2014: Plaintiff sits for investigator test No. 1 | | 41 |

iv

      30.1.   Plaintiff not hired for position ............................................................ 41
      30.2.   Kidd hired for position ...................................................................... 41
31.     October 21, 2014: Plaintiff sits for investigator test No. 2 .............................. 41
      31.1.   Plaintiff not hired for position ............................................................ 42
      31.2.   Hamlin hired for position ................................................................... 42

Plaintiff alleges that Defendants denied him equipment in 2014.
32.     2014: Plaintiff allegedly denied emergency lighting equipment ....................... 42
      32.1.   Plaintiff alleges Noel's request was granted ........................................ 42

Plaintiff alleges that Defendants denied him training in 2014.
33.     2014: Plaintiff allegedly denied training ................................................... 43
      33.1.   Plaintiff alleges training granted for others ......................................... 43

Plaintiff alleges that Defendants delayed his pay raise in 2015.
34.     2015: Hourly rate for all patrol deputies is raised to $14.00 per hour .............. 43
      34.1.   Increase done in chronological order based on month of hire ............. 44
      34.2.   Increase effectuated in Dec., 2014 ..................................................... 44
35.     Kidd began working in Mar.; hourly rate increased in Dec., 2014 .................... 44
36.     Hamlin began working in June; hourly rate increased in Mar., 2015 ................ 44
37.     Plaintiff began working in Aug.; hourly rate increased in Apr., 2015 .............. 45
      37.1.   Plaintiff believes he should have gotten increase immediately ............ 45
      37.2.   Plaintiff received Dec., 2014 paycheck on Dec. 17, 2014 ................... 45

Plaintiff alleges that Defendants subjected him to a hostile work environment.
38.     Gibson allegedly curses at Plaintiff about a funeral procession ........................ 46
      38.1.   Gibson says "what the fuck do you want." ........................................... 46
      38.2.   Plaintiff asks whether he has to participate in procession .................... 46
      38.3.   Gibson asks whether Plaintiff works patrol ......................................... 47
      38.4.   Plaintiff says yeah; Gibson says "go f'ing do it." ................................. 47
      38.5.   Plaintiff sees chair flying ...................................................................... 47
      38.6.   Gibson says "get the fuck out and go patrol" ...................................... 47
      38.7.   Gibson doesn't recall this exchange .................................................... 48
39.     Kidd allegedly calls Plaintiff "boy" and says "pick up trash" .......................... 49
40.     Kidd displays an offensive YouTube video titled "Racist Mario" ................... 49

Plaintiff alleges that Defendants retaliated against him for engaging in protected
opposition to discrimination.

41.     Plaintiff allegedly speaks to Kerns ......................................................... 49
      41.1.   Plaintiff cannot recall when he spoke to Kerns .................................. 50
      41.2.   Kerns never informed Sheriff Groves ................................................ 50
42.     Plaintiff allegedly "tries to speak" with Gibson ......................................... 51
      42.1.   Gibson says "what the fuck do you want?" ......................................... 51
      42.2.   Plaintiff departs Gibson's office ........................................................ 51
      42.3.   Plaintiff cannot recall when this occurred ......................................... 51
43.     Plaintiff allegedly asks Potter for advice ................................................. 52
      43.1.   Plaintiff did not describe problems to Potter ....................................... 52
44.     Plaintiff allegedly asks Wydick for advice ............................................... 52
      44.1.   Plaintiff asked questions in general form ............................................ 53

45. Plaintiff allegedly complains to Sheriff Groves ................................................. 53
    45.1. Plaintiff says Kidd called him a "boy" etc. ................................. 53
    45.2. Plaintiff says Kidd "won't stop with the jokes" ................................. 54
    45.3. Plaintiff talks about tasing incident ................................................. 54
    45.4. Plaintiff cannot recall anything else ................................................. 54
46. Plaintiff does not make any more complaints to employees ............................ 55
47. Plaintiff allegedly speaks to non-employee Daniels as a "friend" ................... 55
    47.1. Sheriff Groves did not learn of conversation until litigation .............. 55
    47.2. Daniels talked to Sheriff Groves in 2014 ................................. 56
48. Plaintiff does not communicate with Sheriff Groves ....................................... 57

## II. Response in Opposition to Plaintiff's Statement of Additional Material Facts

**II. Response in Opposition to Plaintiff's Statement of Additional Material Facts ................................................................. 57**

49. Cherokee County, Kansas is organized and existing under the laws of Kansas ............ 58
50. Sheriff Groves and others were employees of Cherokee County ............................ 58
51. Plaintiff worked as a Deputy making $14.00/hour ........................................... 58
52. Cherokee County was Plaintiff's employer ....................................................... 58
53. Chief Deputy Gibson was Plaintiff's direct supervisor; reported to Sheriff Groves ...... 58
54. Personnel action taken by Sheriff Groves ........................................................ 59
55. Sheriff Groves knew Plaintiff was mixed race ................................................. 59
56. Plaintiff's written reprimands .......................................................................... 59
57. Cherokee County is an employer within the meaning of Title VII ....................... 59
58. Plaintiff, as a mixed race male, is protected by Title VII ................................... 60
59. Racially charged word82 .................................................................................. 60
60. Workplace harassment policy No. 27 ............................................................... 60
61. Training on workplace harassment, racial discrimination, hostile work environment .... 61
62. Sheriff Groves qualifies as a "supervisor" under policy No. 27 ........................ 62
63. Training on workplace harassment and racial discrimination.............................. 62
64. Steps taken by Sheriff Groves to monitor Sheriff Office .................................. 63
65. Employee handbook provided to employees ................................................... 64
66. 55 employees on staff (12%-13% minorities) ................................................. 64
67. Plaintiff's February 5, 2014 written performance review ................................. 64
68. No Sheriff's Office employees receives a "perfect" performance review ............ 64
69. Plaintiff's July 1, 2014 written performance review ......................................... 65
70. Discipline of other deputies ............................................................................. 66
71. Progressive disciplinary measures .................................................................... 67
72. Plaintiff was not suspended or demoted .......................................................... 67
73. Kidd and Piepho received disciplinary measures before termination ................... 68
74. Sheriff Groves prefers that employees work out their differences ...................... 69
75. Deputy Kidd told Sheriff Groves he applied for part-time work at Columbus PD ......... 69
76. Beau Hamlin hired as detective ....................................................................... 69
77. Sheriff Groves denies Plaintiff complained to him of harassment/hostile work env. ..... 69
78. Plaintiff believes Sheriff Groves had a circle of favorite deputies ...................... 70
79. Chief Deputy Gibson and Sheriff Groves discussed Plaintiff's termination .......... 70
80. Plaintiff was not given a specific reason for his termination .............................. 70
81. Misunderstanding regarding litigation hold letter ............................................. 70
82. No proof that tasing incident was "common knowledge" ................................. 72
83. Specific incidents of alleged discrimination ..................................................... 73
84. Plaintiff found racist Mario video offensive ..................................................... 80

**III.**    **Reply in Support of Motion for Summary Judgment** ................................**80**

    **A.**    **Defendants' alleged "admission" is no more than an inconsistent and unintentional scrivener's error by prior counsel.** ...................................**81**

    **B.**    ***Nielander* is applicable to the matter at hand.** ................................**82**

    **C.**    ***Loum*, *Trujillo*, and *Wemimo* remain "current governing federal law."** .......**83**

    **D.**    **Defendants have sought summary judgment on Plaintiff's Count I claim for race discrimination.** .........................................................**88**

    **E.**    **Plaintiff cannot establish the "causation" element of his retaliation claim; no "genuine issue of material fact" remains about the cause for Plaintiff's termination.** .............................................................**89**

    **F.**    **Plaintiff has failed to adequately respond to Defendants' argument regarding any claim for workers' compensation retaliation.** ........................**94**

    **G.**    **Plaintiff's claims for violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 should be dismissed.** ...........................................................**94**

**IV.**    **Conclusion** ............................................................................**96**

**V.**    **Index of Exhibits**[1] ..............................................................

Plaintiff's Exhibit 1    Deposition of Plaintiff Brandon Johnson
Plaintiff's Exhibit 2    Deposition of Defendant Sheriff David M. Groves
Plaintiff's Exhibit 3    Deposition of Chief Deputy Shane Gibson
Plaintiff's Exhibit 4    Deposition of Former Deputy Francis Piepho.
Plaintiff's Exhibit 5    Deposition of Former Deputy Nicholas Hartman.
Plaintiff's Exhibit 6    Deposition of Former Deputy Tina Rosenberg
Plaintiff's Exhibit 7    Deposition of Deputy Brian Kerns
Plaintiff's Exhibit 8    Deposition of Undersheriff Terry Clugston
    Exhibit 9    Plaintiff's Employment Documentation
    Exhibit 10    Deputy Brian Kerns' Employment Documentation
    Exhibit 11    Former Deputy Dean Kidds' Employment Documentation
    Exhibit 12    Investigator Beau Hamlin's Employment Documentation
    Exhibit 13    Internal Investigation Report
    Exhibit 14    Cherokee County Sheriff's Officer Law Enforcement Policies/Procedures
    Exhibit 15    AMENDED Affidavit of Defendant Sheriff David M. Groves
Plaintiff's Exhibit 16    Deposition of Jason Daniels
Plaintiff's Exhibit 17    Objections and Answers of Plaintiff to First ROGS of Groves
Plaintiff's Exhibit 18    Objections and Answers of Plaintiff to First ROGS of BOCC

---

[1] Because Plaintiff attached all deposition exhibits in their entirety (Plaintiff's Exhibits 1 - 8 and 16), and in an effort to simplify matters for the Court, Defendants refer to Plaintiff's Exhibits in lieu of their own where possible.

Plaintiff's Exhibit 19    Objections and Answers of Groves to Plaintiff's First ROGS
Plaintiff's Exhibit 20    Personnel Policy Handbook
Plaintiff's Exhibit 21    Litigation Hold Letter
Plaintiff's Exhibit 22    Former Deputy Piepho's Employment Documentation

**Certificate of Service** .................................................................................................**97**

## Table of Authorities

Page

***Baker v. Birmingham Bd. of Educ.***, 531 F.3d 1336 (11th Cir. 2008). ............................................. 94, 95

***Bd. of County Comm'rs of County of Lincoln v. Nielander***, 275 Kan. 257, 62 P.3d 247 (2003). .......... 82

***Blume v. Meneley***, 283 F.Supp.2d 1171 (D. Kan. 2003). ................................................. 82, 83

***Bolden v. PRC Inc.***, 43 F.3d 545 (10th Cir. 1994). ....................................................... 84, 87

***Dockery v. Unified School Distr. No. 231***, 382 F.Supp.2d 1234 (D. Kan. 2005). .................................. 96

***Downs v. Jostens, Inc.***, 23 F. Supp. 3d 1332 (D. Kan. 2014). ................................................ 90

***Hernandez v. Valley View Hosp. Ass'n***, 684 F.3d 950 (10th Cir. 2012). .......................................... 83, 84

***Herrera v. Lufkin Industries, Inc.***, 474 F.3d 675 (10th Cir. 2007). ....................................... 87

***Hudson v. Leavenworth County Sheriff's Office***, No. 14-CV-02065-JAR, 2015 WL 6738681
(D. Kan. Nov. 4, 2015). ................................................................................. 83, 84

***Jett v. Dallas Indep. Sch. Dist.***, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). ...................... 95

***Loum v. Houston's Restaurants, Inc.***, 985 F. Supp. 1315 (D. Kan. 1997). ...................................... 83, 87

***Lounds v. Lincare, Inc.***, 812 F.3d 1208 (10th Cir. 2015). ............................................. 87, 88

***Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002). ......... 89

***Robinson v. City of Arkansas City, Kan.***, 896 F. Supp.2d 1020 (D. Kan. 2012). .................................. 95

***Trujillo v. Univ. of Colo. Health Sciences Cntr.***, 157 F.3d 1211 (10th Cir. 1998). ......................... 83, 84

***Umbenhower v. Copart, Inc.***, No. 03-2476-JWL, 2004 WL 2660649 (D. Kan. Nov. 19, 2004). .............. 5

***Wemimo v. Personal Marketing Co.***, No. 97-2544-JWL, 1998 WL 709605
(D. Kan. Sept. 28, 1998). ................................................................................. 83

## <u>Statutes – State</u>

K.S.A. 2001 Supp. 19-101a(a)(15) ........................................................................................... 82

K.S.A. 19-805 ............................................................................................................................ 82

## <u>Statutes – Federal</u>

28 U.S.C. § 1658 ....................................................................................................................... 95

42 U.S.C. § 1981 ................................................................................................................. 94, 95

42 U.S.C. § 1983 ...........................................................................................................94, 95, 96

## <u>Rules</u>

Fed. R. Civ. P. 56 ........................................................................................................................ i

Local Rule 7.1 .............................................................................................................................. i

Local Rule 7.6 .............................................................................................................................. i

Local Rule 56.1 ............................................................................................................................ i

## I.      Reply in Support of Statement of Uncontroverted Material Facts.

### A.      The parties.

1.      According to Plaintiff Brandon Johnson ("Plaintiff"), he is of mixed race; his ancestry is both African-American and Caucasian. [ECF Doc. 1, Complaint, ¶ 15.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply    | No further response required. |

2.      Defendant Board of County Commissioners of Cherokee County ("BOCC") does not have oversight of the Sheriff as far as hiring, firing, discipline, or the like; such decisions are at the sole discretion of Sheriff Groves. [Ex. 2, Groves, 40:2 – 6.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply    | No further response required. |

2.1.    The BOCC facilitates the funding of the annual operating budget for Cherokee County Sheriff's Department. [Ex. 2, Groves, 40:2 – 6.]

| Response | Uncontroverted but immaterial. |
|----------|-----------------|
| Reply    | No further response required. |

2.2.    The BOCC sets the annual operating budget for Cherokee County Sheriff's Department. [Ex. 2, Groves, 41:18 – 25.]

| Response | Uncontroverted but immaterial. |
|----------|-----------------|
| Reply    | No further response required. |

2.3.    Sheriff Groves has the sole discretion to determine how to employ the annual operating budget; the BOCC does not have the power to override his decisions. [Ex. 2, Groves, 44:3 – 19.]

| Response | Uncontroverted but immaterial. |
|----------|-----------------|
| Reply    | No further response required. |

2.4.    The BOCC does not need to approve pay raises as long as Sheriff Groves operates within the parameters of the annual operating budget. [Ex. 2, Groves, 41:18 – 25.]

| Response | Uncontroverted but immaterial. |
|----------|-----------------|
| Reply    | No further response required. |

3.       Defendant Sheriff David M. Groves ("Sheriff Groves") is the duly-elected
         Sheriff of Cherokee County. [Ex. 2, Groves, 39:7-25.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

3.1.    At election, Sheriff Groves was paid approximately $35,000 per
        year; he is now paid just under $57,000 per year. [Ex. 2, Groves,
        49:17 – 25.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

3.2.    Sheriff Groves is the final policy maker and decisionmaker at the
        Cherokee County Sheriff's Department. [Ex. 2, Groves, 41:7 – 9.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

3.3.    Sheriff Groves determines who to hire and who to fire at the
        Cherokee County Sheriff's Department. [Ex. 2, Groves, 41:10 –
        11.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

3.4.    Sheriff Groves determines who gets pay raises and who does not at
        the Cherokee County Sheriff's Department. [Ex. 2, Groves, 41:15-
        17.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

3.5.    On January 12, 2009, Sheriff Groves approved Cherokee County
        Sheriff's Officer Law Enforcement Policy No. 27. [Ex. 14, Policy,
        001119 – 001122; I&A[2] in Ex. 2, Groves, 72:10 – 23.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

Policy No. 27 provides that:

3.5.1.  the Cherokee County Sheriff's Department does not
        tolerate any form of harassment "including harassment

---

[2] Identified and Authenticated.

because of, or by inappropriately emphasizing an individual's race, national origin, religion, disability, pregnancy, age, military status, gender, or sex." [Ex. 14, Policy, 001119; I&A in Ex. 2, Groves, 72:10 – 23.]

| | |
|---|---|
| **Response** | Controverted in part. Plaintiff concedes that defendants have basically correctly quoted the subject language of Policy No. 27, as enclosed within the quotation marks (except that defendants failed to italicize the words *race, national original,* etc., as they appear in the policy itself). However, plaintiff controverts defendants' contention that the Cherokee County Sheriff's Department "Does not tolerate any form of harassment," inasmuch as it did tolerate the racial harassment to which plaintiff was subjected, as outlined below and in plaintiff's statement of additional material facts, incorporated by reference as though fully set forth herein. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  A generalized statement that the Cherokee County Sheriff's Department "did tolerate the racial harassment to which plaintiff was subjected, as outlined below and in plaintiff's statement of additional material facts," fails to comply with this requirement.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

3.5.2.   "[a]ny employee who believes that he or she is being harassed or discriminated against shall report the incident(s) as soon as possible so that steps may be taken to protect the employee from further harassment or discrimination and so that appropriate investigative and disciplinary measures may be initiated." [Ex. 14, Policy, 001121; I&A in Ex. 2, Groves, 72:10 – 23.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

3.5.3.   "[r]etaliation against any employee for filing a harassment and/or discrimination complaint or for assisting, testifying, or participating in the investigation of such a complaint" is prohibited. [Ex. 14, Policy, 001122; I&A in Ex. 2, Groves, 72:10 – 23.]

| | |
|---|---|
| **Response** | Controverted in part. Plaintiff concedes that defendants have correct[ly] quoted the subject language of Policy No. 27. However, plaintiff does not concede that defendants complied with Policy No. 27 and, to this extent, defendants' statement is controverted for the reasons outlined below and in plaintiff's statement of additional material facts, incorporated by reference as though fully set forth herein. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  A generalized statement that "plaintiff does not concede that defendants complied with Policy No. 27 …[as] outlined below and in plaintiff's statement of additional material facts," fails to comply with this requirement.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2) and the Plaintiff's concession in his response, the Court should consider this fact uncontroverted for purposes of the motion. |

3.6. Between his election and the date of Plaintiff's termination, Sheriff Groves employed no less than thirty (30) individuals as Deputies for the Cherokee County Sheriff's Department. [Ex. 14, Policy, 001453; I&A in Ex. 2, Groves, 72:10 – 23.]

| | |
|---|---|
| **Response** | Controverted in part. Plaintiff concedes that, between Sheriff Groves' election and the date of plaintiff's termination, Sheriff Groves employed at least thirty individuals as deputies at the Cherokee County Sheriff's Department. However, plaintiff controverts defendants' statement to the extent that the last page of defendants' Ex. 14 was not contained in Ex. 4 marked at Sheriff Groves' deposition. *See* **plaintiff's Ex. 14** (which is also Ex. 4, as marked at Sheriff Groves' deposition).  As such, the last page of defendants' Ex. 14 contains inadmissible hearsay and has not been properly authenticated. |
| **Reply** | Objection.  Plaintiff has failed to properly controvert this fact.<br><br>The last page of Defendants' Ex. 14 (bates-stamped document 001453) does not contain inadmissible hearsay and has been properly authenticated. Please see Plaintiff's Ex. 2, Groves, 194:18-195:4, whereby Sheriff Groves identifies and properly authenticates Exhibit 20, the letter to the Kansas Human Rights Commission to which bates-stamped document 001453 was an exhibit and is referenced.<br><br>Defendants further attaches Amended Ex. 15 to this Reply, a sworn Affidavit by Sheriff Groves identifying and authenticating bates-stamped document |

4

|  | 001453.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

### 3.6.1. Terry Clugston ("Clugston") is the Undersheriff for the Cherokee County Sheriff's Department. [Ex.8, Clugston, 7:3 – 6.]

| Response | Controverted in part. Plaintiff concedes that Terry Clugston is the Undersheriff for the Cherokee County Sheriff's Department. However, plaintiff controverts defendants' statement only to the extent that defendants failed to attach the relevant portions of Clugston's deposition transcript in support of their factual assertion. *See* Rule 56(e) |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.[3]  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2) and the Plaintiff's concession in his response, the Court should consider this fact uncontroverted for purposes of the motion. |

### 3.6.2. Shane Gibson ("Gibson") is the Chief Deputy for the Cherokee County Sheriff's Department and was Plaintiff's direct supervisor. [ECF Doc. 1, Complaint, ¶ 16; ECF Doc. 3, Answer, ¶ 16.]

| Response | Uncontroverted . |
|---|---|
| Reply | No further response required. |

### 3.6.3. Beau Hamlin ("Hamlin") was a Deputy for the Cherokee County Sheriff's Department; he was later promoted to detective. [Ex. 2, Groves, 216:14 – 217:6; Ex. 12, Hamlin File, 002078 and 002085; I&A in Ex. 15, Affidavit, ¶ 3.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

### 3.6.4. Doug Wydick ("Wydick") was the former Chief Investigator for the Cherokee County Sheriff's Department. [Ex. 1, Plaintiff, 172:6 – 8.]

---

[3] In *Umbenhower v. Copart, Inc.*, Judge Lungstrum "refuse[d] to deny defendants' motion summarily simply because defendants inadvertently failed to attach the exhibits to the motion." No. 03-2476-JWL, 2004 WL 2660649, at *5 (D. Kan. Nov. 19, 2004).  Defendants respectfully request the same in this matter.

| | |
|---|---|
| **Response** | Controverted in part. Plaintiff concedes that Doug Wydick was the former Chief Investigator for the Cherokee County Sheriff's Department. However, defendants' statement is controverted to the extent that defendants failed to attach plaintiff's deposition transcript in support of their factual assertion. *See* Rule 56(e). |
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error. <br><br> Pursuant to Fed. R. Civ. P. 56(e)(1) and (2) and the Plaintiff's concession in his response, the Court should consider this fact uncontroverted for purposes of the motion. |

3.6.5.  Mike Potter ("Potter") was a former Deputy for the Cherokee County Sheriff's Department. [Ex. 2, Groves, 22:4 – 6.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

3.6.6  Dean Kidd ("Kidd") was a former Deputy for the Cherokee County Sheriff's Department. [Ex. 2, Groves, 195:12 – 14.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

3.6.7.  Brian Kerns ("Kerns"), an African American male, was a former Deputy for the Cherokee County Sheriff's Department who began working on February 1, 2010; he resigned on December 30, 2014 and was re-hired on June 23, 2015; he now works part-time. [Ex. 7, Kerns, 13:15 – 14:15, 20:24 – 21:7, and 21:15 – 21; Ex. 10, Kerns' File, 001439, 001448, 001460, and 001509; I&A in Ex. 15, Affidavit, ¶¶ 2 – 3.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

3.6.8.  Tina (Blockburger) Rosenberg ("Rosenberg") was a School Resources Officer for the Cherokee County Sheriff's Department; during the summer, she worked part-time as a Patrol Deputy. [Ex. 6, Rosenberg, 16:21 – 25 and 27:7 - 20.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

3.6.9.   A true and accurate copy of the organizational chart is attached hereto as Ex. 14, Policy, 001082; I&A in Ex. 2, Groves, 72:10 – 23.]

| Response | Controverted. The subject organizational chart is inaccurate to the extent it fails to reflect the position of "corporal" at the Sheriff's Office and where on the chain of command a corporal falls relative to a patrol deputy. *See* **plaintiff's Ex. 2,** Groves, 173/6-174/17. |
|---|---|
| Reply | Defendants admit that the organizational chart predates the addition of a corporal position within the Cherokee County Sheriff's Department and thus, does not reflect the same.  Defendant further admits that a corporal outranks a patrol deputy.  Please see Plaintiff's Ex. 2, Groves, 173:3-174:17.  With this understanding, the subject organizational chart is true and accurate.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

4.   Jason Daniels ("Daniels") is the Chief of Police for Columbus, Kansas; he is not an employee of Cherokee County Sheriff's Department. [Ex. 1, Plaintiff, 185:9 – 15 and 186:3 – 7; Ex. 2, Groves, 210:1 – 20.]

| Response | Controverted in part. Plaintiff concedes that Jason Daniels is the Chief of Police for Columbus, Kansas and that he is not an employee of the Cherokee County Sheriff's Office. However, defendants' statement is controverted to the extent that defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2) and the Plaintiff's concession in his response, the Court should consider this fact uncontroverted for purposes of the motion. |

**B.   Events predating Plaintiff's employment.**

5.   Prior to Plaintiff being hired, there was a tasing incident between Deputy Brian Kerns and Deputy Dean Kidd. [Ex. 7, Kerns, 54:22 – 55:17; Ex. 13, Internal Investigation, 000268 – 000274; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

5.1.    Kidd was making jokes and saying something about grape kool-aid and watermelon. [Ex. 7, Kerns, 55:5 – 17; Ex. 13, Internal Investigation, 000272; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

5.2.    Kerns was becoming irritated; he told Kidd to stop or he would tase him. [Ex. 7, Kerns, 55:5 – 17; Ex. 13, Internal Investigation, 000272; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

5.3.    Kidd continued making comments and Kerns dry-tased Kidd. [Ex. 7, Kerns, 55:5 – 17 and 112:2 – 113:13; Ex. 13, Internal Investigation, 000272; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

5.3.1.    A dry-tase is a less severe tase whereby the cartridge is removed prior to the tasing. [Ex. 7, Kerns, 112:2 – 113:3.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

5.4.    Kerns and Kidd have not had any other incidents since that date; they remain friends. [Ex. 7, Kerns, 107:25 – 108:16; Ex. 13, Internal Investigation, 000269 and 000272; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Controverted. Following the tasing incident, Kidd continued to subject Deputy Kerns to inappropriate and offensive racial harassment. Specifically, on at least three occasions after the tasing, Kidd displayed a racially inappropriate video to Deputy Kerns on a computer screen at work, while on duty at the Sheriff's Office. On one of these occasions, plaintiff was also present for the video showing. The video was a racist "Mario Cart" video which showed, among other things, a "gorilla guy driving," and the phrase, "Got you nigger." Each time Kidd played the video, Deputy Kerns found it inappropriate and offensive and informed Kidd of his feelings. Kidd merely laughed however. Notably, Deputy Piepho testified that the video had been shown "numerous times before." *See* **plaintiff's Ex. 7**, Kerns 42/10-43/5; 29/23-32/16; 33/11-23; 35/23-39/18;40/2-18; 40/22-42/4; 47/9-20; 48/5-49/5; 49/12-18; 49/22-50/5; 50/10-22' 53/13-17; and 53/25-54/21. *See also* **plaintiff's Ex. 4**, Piepho, 16/5-17/14. |
|----------|-----------------|

| Reply | Objection. Plaintiff has failed to properly controvert this fact. |
|---|---|
| | Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  As Plaintiff's response does not address the portion of Defendants' fact stating that Kerns and Kidd remain friends, Plaintiff has failed to comply with this requirement. |
| | Furthermore, Defendants admit that Kerns testified that several years after the tasing incident, Kidd showed the "Mario Cart" video to him approximately three times.  Plaintiff's Ex. 7, Kerns, 42:10-22 and 47:15-17.  Kerns did not tell Kidd the video was "offensive."  He told him, "That's not funny, inappropriate."  Plaintiff's Ex. 7, Kerns, 41:17-20 and 51:11-16.  The cited-to testimony does not support Plaintiff's unilateral assumption that Kerns viewed this as racial harassment or an "incident."  Indeed, Kerns did not report Kidd's actions stating: "I didn't feel like I needed to at that time. I just accepted it as that was Dean, and he's a little different. He just took things as funny to him that everybody else – he would think that everybody else would think was funny also." Plaintiff's Ex. 7, Kerns. 51:17-52:2. |
| | Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

5.5.    Kerns did not want Kidd disciplined or fired for his behavior. [Ex. 10, Kerns' Docs., 001479 – 001480; I&A in Ex. 3, Gibson, 62:22 – 64:24; Ex. 7, Kerns, 113:17 – 114:11.]

| Response | Controverted. This paragraph is controverted for the same reasons and bases outlined in response to paragraph 5.4 above. Further, plaintiff objects to the declaration of Brian Kerns contained in defendants' Ex. 10 on the basis that it constitutes inadmissible hearsay, lacks proper foundation, and contains speculation. *See* Rule 56(c)(2). In his deposition, Deputy Kerns specifically testified that he did not prepare the declaration at issue, even though he signed it. *See* **plaintiff's Ex. 7**, Kerns, 114/15-115/16. Further, defendants' assertion in this paragraph is immaterial and irrelevant. |
|---|---|
| Reply | Objection. Plaintiff fails to properly controvert this fact. |
| | Kerns' declaration was properly identified and authenticated by Kerns during his deposition. Plaintiff's Ex. 7, Kerns, 113:17-114:11.  The fact that Kerns did not personally type the declaration is irrelevant.  If that were the applicable standard, most – if not all – affidavits and declarations introduced during the course of litigation would be deemed inadmissible hearsay, lacking in proper foundation, and containing speculation. |

9

Furthermore, the declaration explains that Kerns was not subjectively of the mindset that Kidd's behavior justified any discipline or termination. In sum, Plaintiff – an individual not employed when the event occurred – is making more of an issue of it than Kerns.

Finally, Plaintiff's reference to his response in paragraph 5.4 does not comply with the requirements of Fed. R. Civ. P. 56(c)(1), as none of the cited-to testimony addresses the fact.

Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion.

5.6.    Plaintiff was not present for the tasing incident. [Ex. 7, Kerns, 109:4 – 8.]

| Response | Uncontroverted. |
| --- | --- |
| Reply | No further response required. |

5.7.    Deputy Nicholas Hartman ("Hartman") was present for the tasing incident. [Ex. 5, Hartman, 24:1 – 25:5; Ex. 7, Kerns, 56:7 – 13.]

| Response | Uncontroverted. |
| --- | --- |
| Reply | No further response required. |

5.8.    Hartman is unaware as to whether or not anyone knew about the tasing incident. [Ex. 5, Hartman, 30:11 – 17.]

| Response | Uncontroverted. |
| --- | --- |
| Reply | No further response required. |

5.9.    Hartman did not report the tasing incident because he thought Kidd and Kerns had a close-knit relationship and it was two friends joking back and forth. [Ex. 5, Hartman, 30:18 -31:3.]

| Response | Uncontroverted but immaterial and irrelevant. |
| --- | --- |
| Reply | No further response required. |

5.10.   According to Sheriff Groves and Chief Deputy Gibson, they did not learn of the tasing incident until receipt of Plaintiff's charge of discrimination. [Ex. 2, Groves, 206:19 – 207:7; Ex. 3, Gibson, 62:8 – 21.]

| Response | Controverted. In his deposition, Chief Daniels specifically testified that, no later than March 2015, he had a meeting with Sheriff Groves in Sheriff Groves' office during which he informed Sheriff Groves about the tasing incident between Kidd and Deputy Kerns. In response, Sheriff Groves said, |
| --- | --- |

|  | among other things, that he would "address it." *See* **plaintiff's Ex. 16**, Daniels, 11/10-12/16; 13/5-16/23; 20/15-21/19; 26/4-21; 26/5-27/16; 34/8-35/2; 45/2-46/8; 49/11-51/9; and 51/22-52/17. Plaintiff also testified that, in December 2014 or January 2015, he told Sheriff Groves about the tasing incident between Kidd and Kerns. *See* **plaintiff's Ex. 1**, Johnson, 140/16-142/3. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |
|  | This fact specifically addresses the testimony of *Sheriff Groves* and *Chief Deputy Gibson* (i.e. *"according to Sheriff Groves and Chief Deputy Gibson"*).  As such, the cited-to testimony of Daniels and Plaintiff fails to controvert the same and fails to meet the requirements of Fed. R. Civ. P. 56(c)(1). |
|  | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

**C.     Plaintiff's application for employment.**

6.      On August 17, 2012, Plaintiff applied for employment with the Cherokee County Sheriff's Department. [Ex. 9, Plaintiff's File, DEFT 000105 – 000108; I&A in Ex. 2, Groves, 102:18 – 103:1; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

Plaintiff's prior employment history.

6.1.    On July 29, 2002, Plaintiff was hired as a Patrol Officer by the Parsons Police Department; he resigned on July 27, 2005. [Ex. 9, Plaintiff's File, DEFT 000123 – 0000126; I&A in Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

6.1.1.   Plaintiff was offered the opportunity to resign from the Parsons Police Department to avoid potential disciplinary or adverse employment or legal action. [Ex. 9, Plaintiff's File, DEFT 000125; I&A in Ex. 15, Affidavit, ¶ 2.]

| **Response** | Controverted in part. Plaintiff concedes only that the form defendants reference respecting his resignation from the Parsons Police Department (Bates page 00125 in defendants' Ex. 9) states, "Officer was offered the opportunity to resign to avoid potential disciplinary or adverse employment or legal action." However, for the reason outlined below in paragraph 6.1.2, |
|---|---|

| | plaintiff does not concede that the language in the reference form reflects the truth of why he resigned from the Parsons Police Department. Further, the form is unsigned by plaintiff. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |
| | Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Here, the truthfulness of paragraph 6.1.2. does not negate the truthfulness of paragraph 6.1.1. |
| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 6.1.2.   According to Plaintiff, he "resigned due to a racial situation that was there with a Corporal Fausnaught." [Ex. 1, Plaintiff, 57:13-16.]

| | |
|---|---|
| **Response** | Uncontroverted as to the factual statement asserted by defendants. However, defendants failed to attach plaintiff's deposition transcript in support of their assertion. *See* Rule 56(e). |
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error. |
| | Pursuant to Fed. R. Civ. P. 56(e)(1) and (2) and the Plaintiff's concession, the Court should consider this fact uncontroverted for purposes of the motion. |

> 6.2.   On September 3, 2005, Plaintiff was hired as a Patrol Officer by the Erie Police Department; he resigned on April 14, 2006. [Ex. 9, Plaintiff's File, DEFT 000127 – 000132; I&A in Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Uncontroverted but immaterial and irrelevant. |
| **Reply** | No further response required. |

> 6.3.   On August 3, 2006, Plaintiff was hired as a Patrol Officer by the Coffeyville Police Department; he resigned on August 19, 2007. [Ex. 9, Plaintiff's File, DEFT 000134 – 000137; I&A in Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Uncontroverted but immaterial and irrelevant. |
| **Reply** | No further response required. |

6.4.   On August 21, 2007, Plaintiff was hired as a Patrol Officer by the Parsons Police Department; he resigned on March 9, 2009. [Ex. 9, Plaintiff's File, DEFT 000138 – 000146; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted but immaterial and irrelevant. |
|----------|-----------------------------------------------|
| Reply | No further response required. |

6.5.   On October 18, 2011, Plaintiff was hired as a Patrol Officer by the Altamont Police Department. [Ex. 9, Plaintiff's File, DEFT 000147 – 000148; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted but immaterial and irrelevant. |
|----------|-----------------------------------------------|
| Reply | No further response required. |

6.6.   In or around early 2012, Plaintiff was hired as a Deputy by the Wilson County Sheriff's Office; he was employed there for approximately five weeks. [Ex. 1, Plaintiff, 73:12 – 74:4 and 78:6 – 13.]

| Response | Uncontroverted but immaterial and irrelevant as to the factual statement proffered by defendants. However, defendants failed to properly cited to plaintiff's deposition transcript in support of their factual assertion. *See* Rule 56(e). |
|----------|-----------------------------------------------|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error. <br><br> This fact is relevant to Plaintiff's experience as a law enforcement officer. <br><br> Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

7.   On March 28, 2013, Sheriff Groves hired Plaintiff as a part-time Deputy. [Ex. 9, Plaintiff's File, DEFT 000150; I&A in Ex. 2, Groves, 117:10 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|----------|-----------------------------------------------|
| Reply | No further response required. |

8.   The Patrol Deputy job description applied to Plaintiff. [Ex. 9, Plaintiff's File, DEFT 000037; I&A in Ex. 2, Groves, 188:16 – 189:25; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|----------|-----------------------------------------------|

| Reply | No further response required. |
|---|---|

**D.**   **Plaintiff's performance while employed.**

9.   On May 1, 2013, Plaintiff began working as a part-time Deputy. [Ex. 9, Plaintiff's File, DEFT 000022; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part. According to the documents cited in support of defendants' assertion (Bates page 000022 in defendants' Ex. 9), plaintiff began working as a party-time deputy at the Sheriff's Office on April 1, 2013, not May 1. Otherwise, uncontroverted. |
|---|---|
| Reply | Defendants admit that they inadvertently stated the date as "May 1, 2013" rather than "April 1, 2013." With this understanding, the fact is true and correct.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

10.   On August 13, 2013, Sheriff Groves moved Plaintiff to a full-time Deputy position. [Ex. 9, Plaintiff's File, DEFT 000017 and 000020; I&A in Ex. 2, Groves, 115:14 – 12; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

<u>Plaintiff's first written performance review: no complaints by Plaintiff.</u>

11.   On February 5, 2014, Plaintiff was issued his first written performance review. [Ex. 9, Plaintiff's File, DEFT 000027 – 000029; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

11.1.   At the time of the review, Plaintiff did not make any complaints about his work, co-workers, or work environment. [Ex. 1, Plaintiff, 206:15 – 208:4; Ex. 9, Plaintiff's File, DEFT 000028 – 000029; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part. Plaintiff concedes only that the written performance review of February 5, 2014, does not memorialize any complaints made by him about his work, co-workers, or work environment. Otherwise, controverted to the extent that defendants failed to support their assertion with plaintiff's deposition transcript. *See* Rule 56(e). |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact. |

> Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Here, Plaintiff has failed to support his implicit assertion that he made complaints about his work, co-workers, or work environment that were not included in his written performance review, with any evidence.
>
> Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.
>
> Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion.

The review stated that:

11.2.    Plaintiff's "paper service completion had been below average but is recently improving," [Ex. 9, Plaintiff's File, DEFT 000027; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from February 5, 2014. |
|---|---|
| Reply | No further response required. |

11.3.    Plaintiff "had multiple opportunities for additional work that were not sought out." [Ex. 9, Plaintiff's File, DEFT 000027; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from February 5, 2014. |
|---|---|
| Reply | No further response required. |

11.4.    Plaintiff "has a difficult time accepting constructive criticism. He should understand when given advice or suggestions, they are given in order to better our agency as a whole."  [Ex. 9, Plaintiff's File, DEFT 000028; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from February 5, 2014. |
|---|---|
| Reply | No further response required. |

11.5.   Plaintiff "can seem to be excessive in asking for equipment, assignment changes, etc. …" [Ex. 9, Plaintiff's File, DEFT 000028; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from February 5, 2014. |
|---|---|
| **Reply** | No further response required. |

12.   On June 21, 2014, dispatch reported to Sheriff Groves that Plaintiff was responding to an alarm call; Sheriff Groves had just driven past Plaintiff who was not responding to an alarm call. [Ex. 2, Groves, 164:11 – 165:8; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted. The content of Bates page 000041 (in defendants' Ex. 9) contains unsubstantiated hearsay, speculation and lacks proper foundation. It is therefore objectionable under Rule 56(c)(2). Furthermore, Sheriff Groves specifically testified that, when he saw plaintiff during the subject incident, plaintiff may well have been engaged in conduct falling within his law enforcement duties. Sheriff Groves also could not say when he made the handwritten list outlined on Bates page 000041, agreed that he did not bring the listed items to plaintiff's attention, and further agreed that he may well have made the list after plaintiff's termination in order to justify plaintiff's firing. *See* **plaintiff's Ex. 2**, Groves, 165/3-17; 166/6-15; 167/6-13; and 182/11-17. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21.  DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves.  Ex. 15, Affidavit, ¶ 2.  The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant.  Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>Furthermore, while Plaintiff is correct that Sheriff Groves admitted that Plaintiff may have been doing *something* that fell within his duties, he specifically testified that Plaintiff was not responding to an alarm call.  Plaintiff's Ex. 2, Groves, 164:11-165:17.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

Plaintiff's second written performance review: no complaints by Plaintiff.

13.     On July 1, 2014, Plaintiff was issued his second written performance review. [Ex. 9, Plaintiff's File, DEFT 000030 – 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

13.1.   At the time of the review, Plaintiff did not make any complaints about his work, co-workers, or work environment. [Ex. 1, Plaintiff, 208:23 – 209:22; Ex. 9, Plaintiff's File, DEFT 000030 – 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part. Plaintiff concedes that his written performance review of July 1, 2014, does not memorialize any complaints made by him about his work, co-workers, or work environment. However, plaintiff otherwise controverts defendants' factual assertion to the extent that defendants failed to attach plaintiff's deposition transcript in support of said factual assertion. *See* Rule 56(e). |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Here, Plaintiff has failed to support his implicit assertion that he made complaints about his work, co-workers, or work environment that were not included in his written performance review, with any evidence.<br><br>Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

13.2.   The review rated Plaintiff's performance as "below average" for reliability and dependability. [Ex. 9, Plaintiff's File, DEFT 000030; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. However, defendants' assertion does not reflect the entirety of plaintiff's written performance review from July 1, 2014. |
|---|---|
| Reply | No further response required. |

13.3. The review rated Plaintiff's performance as "below average" for working relationships. [Ex. 9, Plaintiff's File, DEFT 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. However, defendants' assertion does not reflect the entirety of plaintiff's written performance review from July 1, 2014. |
|---|---|
| Reply | No further response required. |

The review stated:

13.4. Plaintiff "is not willing to work extra shifts / events when opportunities arise and was reluctant to assist in providing coverage during the Baxter Springs tornado response." [Ex. 9, Plaintiff's File, DEFT 000030; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part and uncontroverted in part. Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from July 1, 2014. Further, Sheriff Groves testified that extra shifts are voluntary, and that, as to the Baxter Springs response, he did not have any personal knowledge about the extent of plaintiff's participation beyond what was written in plaintiff's review. *See* **plaintiff's Ex. 2,** Groves, 139/11-140/7; and 141/16-21. |
|---|---|
| Reply | Objection. Plaintiff has failed to property controvert this fact.<br><br>The fact that "most of the time [extra shifts] are voluntary" does not negate the truthfulness or accuracy of the fact at hand.  Furthermore, Plaintiff does not dispute that bates-stamped document DEFT 000030 is a true and accurate copy of his performance review from July 1, 2014.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

13.5. Plaintiff "should recognize the importance of teamwork, which includes helping co-workers when they need time off or pitching in when an event occurs requiring all hands on deck." [Ex. 9, Plaintiff's File, DEFT 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from July 1, 2014. |
|---|---|
| Reply | No further response required. |

13.6. Plaintiff "struggles with creating strong relationships with co-workers, which does not go towards creating an overall positive

work environment." [Ex. 9, Plaintiff's File, DEFT 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted as to the language in quotation marks. However, the quoted language does not reflect the entirety of plaintiff's written performance review from July 1, 2014. |
|---|---|
| Reply | No further response required. |

13.7.  Plaintiff "needs to work on his relationships with other Sheriff's Officer personnel in each division." [Ex. 9, Plaintiff's File, 000031; I&A in Ex. 2, Groves, 137:5 – 18; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted to the extent that defendants have basically correctly quoted the subject language from the written performance review (except that defendants incorrectly typed "Officer," instead of "Office"). However, the quoted language does not reflect the entirety of plaintiff's written performance review from July 1, 2014. |
|---|---|
| Reply | Defendants admit that the quoted language should reflect "Office" in lieu of "Officer."  Please see Ex. 9, Plaintiff's File, 000031.  With this understanding, the fact is true and accurate.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

14.  On July 24, 2014, Chief Deputy Gibson emailed Plaintiff to advise that case no. 14-0631 was overdue. [Ex. 9, Plaintiff's File, 001772; I&A in Ex. 3, Gibson, 16:1 – 10.]

| Response | Controverted in part and uncontroverted in part. Uncontroverted as to defendants' factual assertion. Further, the e-mail speaks for itself. Controverted to the extent that defendants' factual assertion suggests that the e-mail in question concerning the overdue report formed the basis for plaintiff's termination, as Chief Deputy Gibson testified that it did not. *See* **plaintiff's Ex. 3**, Gibson, 16/1-14; and 111/9-112/14. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Defendant admits that Chief Deputy Gibson testified that bates-stamped document 001772 was just one of "the emails that had [Plaintiff's] name on them" and did not represent "any work issues … that stood out for [Plaintiff] over and above anybody else."  Plaintiff's Ex. 3, Gibson, 111:9-112:14.  That testimony does not negate the truthfulness or accuracy of the fact.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

An unsolicited complaint regarding Plaintiff's dangerous conduct: reprimand.

15.    On August 29, 2014, the Cherokee County Sheriff's Department received a complaint about a Deputy driving without due regard for safety while running with lights and sirens through Crestline Junction. [Ex. 9, Plaintiff's File, DEFT 000032; I&A in Ex. 2, Groves, 154:8 – 17; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

15.1.   After reviewing Plaintiff's car camera video, it was confirmed that on August 29, 2014, at approximately 11:17 A.M., Plaintiff passed two cars on a hill, in a no passing zone, traveling at over 100 mph; there was an oncoming car just past the crest of the hill.  [Ex. 9, Plaintiff's File, DEFT 000032; I&A in Ex. 2, Groves, 154:8 – 17; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

15.2.   After reviewing Plaintiff's car camera video, it was confirmed that on August 29, 2014, at approximately 11:20 A.M., Plaintiff entered the Crestline Junction intersection, with his view obstructed, traveling at 55 mph. [Ex. 9, Plaintiff's File, DEFT 000032; I&A in Ex. 2, Groves, 154:8 – 17; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

15.3.   On September 5, 2014, Plaintiff was issued a written reprimand for his violation of the Rules of Conduct Policy and the Agency Vehicle Driving Policy. [Ex. 9, Plaintiff's File, DEFT 000032; I&A in Ex. 2, Groves, 154:8 – 17; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

15.4.   Prior to September 5, 2014, Plaintiff had been issued more than one verbal warning that he was driving too fast. [Ex. 3, Gibson, 89:2 – 9.]

| **Response** | Controverted. *See* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question No. 9, at pp. 8 (they "began accusing me of[] 'failing' to do my job but no one told me or showed me what I was doing wrong") and 9 ("[w]hile Chief Deputy Gibson lent professional support and advice to other white officers, he refused to do the same for me"). *See also* **plaintiff's Ex.** |
|---|---|

| | |
|---|---|
| | **18**, Johnson interrogatory answers to County, at question No. 10, at pp. 8 and 9 (same as above). |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Plaintiff does not comply with this requirement by citing to his Interrogatory Answers No. 9 (Plaintiff's Ex. 17) and No. 10 (Plaintiff's Ex. 18), as those Answers do not negate the truthfulness or accuracy of the fact.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

<u>Insubordinate behavior: Plaintiff ignores the verbal instructions of his superior.</u>

16.     On November 25, 2014, Chief Deputy Gibson called a meeting at the Cherokee County Sheriff's Department; he provided each Deputy with a copy of a new 12 hour work schedule, which was necessary for coverage due to a staff shortage. [Ex. 9, Plaintiff's File, DEFT 000035; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

16.1.     During the meeting, Plaintiff stated the various reasons the 12 hour schedule was inconvenient for him. [Ex. 9, Plaintiff's File, DEFT 000035; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Controverted in part and uncontroverted in part. Uncontroverted to the extent that the cited document (Bates page 000035 in defendants' Ex. 9) speaks for itself and says what it says. Controverted to the extent that Sheriff Groves never confronted plaintiff with any concerns about plaintiff's behavior during the meeting and never asked plaintiff for his side of the story. *See* **plaintiff's Ex. 2**, Groves, 171/7-16. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>The fact that Sheriff Groves does not specifically recall bringing bates-stamped document 000035 to Plaintiff's attention does not negate the truthfulness or accuracy of the fact. Plaintiff's Ex. 2, Groves, 171:7-16. Furthermore, Plaintiff does not dispute that the information contained in bates-stamped document 000035 is true and accurate. |

| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

      16.2.    Plaintiff prematurely departed the meeting against the verbal instructions of Corporal Justin Noel; he appeared extremely agitated. [Ex. 2, Groves, 172:21 – 173:2; Ex. 9, Plaintiff's File, DEFT 000035; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Controverted.  The subject organizational chart is inaccurate to the extent that it fails to reflect the position of "corporal" at the Sheriff's Office and where on the chain of command a corporal falls relative to a patrol deputy. *See* **plaintiff's Ex. 2**, Groves, 173/6-174/17.  Further, Sheriff Groves specifically testified that he does not know whether plaintiff heard or did not hear Corporal Noel's instructions and Sheriff Groves acknowledged that there was a room full of people at the time of the meeting in question.  *See* **plaintiff's Ex. 2**, Groves, 177/7-11. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Defendants admit that the organizational chart predates the addition of a corporal position within the Cherokee County Sheriff's Department and thus, does not reflect the same.  Defendant further admits that a corporal outranks a patrol deputy.  Please see Plaintiff's Ex. 2, Groves, 173:3-174:17.  With this understanding, the subject organizational chart is true and accurate.<br><br>Furthermore, the fact that Sheriff Groves has no personal knowledge regarding whether Plaintiff heard Corporal Noel's instructions does not negate the fact that the instructions were given and that Plaintiff prematurely departed the meeting in contravention of those instructions.  Plaintiff's Ex. 2, Groves, 172:21 – 173:2 and 177:7-11.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

      16.3.    Sheriff Groves considered Plaintiff's departure an act of insubordination. [Ex. 2, Groves, 171:7 – 11.]

| **Response** | Controverted in part.  Plaintiff concedes that Sheriff Groves testified that he thought plaintiff's departure from the subject meeting was an act of insubordination.  However, plaintiff does not conceded that he in fact engaged in insubordination, for the reasons cited above in paragraph 16.2.  Further, Sheriff Groves never brought the alleged insubordination to plaintiff's attention to get his side of the story.  *See* **plaintiff's Ex. 2**, Groves, 171/7-16. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |

|  | This fact specifically addresses the testimony of *Sheriff Groves* (i.e. *"Sheriff Groves considered…"*).  As such, whether or not Plaintiff intended the act as one of insubordination is irrelevant and fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).  The fact that Sheriff Groves has no personal knowledge regarding whether Plaintiff heard Corporal Noel's instructions does not negate the fact that the instructions were given and that Plaintiff prematurely departed the meeting in contravention of those instructions.  Plaintiff's Ex. 2, Groves, 172:21 – 173:2 and 177:7-11.<br><br>Furthermore, the fact that Sheriff Groves does not specifically recall bringing bates-stamped document 000035 to Plaintiff's attention does not negate the truthfulness or accuracy of the fact at hand.  Plaintiff's Ex. 2, Groves, 171:7-16.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

17.     On February 19, 2015, Chief Deputy Gibson emailed Plaintiff to advise that case no. 14-1242 was overdue. [Ex. 9, Plaintiff's File, 001769; I&A in Ex. 3, Gibson, 16:1 – 10.]

| **Response** | Controverted in part and uncontroverted in part.  Uncontroverted as to defendants' factual assertion.  Further, the e-mail speaks for itself.  Controverted to the extent that defendants' factual assertion suggests that the e-mail in question concerning the overdue report formed the basis for plaintiff's termination, as Chief Deputy Gibson testified that it did not.  *See* **plaintiff's Ex. 3**, Gibson, 16/1-14; and 111/9-112/14. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Defendant admits that Chief Deputy Gibson testified that bates-stamped document 001769 was just one of "the emails that had [Plaintiff's] name on them" and did not represent "any work issues … that stood out for [Plaintiff] over and above anybody else."  Plaintiff's Ex. 3, Gibson, 111:9-112:14.  That testimony does not negate the truthfulness or accuracy of the fact.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

A second unsolicited complaint regarding Plaintiff: missing video discovered.

18.     On May 30, 2015, the Cherokee County Sheriff's Department received a complaint from the Chief of Police of Oswego, Kansas regarding Plaintiff. [Ex. 2, Groves, 163:21 – 164:10; Ex. 9, Plaintiff's File, DEFT 000034 and DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.  However, defendants' factual assertion is controverted for the same reasons outlined in response to paragraph 12 above.  Plaintiff also incorporates the objection outlined in paragraph 12 above as though fully set forth herein.  Further, neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.  *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.

Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21.  DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves.  Ex. 15, Affidavit, ¶ 2.  The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant or argument.  Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.

Furthermore, whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).

As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

18.1.   On June 1, 2015, Sheriff Groves requested that Chief Deputy Gibson locate a video of the incident from May 30, 2015. [Ex. 9, Plaintiff's File, DEFT 000034; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.  However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.  *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.

Whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).

As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider |

| | this fact uncontroverted for purposes of the motion. |
|---|---|

18.2.   On June 1, 2015, Chief Deputy Gibson reviewed Plaintiff's car camera video and body camera video; he was unable to locate a video of the incident from May 30, 2015. [Ex. 9, Plaintiff's File, DEFT 000034; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.   Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.   However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.   *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

18.3.   On June 4, 2015, Chief Deputy Gibson again tried to locate a video of the incident from May 30, 2015; he found the incident from May 30, 2015 had not been recorded. [Ex. 9, Plaintiff's File, DEFT 000034; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.   Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.   However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.   *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

18.4.   Plaintiff had not reported any problems with either his car camera or his body camera. [Ex. 9, Plaintiff's File, DEFT 000034; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.  However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.  *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

18.5.   On June 10, 2015, Chief Deputy Gibson located a body camera video of a car stop by Plaintiff on May 24, 2015; the stop had not been recorded on Plaintiff's car camera video. [Ex. 9, Plaintiff's File, DEFT 000034; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that the content of Bates page 000034 (in defendants' Ex. 9) states what it states.  However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of missing body camera footage to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missing footage.  *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12.  Further, Bates page 000034 of defendants' Ex. 9 indicates that the car stop in question was at least partially recorded, and Sheriff Groves testified that he would not have an issue with a patrol deputy turning off a body camera for a purely personal encounter with a citizen.  *See* **plaintiff's Ex. 2**, Groves,178/12-179/21. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Whether or not Plaintiff was approached regarding the allegations is irrelevant to the fact or is an argument and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Defendants admit that the fact should reflect that "the stop had not been *fully* recorded[.]"  With this understanding, the fact is true and accurate.<br><br>Please see Ex. 9, Plaintiff's File, DEFT 000034, which outlines the following |

interaction prior to the video being stopped:

Johnson approaches the driver's side of the truck and says "sup" to the driver. The driver was a white male appearing to be in his 40s or 50s. The driver says "How are you doing?" Johnson then says to the driver, "Alright for about being struck." The driver says, "I thought I had plenty of room. Did I … Did I scare you?" The video lasted approximately 2 more seconds without either person saying anything and then the camera stopped recording.

While it is true that Sheriff Groves testified that he "wouldn't have an issue with" a deputy turning off his body camera if he encounter his family doctor and was discussing confidential information related to his/her healthcare, the above scenario does not fall into that category.  Plaintiff's Ex. 2, Groves, 178:12-179:21.  Sheriff Groves generally testified that he could not "think of a scenario where [turning off one's body camera] would be allowed." *Id.*

As such, and pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion.

19.    On June 8, 2015, Sheriff Groves requested that Plaintiff participate in the funeral procession for a family member of an employee of Cherokee County Sheriff's Department; Plaintiff indicated he did not want to attend. [Ex. 1, Plaintiff, 238:16 - 21; Ex. 9, Plaintiff's File, 000252; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that Sheriff Groves sent the subject e-mail reflected on Bates page 000252 in defendants' Ex. 9.  However, defendants' factual assertion is otherwise controverted to the extent that defendants failed to attach plaintiff's deposition transcript in support of their factual assertion.  *See* Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

Plaintiff fails to respond to a theft call; is witnessed watching YouTube videos.

20.    On June 21, 2015, at approximately 1:15 P.M., Plaintiff was dispatched to a theft call; he failed to respond. [Ex. 2, Groves, 159:1-16; Ex. 9, Plaintiff's File, DEFT 000033 and DEFT 000215 – 000216; I&A in Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted in part.  Plaintiff concedes that the content of Bates page |
|---|---|

| | |
|---|---|
| | 000033 (in defendants' Ex. 9) states what it states. However, defendants' factual assertion is controverted to the extent that neither Sheriff Groves nor Chief Deputy Gibson ever confronted plaintiff about the allegations of not responding to calls to get plaintiff's side of the story or an explanation from plaintiff concerning the alleged missed calls. *See* **plaintiff's Ex. 2**, Groves, 180/8-181/12. Further, Sheriff Groves could not say how many times plaintiff allegedly failed to take a call, admitted that he never recorded any such allegation in any of plaintiff's formal evaluations, and also admitted that these allegations stemmed from "chatter" from unidentified and unknown people. He likewise admitted that there is no prohibition against a deputy patrolling one area of the county verses another. *See* **plaintiff's Ex. 2**, Groves, 143/21-24; 145/10-146/8; 148/16-150/17; and 151/4-13. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff's first cited-to deposition testimony (plaintiff's Ex. 2, Groves, 180/8-181/12) does not stand for the proposition asserted by Plaintiff. It addresses Exhibit 16 to Sheriff Groves deposition testimony, which does not encompass DEFT 00033 or DEFT 000215 – 000216. As such, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Plaintiff's second cited-to deposition testimony (plaintiff's Ex. 2, Groves, 143/21-24; 145/10-146/8; 148/16-150/17; and 151/4-13) is irrelevant and fails to negate the truthfulness or accuracy of the fact at hand, which addresses a specific incident. Again, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

20.1.   At approximately 1:30 P.M., Plaintiff was seen by Sergeant Stephen Harper ("Sergeant Harper") watching YouTube videos at the Cherokee County Sheriff's Department. [Ex. 9, Plaintiff's File, DEFT 000033; I&A in Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Controverted in part for the same reasons outlined above in paragraph 20, incorporated by reference, as though fully set forth herein. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff's first cited-to deposition testimony (plaintiff's Ex. 2, Groves, 180/8-181/12) does not stand for the proposition asserted by Plaintiff. It addresses Exhibit 16 to Sheriff Groves deposition testimony, which does not encompass DEFT 00033. As such, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Plaintiff's second cited-to deposition testimony (plaintiff's Ex. 2, Groves, 143/21-24; 145/10-146/8; 148/16-150/17; and 151/4-13) is irrelevant and |

| | fails to negate the truthfulness or accuracy of the fact at hand, which addresses a specific incident.  Again, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1). <br><br> Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

Sheriff Groves receives verbal complaints from Plaintiff's co-workers.

21.    During Plaintiff's employment, Sheriff Groves received verbal complaints that Plaintiff would go to the northwest, non-populated part of Cherokee County towards the end of his shift (near where Plaintiff lived in Labette County), to avoid responding to dispatch calls that would have potentially kept him over his shift-time. [Ex. 2, Groves, 145:10 – 146:14 and 148:16 – 149:13.]

| Response | Controverted.  Plaintiff objects to defendants' factual assertion herein on the basis that it is unsubstantiated hearsay and lacks proper foundation.  Sheriff Groves specifically testified that he was unable to identify who was making the complaints in question and that it was simply "chatter" made by unidentified and unknown people.  *See* Rule 56(c)(2).  Further, he admitted that there is no prohibition against a deputy patrolling in one area of the county versus another.  *See* **plaintiff's Ex. 2**, Groves, 149/14-150/17. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact. <br><br> Sheriff Groves testified that this was common chatter amongst the deputies.  Plaintiff's Ex. 2, Groves, 146:1-5.  This was confirmed by Chief Deputy Gibson and Undersheriff Clugston.  Plaintiff's Ex. 3, Gibson, 115:1-11; Plaintiff's Ex. 8, Clugston, 57:9-58:5. <br><br> The fact that there is no explicit prohibition against a deputy patrolling in one area of the county versus another does not negate the truthfulness of the fact, is argument, and thus, fails to comply with Fed. R. Civ. P. 56(c)(1). <br><br> Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

Plaintiff develops a reputation amongst his co-workers of showing poor initiative.

22.    During Plaintiff's employment, he developed a reputation of showing poor initiative. [Ex. 4, Piepho, 39:14 – 40:2; Ex. 5, Hartman, 36:1 – 7.]

| Response | Controverted.  Defendants' factual assertion in this paragraph is based on unsubstantiated hearsay and opinion testimony and thus lacks proper foundation.  Plaintiff thus objects pursuant to Rule 56(c)(2).  In the cited testimony, Deputy Piepho specifically said that he was offering "opinions" |
|---|---|

| | and ultimately he admitted that his opinions were based on assumptions without personal knowledge.  Further, Deputy Hartman admitted in his deposition that he had only heard "hearsay" and "rumors" about plaintiff's work habits without knowing whether there was any validity to the hearsay or rumors.  *See* **plaintiff's Ex. 4**, Piepho, 39/14-43/18.  *See also* **plaintiff's Ex. 5**, Hartman, 36/8-18 |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |
| | Testimony about the reputation of a person's character among associates or in the community falls within an exception to the hearsay rule.  Fed. R. Evid. 803(21). |
| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 22.1. According to Former Deputy Frank Piepho ("Deputy Piepho"), Plaintiff was "not the most proactive; fairly lazy and looked for ways to avoid doing paperwork." [Ex. 4, Piepho, 39:14 – 40:2.]

| **Response** | Controverted.  *See* the response and objection to paragraph 22 above, as it pertains to Deputy Piepho. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |
| | Testimony about the reputation of a person's character among associates or in the community falls within an exception to the hearsay rule.  Fed. R. Evid. 803(21). |
| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 22.2. According to Former Deputy Nicholas Hartman ("Deputy Hartman"), "a lot of people would say that … they thought [Plaintiff] might be lazy or -- or trying to pawn off work onto other deputies." [Ex. 5, Harman, 36:1 – 7.]

| **Response** | Controverted.  *See* the response and objection to paragraph 22 above, as it pertains to Deputy Hartman. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact. |
| | Testimony about the reputation of a person's character among associates or in the community falls within an exception to the hearsay rule.  Fed. R. Evid. 803(21). |
| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

22.3.   According to Kerns, "[w]hen [Plaintiff] first began to work in the Department, I thought he did a good job and carried his share of the work.  Over time, however, he began to shirk some of his responsibilities and did not carry his load.  It became common knowledge among other Deputies that [Plaintiff] would try to avoid responding to calls, or to complete paperwork, which meant that other Deputies had to take up his slack.

I understand that [Plaintiff] is alleging that he was discriminated against by Cherokee County because of his race.  I understand that he is alleging that he was not promoted into the property crimes Detective position because of his race, but my race (which I believe is the same as his) did not prevent me from being promoted.

I understand that he is also alleging he was terminated from employment due to race discrimination.  Based on my knowledge of his work performance, I do not disagree with the decision to terminate [Plaintiff's] employment as a Deputy.  Based upon what I observed, his work performance is what resulted in his termination from employment with the Sheriff's Department, not discrimination due to his race." [Ex. 10, Kerns' File, 001480; I&A in Ex. 3, Gibson, 62:22 – 64:24; Ex. 7, Kerns, 113:17 – 114:11.]

| Response | Controverted.  Plaintiff objects to the declaration of Brian Kerns contained in defendants' Ex. 10 on the basis that it constitutes inadmissible hearsay, lacks proper foundation, and contains speculation.  *See* Rule 56(c)(2).  In his deposition, Deputy Kerns specifically testified that he did not prepare the declaration at issue, even though he signed it.  Further, Deputy Kerns never spoke with either Sheriff Groves or Chief Deputy Gibson about why plaintiff was terminated and was not told the reason for his termination.  Deputy Kerns gave testimony to this effect *after* he had already signed the declaration at issue which had been prepared for him while defendants were represented by counsel.  *See* **plaintiff's Ex. 7**, Kerns, 92/10-22; and 114/15-115/16.  Finally, defendants' assertion in this paragraph is immaterial and irrelevant. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Kerns' declaration was properly identified and authenticated by Kerns during his deposition. Plaintiff's Ex. 7, Kerns, 113:17-114:11.  The fact that Kerns did not personally type the declaration is irrelevant.  If that were the applicable standard, most – if not all – affidavits and declarations introduced during the course of litigation would be deemed inadmissible hearsay, lacking in proper foundation, and containing speculation.<br><br>Furthermore, the fact that Deputy Kerns never spoke with either Sheriff |

31

| | |
|---|---|
| | Groves or Chief Deputy Gibson about why plaintiff was terminated and was not told the reason for his termination fails to negate the truthfulness or accuracy of the fact and is argument. As such, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Finally, testimony about the reputation of a person's character among associates or in the community falls within an exception to the hearsay rule. Fed. R. Evid. 803(21).<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

22.4.  Plaintiff refused to take a police report after Daniels called Cherokee County Sheriff's Department reporting his vehicle had been backed into. [Ex. 2, Groves, 161:1 –21; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| | |
|---|---|
| **Response** | Controverted. The content of Bates page 000041 (in defendants' Ex. 9) contains unsubstantiated hearsay, speculation and lacks proper foundation. It is therefore objectionable under Rule 56(c)(2). Furthermore, Sheriff Groves specifically testified that he could not say when he made the handwritten list outlined on Bates page 000041, agreed that he did not bring the listed items to plaintiff's attention, and further agreed that he may well have made the list after plaintiff's termination in order to justify plaintiff's firing. *See* **plaintiff's Ex. 2**, Groves, 166/6-15; 167/6-13; and 182/11-17. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21. DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves. Ex. 15, Affidavit, ¶ 2. The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant and is argument. Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

22.5.  Plaintiff was directed to serve an individual with a PFA (protection from abuse) at the courthouse on a specific date and time; Plaintiff failed to do so. [Ex. 2, Groves, 161:22 – 162:10; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted for the same reasons outlined above in response to paragraph 22.4, incorporated by reference as though fully set forth herein. *See also* **plaintiff's Ex. 2**, Groves, 169/14-25. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21. DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves. Ex. 15, Affidavit, ¶ 2. The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant and is argument. Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 22.6. Plaintiff responded to an injury accident on Kansas Highway 7 and failed to take a report. [Ex. 2, Groves, 162:11 – 22; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted for the same reasons outlined above in response to paragraph 22.4, incorporated by reference as though fully set forth herein. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21. DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves. Ex. 15, Affidavit, ¶ 2. The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant and argument. Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 22.7. Cherokee County Sheriff's Department received a complaint from an employee at the gas station in Weir, Kansas, that Plaintiff was spending a lot of time just hanging out in the store. [Ex. 2, Groves, 162:22 – 163:2; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted for the same reasons outlined above in response to paragraph 22.4, incorporated by reference as though fully set forth herein. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21.  DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves.  Ex. 15, Affidavit, ¶ 2.  The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant.  Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

22.8.   Plaintiff was asked to do a neighborhood canvas arising out of a homicide in Cherokee County; Plaintiff complained about doing it. [Ex. 2, Groves, 163:4 – 12; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted for the same reasons outlined above in response to paragraph 22.4, incorporated by reference as though fully set forth herein. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21.  DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves.  Ex. 15, Affidavit, ¶ 2.  The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant and is argument.  Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

22.9.   Plaintiff spent too much time in the office on Facebook looking at videos. [Ex. 2, Groves, 163:3 – 4; Ex. 9, Plaintiff's File, DEFT 000041; I&A in Ex. 2, Groves, 157:16 – 159:16; Ex. 15, Affidavit, ¶ 2.]

| Response | Controverted for the same reasons outlined above in response to paragraph 22.4, incorporated by reference as though fully set forth herein. |
|---|---|

| Reply | Objection. Plaintiff has failed to properly controvert this fact.

Plaintiff testified that "[t]he top page of Exhibit 16 [bates-stamped document DEFT 000041] would be handwritten notes by me." Plaintiff's Ex. 2, Groves, 157:16-21.  DEFT 000041 has further been identified and authenticated via the Affidavit of Sheriff Groves.  Ex. 15, Affidavit, ¶ 2.  The fact that Sheriff Groves cannot remember the exact date the document was authored is irrelevant and is argument.  Plaintiff can provide no basis – citation or otherwise – for his unfounded assertion that bates-stamped document DEFT 000041 contains unsubstantiated hearsay, speculation, and lacks proper foundation.

As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

**E.    Plaintiff's termination.**

23.    On June 25, 2015, Plaintiff was terminated by Sheriff Groves. [Ex. 2, Groves, 41:7 – 11; Ex. 9, Plaintiff's File, DEFT 000192 – 000195; I&A in Ex. 2, Groves, 192:9 – 20; Ex. 15, Affidavit, ¶ 2.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

**F.    Plaintiff's post-termination discoveries.**

24.    According to Plaintiff, Deputy Hamlin called Doug Wydick's black dog a "nigger."  [Ex. 1, Plaintiff, 95:4 – 97:6.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.

Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

24.1.    Plaintiff did not witness this; he was told about the event by Former Deputy Rosenberg. [Ex. 1, Plaintiff, 95:22 – 97:17; Ex. 6, Rosenberg, 83:8 – 18.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition |

| | testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

24.2.  Plaintiff learned of this event after his termination from the Cherokee County Sheriff's Department. [Ex. 6, Rosenberg, 83:20 – 84:16.]

| Response | Controverted.  In her deposition, Ms. Rosenberg specifically said that she is not aware whether plaintiff knew about the offensive reference to Wydick's black dog prior to his termination.  She also admitted that plaintiff "may have" been aware of the reference prior to his termination.  *See* **plaintiff's Ex. 6**, Rosenberg, 125/15-126/14. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Plaintiff testified that he learned of this event from Tina (Blockburger) Rosenberg and her boyfriend Nick Hartman.  Plaintiff's Ex. 1, Plaintiff, 96:4-97:17.  Ms. Rosenberg specifically testified that she did not tell Plaintiff about this event until after his termination.  Plaintiff's Ex. 6, Rosenberg, 83:20 – 84:16 and 125:15-126:6.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

25.  According to Plaintiff, his co-workers would use the term "white privilege." [Ex. 1, Plaintiff, 97:18 – 22.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

25.1.  Plaintiff states that he did not understand what this term meant while he was employed by the Cherokee County Sheriff's Department. [Ex. 1, Plaintiff, 97:18 – 22.]

| Response | Controverted to the extent that defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e).  Further, the specific testimony cited by defendants does not support their assertion about plaintiff's testimony. |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff |

| | Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Defendants further admit that their cited-to testimony should reflect "97:18-98:22."  With this understanding, the fact is true and accurate.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

> 25.2.   Plaintiff states that he "found out later what it actually meant" after reading about it on the internet. [Ex. 1, Plaintiff, 97:25 – 98:16.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 25.3.   Plaintiff states that he then concluded that the term had been used during his employment in an offensive manner.  [Ex. 1, Plaintiff, 98:17 – 99:1.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

**G.   Plaintiff's charge of discrimination.**

> 26.   On December 18, 2015, Plaintiff dually-filed his charge of discrimination with the Kansas Human Rights Commission and the U.S. Equal Employment Opportunity Commission. [ECF Doc. 1, Complaint, ¶¶ 7 – 8; ECF Doc. 3, Answer, ¶¶ 7 – 8.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

**H.   Internal investigation of Cherokee County Sheriff's Department.**

27.     Upon receipt of Plaintiff's charge of discrimination, the Cherokee County
        Sheriff's Department conducted an internal investigation into the
        allegations included in the same. [Ex. 2, Groves, 207:4 – 7; Ex. 13,
        Internal Investigation, 000268 – 000274.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

27.1.   The internal investigation revealed that a tasing incident did occur
        between Deputy Dean Kidd and Deputy Brian Kerns prior to
        Plaintiff's employment with the Cherokee County Sheriff's
        Department. [Ex. 13, Internal Investigation, 000274.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

27.2.   The internal investigation revealed that Deputy Dean Kidd did
        display an inappropriate video in front of Plaintiff. [Ex. 13,
        Internal Investigation, 000274; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. |
|----------|-----------------|
| Reply | No further response required. |

27.3.   The internal investigation could not validate Plaintiff's allegation
        that Deputy Kidd called him a "boy" and told him to "pick up trash
        after the white folk[.]" [Ex. 13, Internal Investigation, 000274;
        I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Controverted in part.  Plaintiff concedes that the internal investigation report states that the subject allegations could not be "completely validated." However, plaintiff controverts this paragraph to the extent that Deputy Kidd did, in fact, call him "boy" and tell him to "pick up trash after the white folk," on the basis of plaintiff's mixed race status. Further, plaintiff complained to Sheriff Groves about Deputy Kidd's repeated harassment in this regard in December 2014 or January 2015.  In response (according to plaintiff), Sheriff Groves told plaintiff that he "doesn't care for people who tell on other people," that he "can't deal with" tattle-tales, and that "[i]t should be worked out between you guys."  *See* **plaintiff's Ex. 1**, Johnson, 176/14-179/25; and 180/9-183/22. *See also* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question Nos. 3 and 9.  *See also* **plaintiff's Ex. 18**, Johnson interrogatory answers to County, at question Nos. 1 and 10.  Further, Sheriff Groves admitted that plaintiff's allegations about Deputy Kidd's inappropriate racial remarks are "consistent" with the allegations against Kidd that were ultimately substantiated in the internal investigation report and that, assuming the inappropriate remarks were actually made, they would have violated Policy No. 27, the workplace |
|----------|---|

| | harassment policy. *See* **plaintiff's Ex. 2**, Groves, 211/21-213/11; and 225/4-21. Deputy Kerns confirmed in his deposition that plaintiff reported to him that Kidd had been calling him "boy," and saying, "'Hey, boy,' and stuff like that." *See* **plaintiff's Ex. 7**, Kerns, 74/4-12. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Plaintiff's cited-to testimony fails to dispute the truthfulness or accuracy of this fact. Indeed, Sheriff Groves' admission that Plaintiff's allegations *if true* would have violated Policy No. 27 is irrelevant where the investigation could not validate those allegations. Likewise, Kerns' testimony that "I think I remember him saying in my mind that Dean was calling him a 'boy,' and saying, 'Hey, boy,'" does not prove that the internal investigation could have validated, or did validate, the specific allegation at hand. There is no evidence that Kerns made such a disclosure during the investigation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

27.4.   The internal investigation could not validate Plaintiff's allegation that Deputy Kidd increased his anger and racially discrimination behavior towards Plaintiff after Kidd applied for a part-time job with the Columbus Police Department. [Ex. 13, Internal Investigation, 000274; I&A in Ex. 2, Groves, 220:4 – 10.]

| **Response** | Controverted in part. Plaintiff concedes that the internal investigation report states that the subject allegations could not be "completely validated." However, plaintiff controverts this paragraph to the extent that Deputy Kidd did, in fact, increase his anger and racially discriminatory behavior toward plaintiff following Kidd's failure to get the part-time job with the Columbus Police Department. *See* **plaintiff's Ex. 1**, Johnson, 185/6-188/2; and 189/3-191/1. *See also* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question Nos. 3 and 9. *See also* **plaintiff's Ex. 18**, Johnson interrogatory answers to County, at question Nos. 1 and 10. Further, the investigation report confirms that "Deputy Kidd said he later spoke with Johnson about what he had spoken to the Chief about," and that "Deputy Kidd . . . did not believe that Johnson had the right to tell the Chief about the incident between him and Kerns." *See* defendants' Ex. 13, Internal Investigation, at 000271. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular |

| | parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Plaintiff's cited-to testimony fails to dispute the truthfulness or accuracy of this fact.  Indeed, the fact that Deputy Kidd did not believe that Johnson had the right to tell the Chief about the incident does not, in and of itself, confirm Plaintiff's allegation.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

28.    On January 19, 2016, Deputy Kidd was terminated based on the findings of Cherokee County Sheriff's Department's internal investigation. [Ex. 2, Groves, 243:17 – 244:2; Ex. 11, Kidds' File, 001766 – 001768; I&A in Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted in part and controverted in part.  Uncontroverted that Deputy Kidd was terminated on January 19, 2016, ostensibly based on the findings of the internal investigation report.  Controverted to the extent that defendants' assertion implies that Sheriff Groves was not aware of Deputy Kidd's racially discriminatory behavior prior to the internal investigation in January 2016.  *See* responses to paragraphs 5.10 and 27.3 above, incorporated by reference as though fully set forth herein. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact .<br><br>Fact 5.10 specifically addresses the testimony of *Sheriff Groves* and *Chief Deputy Gibson* (i.e. *"according to Sheriff Groves and Chief Deputy Gibson"*).  As such, the cited-to testimony of Daniels and Plaintiff is irrelevant and fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Plaintiff's cited-to testimony in response to fact 27.3. fails to dispute the truthfulness or accuracy of the same.  Indeed, Sheriff Groves' admission that Plaintiff's allegations *if true* would have violated Policy No. 27 is irrelevant where the investigation could not validate those allegations.  Likewise, Kerns' testimony that "I think I remember him saying in my mind that Dean was calling him a 'boy,' and saying, 'Hey, boy,'" does not prove that the internal investigation could have validated, or did validate, the specific allegation at hand.<br><br>Regardless, the testimony cited to by Plaintiff in response to both fact 5.10 and fact 27.3 is irrelevant to the fact that Deputy Kidd was terminated on January 19, 2016 based on the findings of the internal investigation and thus, fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact |

| | uncontroverted for purposes of the motion. |
|---|---|

**I.    Plaintiff's pending lawsuit includes allegations not mentioned in his charge of discrimination.**

29.    Plaintiff filed his pending Complaint with the U.S. District Court for the District of Kansas, Case No. 2:17-cv-02644-JAR-GEB, on November 6, 2017. [ECF Doc. 1, Complaint.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

Plaintiff alleges that Defendants failed to promote him in 2014.

30.    On January 2, 2014, Plaintiff sat for the Cherokee County Sheriff's Department Investigator Test for the first time in conjunction with an opening for Detective posted in December, 2013. [Ex. 9, Plaintiff's File, DEFT 000169 – 000177 and 001795; I&A in Ex. 4, Piepho, 47:3 -  19; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

30.1.    Plaintiff was not hired for the position. [Ex. 2, Groves, 237:3 – 18 (Sheriff Groves advising that Kidd was hired for the first Detective position for 6 months; not rehired.); Ex. 8, Clugston, 23:3 – 12.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

30.2.    Dean Kidd was hired for the position. [Ex. 2, Groves, 237:3 – 18; Ex. 8, Clugston, 23:3 – 12.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

31.    On October 21, 2014, Plaintiff sat for the Cherokee County Sheriff's Department Investigator Test for the second time in conjunction with an opening for Detective posted on October 17, 2014. [Ex. 9, Plaintiff's File, DEFT 000178 – 000186 and 001478; I&A in Ex. 3, Gibson, 62:22 – 64:24; Ex. 15, Affidavit, ¶ 2.]

| **Response** | Uncontroverted. |
|---|---|
| **Reply** | No further response required. |

31.1.   Plaintiff was not hired for the position. [Ex. 1, Plaintiff, 246:2 – 12 (Plaintiff recalling having asked: "Why didn't I get it?"); Ex. 8, Clugston, 25:12 – 18.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.  Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

31.2.   Beau Hamlin was hired for the position on December 2, 2014. [Ex. 2, Groves, 217:2 – 7; Ex. 8, Clugston, 25:12 – 20; Ex. 12, Hamlin's File, 002079; I&A in Ex. 15, Affidavit, ¶ 3.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

Plaintiff alleges that Defendants denied him equipment in 2014.

32.   According to Plaintiff, he was denied emergency lighting equipment in 2014. [Ex. 1, Plaintiff, 217:4 – 219:14.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.  Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

32.1.   Plaintiff states that Deputy Justin Noel's request for emergency lighting equipment was granted in 2014. [Ex. 1, Plaintiff, 219:21 – 220:22.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.  Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

Plaintiff alleges that Defendants denied him training in 2014.

33. According to Plaintiff, he was denied the opportunity to attend training in 2014. [Ex. 1, Plaintiff, 221:3 – 222:1.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------|
| Reply    | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.  Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

33.1. Plaintiff states that the training was approved for other officers. [Ex. 1, Plaintiff, 221:17 – 20.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------|
| Reply    | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.  Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

Plaintiff alleges that Defendants delayed his pay raise.

34. For 2015, the hourly rate for all patrol deputies was moved to $14.00 per hour. [Ex. 2, Groves, 120:6 – 21.]

| Response | Controverted.  *See* defendants' Ex. 12, Hamlin's File, at 002079, indicating that Hamlin got a pay raise to $14.00/hour in December 2014. |
|----------|------------------------------------------------------------------------------------------------------------------------------------------|
| Reply    | Objection. Plaintiff has failed to properly controvert this fact..  The pay raise received by Hamlin in December, 2014 was the result of a change in position from Patrol to Investigations.  Please see Ex. 12, Hamlin's File, 002079.  The pay raise received by Hamlin in March, 2015 reflects merely an hourly rate change, in accordance with Sheriff Groves testimony that such increases did not occur across the board at the same time but rather, was done in chronological order based on month of hire.  Ex. 2, Groves, 120:22 – 125:13.  Furthermore, the specific amount attributed to Hamlin reflects that of an |

43

| | Investigator and not merely a Deputy. |
|---|---|
| | Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

34.1.  The pay increase did not occur across the board at the same time for all patrol deputies; it was done in chronological order based on month of hire. [Ex. 2, Groves, 120:22 – 125:13].

| Response | Controverted.  Defendants' assertion is not supported by the cited testimony, as required by Rule 56, subsections (c) and (e). |
|---|---|
| Reply | Defendants disagree.  The cited-to testimony supports this fact.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

34.2.  The first pay increase was effectuated in December, 2014.  [Ex. 1, Plaintiff, 196:7 – 13; Ex. 11, Kidds' File, 001471; I&A in Ex. 15, Affidavit, ¶ 3.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

35.  Former Deputy Dean Kidd began working full-time in the month of March; his hourly rate was increased in December, 2014. [Ex. 11, Kidds' File, 001471 and 001485; I&A in Ex. 15, Affidavit, ¶ 3.]

| Response | Uncontroverted. |
|---|---|
| Reply | No further response required. |

36.  Deputy Beau Hamlin began working full-time in the month of June; his hourly rate was increased in March, 2015. [Ex. 12, Hamlin's File, 002078 and 002085; I&A in Ex. 15, Affidavit, ¶ 3.]

| Response | Controverted to the extent that Hamlin received an hourly rate increase prior to March 2015.  *See* defendants' Ex. 12, Hamlin's File, at 002079, indicating that Hamlin got a pay raise to $14.00/hour in December 2014. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact..<br><br>The pay raise received by Hamlin in December, 2014 was the result of a |

| | |
|---|---|
| | change in position from Patrol to Investigations.  Please see Ex. 12, Hamlin's File, 002079.<br><br>The pay raise received by Hamlin in March, 2015 reflects merely an hourly rate change, in accordance with Sheriff Groves testimony that such increases did not occur across the board at the same time but rather, was done in chronological order based on month of hire.  Ex. 2, Groves, 120:22 – 125:13.<br><br>Furthermore, the specific amount attributed to Hamlin reflects that of an Investigator and not merely a Deputy.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

37.    Plaintiff began working full-time in the month of August; his hourly rate was increased from $12.20 per hour to $14.00 per hour in April, 2015. [Ex. 9, Plaintiff's File, DEFT 000007, DEFT 000017, and DEFT 000020; I&A in Ex. 2, Groves, 115:14 – 12; Ex. 15, Affidavit, ¶ 2]

| | |
|---|---|
| **Response** | Uncontroverted. |
| **Reply** | No further response required. |

37.1.    According to Plaintiff, he should have received the pay increase when Sheriff Groves "began to give them." [Ex. 1, Plaintiff, 195:21 – 196:13.]

| | |
|---|---|
| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

37.2.    Plaintiff received his December, 2014 paycheck on December 17, 2014. [Ex. 9, Plaintiff's File, 001439; I&A in Ex. 3, Gibson, 62:22 – 64:24.]

| | |
|---|---|
| **Response** | Controverted in part.  Plaintiff concedes only that the cited document, Bates page 001439 in defendants' Ex. 9, speaks for itself.  Otherwise, there is no testimony specifically explaining or substantiating its content. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact..<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular |

| | parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  A generalized statement that "there is no testimony specifically explaining or substantiating its content" fails to comply with this requirement.<br><br>As such, and pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

<u>Plaintiff alleges that Defendants subjected him to a hostile work environment.</u>

38.   According to Plaintiff, he went to Chief Deputy Gibson after receiving the June 8, 2015 email regarding the funeral procession to ask whether participation was mandatory. [Ex. 1, Plaintiff, 238:10 – 239:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.1.   Plaintiff states he said "hello" and Gibson responded with "what the fuck do you want?" [Ex. 1, Plaintiff, 238:10 – 239:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.2.   Plaintiff states he then asked Gibson whether participation in the funeral procession was mandatory. [Ex. 1, Plaintiff, 238:10 – 239:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error. |

| | Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.3.   Plaintiff states that in response, Gibson asked "do you work patrol?"  [Ex. 1, Plaintiff, 238:10 – 239:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.4.   Plaintiff states that when he said "yeah, I work patrol," Gibson stated "go F-ing do it" and told Plaintiff to get out of his office. [Ex. 1, Plaintiff, 238:10 – 239:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.5.   Plaintiff states he turned around to walk away when he saw a chair go flying. [Ex. 1, Plaintiff, 239:5 – 16.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.6.   Plaintiff states that Gibson then got in his face, pointed to the door, and said "Get the fuck out and go patrol." [Ex. 1, Plaintiff, 239:5 – 16.]

| Response | Controverted in part to the extent that defendants' assertion does not reflect the entirety of the evidence on the hostile and discriminatory exchange that |

| | took place between Chief Deputy Gibson and plaintiff.  In point of fact, plaintiff testified that Gibson came at him in a physically threatening manner to the point where plaintiff "bladed [himself] actually gun-side away ready for a fight."  During this confrontation, plaintiff was "backed up against the bathroom door . . . ready to fight" because "[t]hat's how [Gibson] came at [him]."  *See* **plaintiff's Ex. 1**, Johnson, 237/14-238/7; and 239/4-16.  Further, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Plaintiff's cited-to testimony fails to negate the contents of this fact and thus, fails to comply with this requirement.<br><br>Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

38.7.   Gibson does not recall this exchange. [Ex. 3, Gibson, 133:24 – 134:3]

| **Response** | Controverted in part to the extent that defendants' assertion suggests that the subject exchange did not, in fact, take place.  Gibson testified that it's "possible" that he and plaintiff had a "communication or conversation" about the funeral in question and that he has "probably" asked plaintiff "What the fuck do you want?" and told him to "Get the fuck out of here" before.  Gibson further conceded that, if he had indeed yelled at plaintiff with foul language and leapt out of his chair, as claimed, that this would constitute "hostile inappropriate behavior."  *See* **plaintiff's Ex. 3**, Gibson, 54/1-55/4; 134/7-11; and 134/21-135/1.  Also, both Deputy Kerns and Chief Daniels testified that plaintiff reported the hostile exchange with Gibson to them.  *See* **plaintiff's Ex. 7**, Kerns, 89/8-24.  *See also* **plaintiff's Ex. 16**, Daniels, 39/1-40/24. |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse |

| | party cannot produce admissible evidence to support the fact." Plaintiff's cited-to testimony fails to negate the contents of this fact and thus, fails to comply with this requirement.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

39. According to Plaintiff, Deputy Kidd called him a "boy," and said he "needed to pick up trash after the white folk[.]" [Ex. 1, Plaintiff, 183:4 – 7.]

| Response | Uncontroverted. However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| --- | --- |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony. Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

40. According to Plaintiff, Deputy Kidd played an offensive YouTube video titled "Racist Mario" in front of him. [ECF Doc. 1, Complaint, ¶ 24; Ex. 13, Internal Investigation, 000268 – 000274; I&A in Ex. 2, Groves, 220:4 – 10.]

| Response | Uncontroverted. Further, plaintiff's allegation in this regard was substantiated by defendants' own investigation. *See* defendants' Ex. 13, Internal Investigation, at 000274. |
| --- | --- |
| Reply | No further response required. |

Plaintiff alleges that Defendants retaliated against him for engaging in protected opposition to discrimination.

41. According to Plaintiff, he spoke with Deputy Kerns about "racial jokes" and being treated differently because of his race. [Ex. 1, Plaintiff, 142:17 – 19 and 146:13 – 20.]

| Response | Uncontroverted. However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| --- | --- |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony. Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

41.1.   Plaintiff cannot recall when he spoke to Kerns. [Ex. 1, Plaintiff, 160:22 – 161:3.]

| Response | Controverted.  Plaintiff initially testified that he first spoke with Kerns sometime in the summer of 2014 about Deputies Piepho and Kidd making racial remarks against him in the Sheriff's Office.  Plaintiff then remembered that he had become a full-time patrol deputy in August 2013, and thought that his conversation with Kerns may have occurred in late 2013 or early 2014.  Ultimately, however, plaintiff recalled that the conversation with Kerns happened shortly after Deputy Piepho was terminated.  Deputy Piepho testified that he was terminated from the Sheriff's Office on June 27, 2014.  This fact corroborates plaintiff's testimony that he initially spoke with Kerns in the summer of 2014 about racial discrimination occurring in the Sheriff's Office.  *See* **plaintiff's Ex. 1**, Johnson, 141/24-144/2; 146/13-147/4; 147/22-148/23;  153/5-10;  154/25-156/14;  158/2-15;  and  158/23-159/6.   *See also* **plaintiff's Ex. 4**, Piepho, 31/14-23; and 77/24-78/1. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact..<br><br>As detailed in Plaintiff's response, Plaintiff provided a variety of conflicting answers regarding when he allegedly spoke with Kerns.  Following Plaintiff's testimony that he thought the conversation occurred after Deputy Piepho's termination, he once again backtracked stated "Yeah. I just simply do not know exactly when that date is. I do not recall when that – that timeframe is."  Plaintiff's Ex. 1, Plaintiff, 160:22 – 161:3.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

41.2.   According to Kerns, he never informed Sheriff Groves of any statements made by Plaintiff to Kerns. [Ex. 7, Kerns, 51:17 – 20.]

| Response | Controverted in part.  Plaintiff concedes only that Kerns testified that he did not report to Sheriff Groves the fact that Deputy Kidd had played racially offensive videos to him and plaintiff on more than one occasion.  Otherwise, defendants' assertion is controverted inasmuch as the cited testimony does not support the assertion made.  *See* **plaintiff's Ex. 7**, Kerns, 49/12-51/20. |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>When asked whether he knew "from personal knowledge whether Sheriff Groves was aware of Dean Kidd's behavior" Plaintiff responded "I do not think he was aware of that" and "I do not know."  Plaintiff's Ex. 7, Kerns, 52:3-14.  Had Kerns personally informed Sheriff Groves of the alleged behavior, he could have testified that Sheriff Groves was aware of the same.<br><br> Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

42.     According to Plaintiff, he *tried* to speak with Chief Deputy Gibson about race discrimination, but was unsuccessful in doing so. [Ex. 1, Plaintiff, 164:18 – 167:14.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

42.1.   Plaintiff states he asked whether Gibson had a moment to speak with him and Gibson responded with something akin to "what?" or "what the fuck do you want?". [Ex. 1, Plaintiff, 166:16 – 167:4.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

42.2.   Plaintiff states he knew the attempt was failing after Gibson's response and departed Gibson's office thereafter. [Ex. 1, Plaintiff, 167:8 – 14.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

42.3.   Plaintiff cannot recall when his attempted conversation with Chief Deputy Gibson occurred. [Ex. 1, Plaintiff, 164:25 – 165:2.]

| Response | Controverted in part.  Plaintiff concedes that he cannot recall exactly when his attempted conversation with Gibson occurred.  However, plaintiff testified that the attempted conversation occurred sometime after his initial |
|---|---|

| | |
|---|---|
| | conversation with Deputy Kerns, which would have been in the summer of 2014.  To this extent, defendants' assertion is controverted.  *See* **plaintiff's Ex. 1**, Johnson, 164/18-24.  *See also* response to paragraph 41.1 above. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.

As detailed in Plaintiff's response to fact 41.1, Plaintiff provided a variety of conflicting answers regarding when he allegedly spoke with Kerns. Following Plaintiff's testimony that he thought the conversation occurred after Deputy Piepho's termination, he once again backtracked stated "Yeah. I just simply do not know exactly when that date is. I do not recall when that – that timeframe is."  Plaintiff's Ex. 1, Plaintiff, 160:22 – 161:3.

As such, and pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

43.   According to Plaintiff, he asked Deputy Potter in 2014 what to do about problems he was having in the office. [Ex. 1, Plaintiff, 168:12 – 23 and 170:11 – 171:2.]

| | |
|---|---|
| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.

Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

43.1.   Plaintiff did not describe to Potter what he perceived the problems in the office to be. [Ex. 1, Plaintiff, 171:3 – 6.]

| | |
|---|---|
| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.

Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

44.   According to Plaintiff, he asked Chief Investigator Wydick what to do about problems he having with employees. [Ex. 1, Plaintiff, 172:10 – 24.]

| | |
|---|---|
| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |

| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 44.1.   Plaintiff asked this question in general form; he did not go into detail. [Ex. 1, Plaintiff, 172:10 – 24 and 174:2 – 24.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 45.   According to Plaintiff, he complained to Sheriff Groves regarding race discrimination sometime between December, 2014 and January, 2015. [Ex. 1, Plaintiff, 178:9 – 179:1.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

> 45.1.   Plaintiff states he told Sheriff Groves that Deputy Kidd had called him a "boy" and said he "needed to pick up trash after the white folk[.]" [Ex. 1, Plaintiff, 182:1 – 183:7.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

45.2.   Plaintiff states he told Sheriff Groves that Kidd "won't stop with the jokes" and apparently had an issue with his race. [Ex. 1, Plaintiff, 183:10 – 20.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

45.3.   Plaintiff states he told Sheriff Groves about a tasing incident that had occurred between Kerns and Kidd prior to his employment. [Ex. 1, Plaintiff, 141:6 – 17.]

| Response | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

45.4.   Plaintiff cannot recall telling Sheriff Groves anything else. [Ex. 1, Plaintiff, 183:18 – 184:12.]

| Response | Controverted.  Plaintiff testified that he had related all that he could remember telling Sheriff Groves "[o]n that specific occasion" and "[a]t that time."  *See* **plaintiff's Ex. 1**, Johnson, 183/18-184/12.  Plaintiff eventually again complained to Sheriff Groves about Deputy Kidd racially harassing him after Kidd failed to get the part-time job at the Columbus Police Department.  At some point between June 11 and June 25, 2015, he also attempted to report Chief Deputy Gibson's assault to Sheriff Groves, but Sheriff Groves dismissed plaintiff's concerns, saying that he did not like "tattletales" and "That's just the way he is," in relation to Gibson's hostile behavior.  *See* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question Nos. 3 and 9.  *See also* **plaintiff's Ex. 18**, Johnson interrogatory answers to County, at question Nos. 1 and 10.  In any event, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| Reply | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Defendants admit that this fact should reflect that "Plaintiff cannot recall |

54

| | telling Sheriff Groves anything else *on that specific occasion.*"  Plaintiff's Ex. 1, Plaintiff, 183:18-184:12.  With this understanding, the fact is true and accurate.<br><br>Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

46.  According to Plaintiff, he did not make any subsequent complaints of race discrimination to any employees of Cherokee County Sheriff's Department after speaking with Sheriff Groves. [Ex. 1, Plaintiff, 186:14 – 22.]

| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

47.  According to Plaintiff, he spoke to non-employee Daniels as "a friend" about his mistreatment in the workplace. [Ex. 1, Plaintiff, 186:3 – 13.]

| **Response** | Uncontroverted.  However, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| **Reply** | Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

47.1.  Sheriff Groves did not learn the specifics of Plaintiff's conversation with Daniels until after the commencement of this lawsuit. [Ex. 2, Groves, 210:1 – 211:5.]

| **Response** | Controverted in part and uncontroverted in part.  Uncontroverted that Sheriff Groves testified that he did not know prior to June 25, 2015, that plaintiff had communicated information about racial harassment within the Sheriff's Office to Chief Daniels.  Controverted to the extent that defendants' assertion suggests that Sheriff Groves was not aware of the subject harassment prior to plaintiff's termination.  *See* response to paragraph 5.10 above, incorporated |
|---|---|

| | |
|---|---|
| | by reference as though fully set forth herein. |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." A generalized statement disputing that "Sheriff Groves was not aware of the subject harassment prior to plaintiff's termination" fails to comply with this requirement.<br><br>Furthermore, fact 5.10 specifically addresses the testimony of *Sheriff Groves* and *Chief Deputy Gibson* (i.e. *"according to Sheriff Groves and Chief Deputy Gibson"*). As such, the cited-to testimony of Daniels and Plaintiff is irrelevant and fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |

47.2. According to Daniels, he visited with Sheriff Groves in 2014 about Dean Kidd's efforts to seek employment with the City of Columbus because Daniels was unhappy that Kidd had attempted to usurp the City's process when he contacted the chair of the personnel committee to ask why he had not been offered a job. [Ex. 16, Daniels, 14:11– 28:4.]

| | |
|---|---|
| **Response** | Controverted in part and uncontroverted in part. Uncontroverted that Chief Daniels visited with Sheriff Groves about Daniels' displeasure respecting the manner in which Kidd sought employment at the Columbus Police Department. Controverted to the extent that defendants' assertion suggests that this is the only topic discussed between Chief Daniels and Sheriff Groves. *See* response to paragraph 5.10 above, incorporated by reference as though fully set forth herein |
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." A generalized statement disputing that "this is the only topic discussed between Chief Daniels and Sheriff Groves" fails to comply with this requirement.<br><br>Furthermore, fact 5.10 specifically addresses the testimony of *Sheriff Groves* and *Chief Deputy Gibson* (i.e. *"according to Sheriff Groves and Chief* |

| | *Deputy Gibson"*).  As such, the cited-to testimony of Daniels and Plaintiff is irrelevant and fails to meet the requirements of Fed. R. Civ. P. 56(c)(1).<br><br>Pursuant to Fed. R. Civ. P. 56(e)(2), the Court should consider this fact uncontroverted for purposes of the motion. |
|---|---|

48.  According to Plaintiff, he did not have any communication with Sheriff Groves between the time of his complaint and the date of his termination. [Ex. 1, Plaintiff, 194:14 – 20.]

| **Response** | Controverted.  *See* response to paragraph 45.4 above, incorporated by reference as though fully set forth herein.  Further, defendants failed to attach plaintiff's deposition transcript in support of their factual assertion, as required by Rule 56(e). |
|---|---|
| **Reply** | Objection. Plaintiff has failed to properly controvert this fact.<br><br>Fed. R. Civ. P. 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed … support the assertion by: (A) citing to particular parts of materials in the records…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Plaintiff does not comply with this requirement by citing to his Interrogatory Answers No. 3 and 9 (Plaintiff's Ex. 17) and Nos. 1 and 10 (Plaintiff's Ex. 18) in response to facts 45.4 and 48, as those Answers do not negate the truthfulness or accuracy of the fact at hand.  Rather, those Answers support Plaintiff's testimony (and fact 48) that Plaintiff had no other communications with Sheriff Groves after December 2014 or January 2015 (citing only to an "attempt" to speak with Sheriff Groves).<br><br>Defendants admit that fact 45.4 should reflect that "Plaintiff cannot recall telling Sheriff Groves anything else *on that specific occasion*."  Plaintiff's Ex. 1, Plaintiff, 183:18-184:12.  With this understanding, fact 45.4 is true and accurate.<br><br>Defendants admit that they inadvertently attached two copies of Sheriff Groves' deposition testimony and omitted a copy of Plaintiff's deposition testimony.  Please see Plaintiff's Exhibit 1 rectifying this error.<br><br>Pursuant to Fed. R. Civ. P. 56(e)(1) and (2), the Court should consider this fact uncontroverted for purposes of the motion. |

## II.    Response in Opposition to Plaintiff's Statement of Additional Uncontroverted Material Facts.

49.     Defendant Cherokee County, Kansas is a Kansas county organized and existing under the laws of the State of Kansas, pursuant to K.S.A. § 18-111.  The County acts by and through the Board of County Commissioners of the County of Cherokee, Kansas, located at 110 W. Maple, Columbus, Kansas 66725.  The Board is a body corporate and politic, organized and existing under the laws of the State of Kansas, pursuant to K.S.A. § 19-101, *et seq.*  Pursuant to K.S.A. §§ 19-103 and 19-105, the powers of the County are exercised by the Board and the Board shall be named in all suits or proceedings brought against the County.  *See* complaint (Doc. 1), at ¶ 2; and answer (Doc. 3), at ¶ 2.

| **Response** | Uncontroverted. |
|---|---|

50.     Defendant Sheriff David M. Groves and the other individuals described in plaintiff's complaint were, at all relevant times, agents, employees, and/or servants of Cherokee County.  *See* complaint (Doc. 1), at ¶ 3; and answer (Doc. 3), at ¶ 3.

| **Response** | Uncontroverted. |
|---|---|

51.     During the majority of his tenure at the Sheriff's Office, plaintiff worked full time as a patrol deputy, making approximately $14.00 per hour at the time of his ***unlawful*** discharge.  He also had benefits including health insurance, life insurance and a retirement plan.  *See* complaint (Doc. 1), at ¶ 13; and answer (Doc. 3), at ¶ 13.

| **Response** | Controverted in part. |
|---|---|
| | Objection.  Vague as to the "majority of his tenure." |
| | Uncontroverted that during a portion of his tenure at the Sheriff's Office, plaintiff worked full time as a patrol deputy, making approximately $14.00 per hour at the time of his discharge.  Uncontroverted that Plaintiff had benefits including health insurance, life insurance, and a retirement plan. |
| | Controverted that Plaintiff's discharge was "unlawful."  Please see Defendants' Motion for Leave to File a First Amended Answer, ¶ 13. |

52.     Though plaintiff worked at the Sheriff's Office, at all relevant times, Cherokee County technically employed and paid him.  Further, at all relevant times, the County employed (and continues to employ) 15 or more persons.  *See* complaint (Doc. 1), at ¶ 14; and answer (Doc. 3), at ¶ 14.

| **Response** | Uncontroverted. |
|---|---|

53.     Chief Deputy Shane Gibson, plaintiff's direct supervisor, reported to Sheriff Groves.  *See* complaint (Doc. 1), at ¶ 16; and answer (Doc. 3), at ¶ 16.

| Response | Uncontroverted. |
|---|---|

54.  Pursuant to K.S.A. § 19-805(d), any personnel action taken by Sheriff Groves is and was subject to the "[p]ersonnel policies and procedures established by the [Board] for all county employees other than elected officials," and "any pay plan established by the [Board] for all county employees other than elected officials." *See* complaint (Doc. 1), at ¶ 17; and answer (Doc. 3), at ¶ 17.

| Response | Uncontroverted. |
|---|---|

55.  Sheriff Groves and others at the Sheriff's Office knew of plaintiff's mixed race status, as plaintiff had told the sheriff and deputies that he had experienced racial discrimination at a previous law enforcement employer. *See* complaint (Doc. 1), at ¶ 18; and answer (Doc. 3), at ¶ 18. *See also* **plaintiff's Ex. 2**, Groves, 104/6-105/18; and 106/5-10.

| Response | Uncontroverted. |
|---|---|

56.  During his entire tenure at the Sheriff's Office, plaintiff received only one formal written reprimand (on September 5, 2014). Specifically, Chief Deputy Gibson reprimanded plaintiff for speeding in his patrol car to the scene of an emergency—a suicidal individual armed with a gun who lived across the street from Riverton Grade School. *See* complaint (Doc. 1), at ¶ 19; and answer (Doc. 3), at ¶ 19.

| Response | Controverted in part. |
|---|---|
| | Uncontroverted that Plaintiff received a written reprimand on September 5, 2014 for violation of the Rules of Conduct Policy and the Agency Driving Policy.  [SOF, ¶ 15.3.] |
| | Controverted that the written reprimand was the "only … formal written reprimand" that Plaintiff ever received.  Such a conclusory statement is one based on interpretation and thus, opinion and not fact.  Please see SOF, ¶¶ 11 – 11.5 outlining Plaintiff's first performance review.  Please see SOF, ¶¶ 13 – 13.7 outlining Plaintiff's second performance review.  Please further see SOF, ¶¶ 12, 14, 15-21, 22.4-22.9 outlining Plaintiff's reprimands for poor performance. |

57.  Cherokee County is an employer within the meaning of Title VII. *See* complaint (Doc. 1), at ¶ 30; and answer (Doc. 3), at ¶ 30.

| Response | Uncontroverted. |
|---|---|

58.   Plaintiff, as a mixed race male, is a member of a class of persons protected by Title VII. *See* complaint (Doc. 1), at ¶ 31; and answer (Doc. 3), at ¶ 31.

| **Response** | Uncontroverted. |
| --- | --- |

59.   In about 2009, before plaintiff's employment at the Sheriff's Office, Sheriff Groves overheard a white deputy, Michael Potter, directing a racially charged word toward Deputy Kerns. *See* **plaintiff's Ex. 2**, Groves, 21/10-24/12. Sheriff Groves agreed that, in light of the comment made by Deputy Potter toward Deputy Kerns, "somebody could say something that somebody else would find racially offensive" in the future at the Sheriff's Office. *See* **plaintiff's Ex. 2**, Groves, 30/8-31/10.

| **Response** | Controverted in part, but irrelevant and immaterial. |
| --- | --- |
| | Uncontroverted that in about 2009, before plaintiff's employment at the Sheriff's Office, Sheriff Groves overheard a white deputy, Michael Potter, utilize a racially charged word or saying in the presence of Deputy Kerns. Plaintiff's Ex. 2, Groves, 21:10-24:12. |
| | Controverted that the word or saying was directed at or about Deputy Kerns as the same is the assumption of Plaintiff's counsel and not supported by Kerns' testimony. Plaintiff's Ex. 2, Groves, 21:10-24:12 and 30:8-31:10. |
| | Uncontroverted that Sheriff Groves stated in his deposition that "somebody could say something that somebody else would find racially offensive[.]" Plaintiff's Ex. 2, Groves, 31:5-7. Nevertheless, Defendants object as the same is vague, confusing and speculative, in violation of Rule 56(c)(2). |

60.   Cherokee County Sheriff's Office Workplace Harassment Policy, No. 27 ("Policy No. 27") provides, in part, as follows:

**POLICY:**

                    *      *      *

No form of harassment is tolerated, including harassment because of, or by inappropriately emphasizing an individual's *race* . . . .

**DEFINITION:**

   •   ***Harassment, harass, harassed, harassing, harasses***- 1. To irritate or torment persistently.  2. To wear out; exhaust.  3. To impede and exhaust (an enemy) by repeated attacks or raids.

                    *      *      *

   •   ***Supervisor*** – A supervisor is any person empowered to make economic decisions, or, decisions affecting the terms, privileges or

60

conditions of employment for other employees under his/her control.

**PROCEDURE:**

1. **Prohibited activity under this policy includes, but is not limited to, the following examples.**

   A.    No employee shall either explicitly or implicitly ridicule, mock, deride, or belittle any person, either directly or indirectly.

   B.    Employees shall not make offensive or derogatory comments to any person, either directly or indirectly.

   C.    No employee shall engage in any conduct which has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile, or offensive working environment . . . .

2. **Supervisor's Responsibilities**

   A.    Although all employees shall be responsible for preventing harassment and / or discrimination, supervisors shall be responsible for:

      1.    Counseling all employees on types of behavior prohibited and the department procedures for reporting and resolving complaints of harassment and discrimination;

      2.    Monitoring the work environment on a daily basis for signs that harassment and discrimination may be occurring;

                              *          *          *

5. **Retaliation**

                              *          *          *

   C.    Monitoring to ensure that retaliation does not occur is the responsibility of the Sheriff, supervisors, and the PST.

*See* **plaintiff's Ex. 14** (which is also Ex. 4, as marked at Sheriff Groves' deposition), at Bates pages 001119-20, and 001122.

| Response | Uncontroverted. |
| --- | --- |

61.    Sheriff Groves admitted that neither he nor any outside source trains his deputies on the subjects of workplace harassment, racial discrimination within the workplace, or hostile work environment.  *See* **plaintiff's Ex. 2**, Groves, 66/12-67/3.

| Response | Controverted in part.<br><br>Uncontroverted that Sheriff Groves so testified.<br><br>Chief Deputy Gibson testified that "we send out an email saying that you need to make sure you have your racial profiling done, which is racial profiling training, but that's a class usually on the Internet."  Plaintiff's Ex. 3, Gibson, 35:11-18.  Chief Deputy Gibson further testified that deputies are "provide[d] with the policy manual and they sign for it and they're supposed to read it."  Plaintiff's Ex. 3, Gibson, 50:11-16.<br><br>Deputy Piepho testified that "[a]fter he became sheriff … the policy and procedures got updated to reflect him being the sheriff …. [and] we were told to go through them."  Plaintiff's Ex. 4, Piepho, 52:6-17.  He further testified that he was "sure that at some point we were told about the harassment policy or any other policy relating to safe workplace environments and equal opportunity, EEOC articles and harassment, but to say that I remember a specific instance and when this occurred, I do not. I just am sure that it occurred."  Plaintiff's Ex. 4, Piepho, 52:23-55:9. |
|---|---|

62.   Sheriff Groves admitted that he qualifies as a "supervisor" under Policy No. 27, and that he has a duty to monitor the office on a daily basis to make sure there are no signs of harassment or discrimination occurring.  He further admitted that he has a responsibility to ensure that retaliation does not occur in the Sheriff's Office.  *See* **plaintiff's Ex. 2**, Groves, 81/23-83/20.

| Response | Uncontroverted.<br><br>Sheriff Groves does not dispute that he has such a responsibility.  Nevertheless, the cited-to deposition testimony does not support Plaintiff's statement that Sheriff Groves "admitted that he has a responsibility to ensure that retaliation does not occur in the Sheriff's Office."  Rather, it simply provides that Plaintiff's counsel read that portion of page 282 correctly.  Plaintiff's Ex. 2, Groves, 83:12-20. |
|---|---|

63.   Sheriff Groves does not administer tests to deputies or other Sheriff's Office employees on the subject of workplace harassment; nor does he have training sessions or seminars for deputies or employees to attend on the subject of not engaging in workplace harassment and racial discrimination.  *See* **plaintiff's Ex. 2**, Groves, 88/20-89/14.

| Response | Controverted in part.<br><br>Uncontroverted that Sheriff Groves does not administer tests to deputies or other Sheriff's Office employees on the subject of workplace harassment. |
|---|---|

|  | Controverted as whether there are "training sessions or seminars for deputies or employees to attend on the subject of not engaging in workplace harassment and racial discrimination."

Chief Deputy Gibson testified that "we send out an email saying that you need to make sure you have your racial profiling done, which is racial profiling training, but that's a class usually on the Internet."  Plaintiff's Ex. 3, Gibson, 35:11-18.  Chief Deputy Gibson further testified that deputies are "provide[d] with the policy manual and they sign for it and they're supposed to read it."  Plaintiff's Ex. 3, Gibson, 50:11-16.

Deputy Piepho testified that "[a]fter he became sheriff … the policy and procedures got updated to reflect him being the sheriff …. [and] we were told to go through them."  Plaintiff's Ex. 4, Piepho, 52:6-17.  He further testified that he was "sure that at some point we were told about the harassment policy or any other policy relating to safe workplace environments and equal opportunity, EEOC articles and harassment, but to say that I remember a specific instance and when this occurred, I do not. I just am sure that it occurred."  Plaintiff's Ex. 4, Piepho, 52:23-55:9. |
|---|---|

64.     Sheriff Groves does not take any affirmative steps to ensure or monitor that racial discrimination is not occurring within the Sheriff's Office.  For example, he never asked plaintiff or Deputy Kerns if anyone was mistreating them and he does not ask employees on a periodic basis whether they are aware of any hostile or offensive behavior in the office.  *See* **plaintiff's Ex. 2**, Groves, 90/10-16; and 91/2-17.  *See also* **plaintiff's Ex. 7**, Kerns, 25/10-26/5.

| **Response** | Controverted in part.

Uncontroverted that Sheriff Groves does not engage in the specific "affirmative steps" outlined by Plaintiff's counsel.

Controverted to the extent Plaintiff is attempting to use Sheriff Groves' non-engagement in these specific steps as evidence that Sheriff Groves did not "ensure or monitor that racial discrimination is not occurring within the Sheriff's Office."  Sheriff Groves testified as follows: "where my office is at it's my office, the undersheriff, chief deputy, and then patrol room and then a front office area, and if I'm in the office, if I'm at work, unless I'm in a meeting with somebody my door is open, and I can hear generally what goes on throughout that wing of the building and sometimes, depending on how loud they are in the lobby, people, citizens, I hear what's going on in the lobby. So I pay attention to what's going on, but as far as is there some program where I actively monitor that, no."  Plaintiff's Ex. 2, Groves, 89:15-90:9. |
|---|---|

65.     Cherokee County has an employee handbook that is given to new Sheriff's Office employees by the County's human resource director, Deana Randall.   Among other things, the County's employee handbook has an equal employment opportunity provision.   *See* **plaintiff's Ex. 2**, Groves, 48/15-22; 79/18-80/16; and 100/4-102/13.   *See also* **plaintiff's Ex. 20**, Cherokee County Personnel Policy Handbook, at p. 13.

| **Response** | Uncontroverted. |
|---|---|

66.     Between 2012 and May 2019, the Sheriff's Office maintained about 55 employees on staff, including patrol deputies, among others.   Of this number, only about 6 or 7 employees (or about 12% to 13%) constituted minorities, including, African-American or mixed race, Hispanic, and Native American individuals.   From this, an even smaller number or percentage constituted just African-American or mixed race employees.   Thus, the overwhelming majority of staff in the Sheriff's Office are Caucasian or white, including Sheriff Groves and Chief Deputy Gibson.   *See* **plaintiff's Ex. 2**, Groves, 107/19-108/16; 113/24-114/11; and 115/4-18.   *See also* **plaintiff's Ex. 6**, Rosenberg, 94/9-15.   *See also* **plaintiff's Ex. 7**, Kerns, 24/3-19.

| **Response** | Uncontroverted. |
|---|---|

67.     Respecting plaintiff's February 5, 2014, written performance review, Sheriff Groves admitted that plaintiff's ratings ran from very good to good, with some outstanding marks.   Her further admitted that there were no below average or unsatisfactory marks.   *See* **plaintiff's Ex. 2**, Groves, 127/19-128/2.   *See also* defendants' Ex. 9, Plaintiff's File, at Bates pp. 000027-29.

| **Response** | Uncontroverted.<br><br>*But see* Defendants' Statement of Fact Nos. 11 – 11.5, demonstrating that despite these ratings, Plaintiff's February 5, 2014 review addressed a variety of issues with Plaintiff's performance. |
|---|---|

68.     Sheriff Groves admitted that, with regard to written performance reviews, no Sheriff's Office employee is ever perfect or outstanding in every category; rather, employees have various weaknesses and strengths.   Plaintiff was no different in this respect.   *See* **plaintiff's Ex. 2**, Groves, 129/20-130/19.

| **Response** | Controverted in part.<br><br>Uncontroverted as to Sheriff Groves' testimony including that all deputies, including Plaintiff, had various weaknesses and strengths.<br><br>Controverted to the extent Plaintiff is attempting to use Sheriff Groves' agreement that Plaintiff was "no different" in support of an argument that Plaintiff's weaknesses were no worse than those of any other deputy. |
|---|---|

Plaintiff's Ex. 2, Groves, 129:20-130:19.  The testimony in this case does not support the same.  According to Chief Deputy Gibson, Plaintiff was terminated based on the following:

> There was the not showing up to work on time, the not taking calls that were given to him during shift, like several hours before the end of the shift where he would pass his calls on, or like as in tell dispatch right before he left that he wasn't going to take those and pass on to the next shift, he would not take reports when he'd go to calls.

> One time he worked a car accident on, I believe it was K-7, where he stated to me that the vehicle just went in the ditch, and there was either – I can't remember if he said no or little damage to the car.  And I said, well, if it's not a thousand dollars worth of damage, and he acted like it wasn't, and I was like, well, and he said the driver or owner said that they only had liability insurance and they didn't want an accident report, which was fine if there's not a thousand dollars damage to the car, but he did not tell me that the accident was actually bad enough that the driver was transported to the hospital by ambulance, and if he – I mean, he's been a copy for 12 or whatever years, he should know that that is a mandatory reporting, if someone is injured in a[n] accident you have to report it, and he didn't do a report and then I ended up hearing about it later.

> Then there was the issue with the body camera stuff and the car camera not recording incidents that were going on. There was – let's see here – there was where he wasn't – the undersheriff gave him this very specific PFA for this – a PFA is a protection from abuse order, it's a paper service for, to protect people. This husband needed to be served it at the courthouse, and it was actually still the same guy that Brandon Johnson dealt with when he said he got tased, it was that guy, so he really needed to be served and he just didn't go serve it.

Plaintiff's Ex. 3, Gibson, 115:1-116:8.

69.   Respecting plaintiff's July 1, 2014, written performance review, it contains good marks, five very good marks, two below average marks, and a couple of outstanding marks.  Plaintiff's overall evaluation is "Good," although the report encouraged plaintiff to improve in several areas, including getting work completed in a timely manner.  *See* defendants' Ex. 9, Plaintiff's File, at Bates pp. 000030-31.

| Response | Controverted in part. |
|---|---|
| | Uncontroverted that Plaintiff's July 1, 2014 written performance review contained good marks, five very good marks, two below average marks, and a couple of outstanding marks.  Further uncontroverted that Plaintiff's |

|  | overall evaluation was "Good" and that the report encouraged plaintiff to improve in several area.<br><br>Controverted that "getting work completed in a timely manner" was one of those area.  Rather, Plaintiff was encouraged "to work on his relationships with other Sheriff's Office personnel in each division" and to "recognize the importance of teamwork, which includes helping co-workers when they need time off or pitching in when an event occurs requiring all hands on deck." Ex. 9, Plaintiff's File, 000030 – 000031.<br><br>Furthermore*, see* Defendants' Statement of Fact Nos. 13 – 13.7, demonstrating that Plaintiff's July 1, 2014 review addressed a variety of additional issues with Plaintiff's performance. |

70.     Apart from plaintiff, other white deputies in the Sheriff's Office had problems with reports being overdue.  Some white deputies were also late responding to calls and had problems carrying out service of process but were not disciplined through termination.  *See* **plaintiff's Ex. 3**, Gibson, 89/21-90/9.  *See also* **plaintiff's Ex. 4**, Piepho, 62/1-7; and 68/10-70/21.  *See also* **plaintiff's Ex. 6**, Rosenberg, 142/20-144/2.  *See also* **plaintiff's Ex. 7**, Kerns, 119/9-18.

| **Response** | Controverted.<br><br>Plaintiff's cited-to testimony does not support this fact in violation of Fed. R. Civ. P. 56(c)(1).<br><br>Chief Deputy Gibson testified that deputies "get like verbal warnings for anything that's they're not doing well. I don't know if there's a specific set of things that are more common or not."  Plaintiff's Ex. 3, Gibson, 90:10-18. Examples include: "not getting your stuff done I mean as in not getting your reports done, not responding to calls in a timely manner, I mean, just whatever they are not doing that they're supposed to be doing."  Plaintiff's Ex. 3, Gibson, 89:21-90:9.<br><br>Furthermore, both Piepho and Rosenberg were terminated from the Cherokee County Sheriff's Office.  Plaintiff's Ex. 4, Piepho, 77:24-78:1; Plaintiff's Ex. 6, Rosenberg, 68:14-16.<br><br>Finally, according to Chief Deputy Gibson, Plaintiff was terminated based on the following:<br><br>There was the not showing up to work on time, the not taking calls that were given to him during shift, like several hours before the end of the shift where he would pass his calls on, or like as in tell dispatch right before he left that he wasn't going to take those and pass on to the next shift, he would not take reports when he'd go to calls. |

> One time he worked a car accident on, I believe it was K-7, where he stated to me that the vehicle just went in the ditch, and there was either – I can't remember if he said no or little damage to the car. And I said, well, if it's not a thousand dollars worth of damage, and he acted like it wasn't, and I was like, well, and he said the driver or owner said that they only had liability insurance and they didn't want an accident report, which was fine if there's not a thousand dollars damage to the car, but he did not tell me that the accident was actually bad enough that the driver was transported to the hospital by ambulance, and if he – I mean, he's been a copy for 12 or whatever years, he should know that that is a mandatory reporting, if someone is injured in a[n] accident you have to report it, and he didn't do a report and then I ended up hearing about it later.
>
> Then there was the issue with the body camera stuff and the car camera not recording incidents that were going on. There was – let's see here – there was where he wasn't – the undersheriff gave him this very specific PFA for this – a PFA is a protection from abuse order, it's a paper service for, to protect people. This husband needed to be served it at the courthouse, and it was actually still the same guy that Brandon Johnson dealt with when he said he got tased, it was that guy, so he really needed to be served and he just didn't go serve it.
>
> Plaintiff's Ex. 3, Gibson, 115:1-116:8.

71. Cherokee County Sheriff's Office Policy No. 23, governing Officer & Employee Discipline & Accountability, provides, among other things, that "[p]rogressive disciplinary measures are generally followed," including counseling, warning, suspension or other remedial steps such as demotion. Under this policy, termination is the last resort. *See* **plaintiff's Ex. 14** (which is also Ex. 4, as marked at Sheriff Groves' deposition), at Bates pages 001108-09 and 001111. *See also* **plaintiff's Ex. 2**, Groves, 197/2-199/3.

| Response | Uncontroverted. |
|---|---|

72. Prior to plaintiff's termination, Sheriff Groves never suspended or demoted plaintiff. Further, apart from the one written reprimand plaintiff got from Chief Deputy Gibson, Sheriff Groves never presented plaintiff with any other written warning or reprimand documents memorializing work deficiencies. *See* **plaintiff's Ex. 2**, Groves, 199/4-21; and 200/18-201/9.

| Response | Controverted in part.<br><br>Uncontroverted that prior to plaintiff's termination, Sheriff Groves never suspended or demoted Plaintiff. |
|---|---|

|  | Controverted that apart from the one written reprimand Plaintiff got from Chief Deputy Gibson, Sheriff Groves never presented Plaintiff with any other written warning or reprimand documents memorializing work deficiencies. Please see Defendants' Statement of Fact Nos. 11 – 11.5 and 13 – 13.7, demonstrating that Plaintiff's February 5, 2014 and July 1, 2014 reviews addressed a variety of issues with Plaintiff's performance. |

73. During their tenures at the Sheriff's Office, Deputies Kidd and Piepho, both of whom are white, received multiple disciplinary measures, including suspensions and numerous written reprimands, prior to their eventual termination. Deputy Kidd had at least 9 documented instances of work misconduct or written reprimand before his termination. Deputy Piepho, whom Chief Deputy Gibson supervised, had documented instances of late work, internet surfing, lack of productivity, problems with service, and verbal abuse and harassment of a female employee, among other things, but these issues did not result in his immediate termination. Deputy Piepho agreed that he was given more opportunities than he "fairly deserved" to correct his workplace behavior before he was ever terminated. *See* **plaintiff's Ex. 2**, Groves, 233/11-14; 236/12-20; 237/21-239/10; and 240/6-243/23. *See also* **plaintiff's Ex. 3**, Gibson, 28/11-23. *See also* **plaintiff's Ex. 4**, Piepho, 62/1-7; 68/10-78/7; and 79/6-80/22. *See also* **plaintiff's Ex. 11**, Kidd's Employment File. *See also* **plaintiff's Ex. 22**, Piepho's Employment File.

| **Response** | Controverted in part. |
| --- | --- |
|  | Uncontroverted that Deputies Kidd and Piepho, both of whom are white, received multiple disciplinary measures, including suspensions and numerous written reprimands, prior to their eventual termination. |
|  | Uncontroverted that Deputy Kidd had at least 9 documented instances of work misconduct or written reprimand before his termination. |
|  | Uncontroverted that Deputy Piepho agreed he was given more opportunities than he "fairly deserved" to correct his workplace behavior before he was terminated. |
|  | Uncontroverted that Deputy Piepho, whom Chief Deputy Gibson supervised, was written-up for verbal abuse and harassment of a female co-worker and that the same did not result in his immediate termination. |
|  | Controverted that Deputy Piepho had "documented instances of late work, internet surfing, lack of productivity, problems with service … among other things, but these issues did not result in his immediate termination." Such instances were included in Deputy Piepho's employee appraisal; they were not independently issued write-ups. Plaintiff's Ex. 4, Piepho, 69:2-22. |
|  | Further controverted to the extent the same is being utilized to argue that Plaintiff was treated differently than Deputy Piepho. Plaintiff too had a |

|  | variety of performance issues outlined in his performance appraisal, but was not immediately terminated.  Please see Defendants' Statement of Fact Nos. 11 – 11.5, 13 – 13.7, and 23. |
|--|--|

74.     Sheriff Groves prefers that Sheriff's Office employees work out any differences amongst themselves and by themselves before coming to him.  *See* **plaintiff's Ex. 2**, Groves, 206/8-12.

| **Response** | Uncontroverted. |
|--|--|

75.     Sheriff Groves acknowledged that Deputy Kidd had told him that he had applied for the part-time job at the Columbus Police Department.  *See* **plaintiff's Ex. 2**, Groves, 209/16-25.

| **Response** | Uncontroverted. |
|--|--|

76.     Beau Hamlin, a white deputy, was selected for the detective position at the Sheriff's Office over plaintiff, even though Hamlin had less years of experience than plaintiff.  *See* **plaintiff's Ex. 2**, Groves, 216/14-217/14; and 246/1-13.  *See also* **plaintiff's Ex. 5**, Hartman, 56/9-21.  *See also* **plaintiff's Ex. 8**, Clugston, 25/21-25.

| **Response** | Controverted in part. |
|--|--|
|  | Uncontroverted that Beau Hamlin, a white deputy, was selected for the detective position at the Sheriff's Office over Plaintiff. |
|  | Controverted as to whether Hamlin had fewer years of experience than Plaintiff.  Such a determination depends on whether "years of experience" is based on time within the department or includes time outside the department. |
|  | Sheriff Groves testified as follows: |
|  | That – I don't know. B[eau] Hamlin started with us as a dispatcher, so I don't know what all [Plaintiff] claims as years of experience. I supposed probably between Parsons and Altamonte he may have more years of experience. |
|  | Plaintiff's Ex. 2, Groves, 217:8-14.  Likewise, Undersheriff Clugston testified that Plaintiff had prior years of experience as patrol deputy that Beau Ham[]lin did not when considering time "outside of our department[.]"  Plaintiff's Ex. 8, Clugston, 25:21-25. |

77.     Contrary to plaintiff's testimony and allegations otherwise, Sheriff Groves denied in his deposition that plaintiff ever complained to him prior to his termination about racial harassment or a hostile work environment perpetrated against him by

Deputy Kidd or Chief Deputy Gibson.  *See* **plaintiff's Ex. 2**, Groves, 206/13-18; 208/14-209/15; and 219/7-220/3.

| Response | Uncontroverted that there is a dispute as to this point.  Even viewing the facts in light most favorable to Plaintiff (*i.e.* that according to Plaintiff, he complained to Sheriff Groves regarding race discrimination sometime between December, 2014 and January, 2015), summary judgment is appropriate. [SOF, ¶ 45.] |
|---|---|

78.   Sheriff Groves had a special circle of favorite deputies at the Sheriff's Office, all of whom were white, including Matt Peters, Beau Hamlin, Shane Gibson, and Terry Clugston, among others.  Deputy Kerns and plaintiff were not part of this circle, however.  Those in the circle got better equipment and patrol cars than others outside the circle.  *See* **plaintiff's Ex. 1**, Johnson, 134/11-136/15.  *See also* **plaintiff's Ex. 5**, Hartman, 41/4-43/23; and 73/19-74/12.  *See also* **plaintiff's Ex. 6**, Rosenberg, 41/12-43/9; and 98/3-101/3.  *See also* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question No. 9, pp. 7-8.

| Response | Controverted.

Plaintiff's factual assertion in this paragraph is based on unsubstantiated hearsay and opinion testimony and thus lacks proper foundation.  Defendants object to the same pursuant to Fed. R. Civ. P. 56(c)(2).  Sheriff Groves never testified to any such thing and is the only individual who could confirm, one way or another, whether the information contained within this purported fact is true. |
|---|---|

79.   Chief Deputy Gibson spoke with Sheriff Groves about plaintiff's termination before it actually happened.  *See* **plaintiff's Ex. 3**, Gibson, 114/16-25.

| Response | Uncontroverted. |
|---|---|

80.   When Sheriff Groves terminated plaintiff on June 25, 2015, he did not give plaintiff a specific reason for his termination but told him "we could discuss it at a later time."  *See* **plaintiff's Ex. 2**, Groves, 69/4-13.  *See also* **plaintiff's Ex. 19**, Groves' interrogatory answers, at No. 16, p. 7.  However, Sheriff Groves thereafter never informed plaintiff, either personally or via e-mail or other mail or type of communication, about the exact reasons for his termination.  *See* **plaintiff's Ex. 2**, Groves, 194/8-13.

| Response | Uncontroverted. |
|---|---|

81.   After he terminated plaintiff, Sheriff Groves received a copy of a litigation hold letter which, among other things, asked him to preserve any and all e-mails and other communications or evidence or documents relating to plaintiff's claims in this case.  In response to the letter, Sheriff Groves directed only selected

employees, but not all employees, to preserve information relating to the subjects outlined in the letter. As such, Sheriff Groves acknowledges that it is possible that some information relating to plaintiff's claims was not preserved by the Sheriff's Office. *See* **plaintiff's Ex. 2**, Groves, 92/1-8; and 93/9-98/3. *See also See* **plaintiff's Ex. 21**, litigation hold letter.

| | |
|---|---|
| **Response** | Controverted in part.<br><br>Uncontroverted that after he terminated plaintiff, Sheriff Groves received a copy of a litigation hold letter which, among other things, asked him to preserve any and all e-mails and other communications or evidence or documents relating to plaintiff's claims in this case.<br><br>Uncontroverted that in response to the letter, Sheriff Groves directed those identified in the letter to preserve information relating to the subjects outlined in the letter.<br><br>Controverted to the extent this fact alleges that Sheriff Groves intentionally failed to comply with the litigation hold letter. Per Sheriff Groves, upon receiving the litigation hold letter:<br><br>I provided a copy to our counsel, and I believe I sent an e-mail out stating that anybody who had anything, you know, included in this to preserve.<br><br>\*\*\*<br><br>This is an e-mail from me dated December 21, 2015 to various people, employees of the sheriff's office who are referenced in your letter to me stating that [Plaintiff] has retained legal counsel and pursued to sue our office for racial discrimination and harassment. As a result, we received notice to notify each of you to save and preserve any documentation, either written or electronic, which may be related to such claim. This includes any aspect of communications such as e-mails, text messages, voicemails, photographs, etcetera. If you have questions about an item you are unaware of, please see me. Do not delete any form of communication related to these claims. In the meantime, I will forward the notice to our counsel and proceed from there.<br><br>\*\*\*<br><br>… I would say that when I read through these names of people, employees of the sheriff's office, I just – I read it as pertaining to them. I see now, you know, the – following their names that it applies to and is not limited to myself and any offices, sources and personnel of the sheriff's office. But I can – since those are the names that were sent and they correspond with the names on your list, I assume that that's where I – that's how I |

|  | distinguished who got that.<br><br>Plaintiff's Ex. 2, Groves, 93:3-96:23.<br><br>Uncontroverted that because of the misunderstanding regarding the litigation hold letter, Sheriff Groves acknowledges that it is "possible" that some information relating to plaintiff's claims was not preserved.<br><br>Importantly, Defendants are unaware of any specific documents Plaintiff asserts should have been preserved, but were not. |
|---|---|

82.   The tasing incident between Kidd and Kerns was common knowledge both inside and outside the Sheriff's Office before plaintiff's termination.  Deputy Piepho testified that he had heard about it before June 2014.  Deputy Kerns testified that plaintiff and other deputies knew about the tasing incident and that he openly discussed the incident in front of deputies and with Chief Daniels (who already knew about it).  Chief Daniels testified that officers at the Columbus Police Department knew about the incident and that several of them threatened to quit the force if he hired Kidd.  Ms. Blockberger testified that her impression was that "everybody" in the Sheriff's Office knew about it because they talked about it in the office hallways.  *See* **plaintiff's Ex. 1**, Johnson, 137/3-144/2.  *See also* **plaintiff's Ex. 4**, Piepho, 38/6-9.  *See also* **plaintiff's Ex. 6**, Rosenberg, 111/7-112/5; and 118/17-119/25.  *See also* **plaintiff's Ex. 7**, Kerns, 68/8-69/6; 69/15-71/18; 82/15-83/19; 84/13-22; and 101/9-102/16.  *See also* **plaintiff's Ex. 16**, Daniels, 13/5-14/10; 17/12-24; 19/8-20/14; and 49/4-10.

| **Response** | Controverted.<br><br>Plaintiff's broad statement that "the tasing incident between Kidd and Kerns was 'common knowledge' both inside and outside the Sheriff's Office" is not supported by the deposition testimony in this matter and thus, fails to comply with Fed. R. Civ. P. 56(c)(1).  Furthermore, the evidence does not support Plaintiff's unilateral characterization of the incident as one that was "racial."<br><br>Deputy Hartman (who was present for the tasing incident) testified that he was unaware as to whether or not anyone knew about the tasing incident.  Plaintiff's Ex. 5, Hartman, 24:1-25:5 and 30:11-17; Plaintiff's Ex. 7, Kerns Depo., 56:7-13.<br><br>Likewise, Sheriff Groves and Chief Deputy Gibson testified that they did not learn of the tasing incident (let alone, a racially-motivated tasing incident) until receipt of Plaintiff's charge of discrimination.  Plaintiff's Ex. 2, Groves, 206:19-207:7; Plaintiff's Ex. 3, Gibson, 62:8-21.<br><br>Furthermore, Plaintiff's factual assertion in this paragraph is based on unsubstantiated hearsay and opinion testimony and thus lacks proper |
|---|---|

| | foundation.  Defendants object to the same pursuant to Fed. R. Civ. P. 56(c)(2). |
| --- | --- |

83.     Racial discrimination permeated the Sheriff's Office both before and during plaintiff's tenure of employment there.  Deputy Kidd repeatedly asked Deputy Kerns whether, because he was African-American, he liked "grape Kool-Aid" and "watermelon" and also used the word "nigger" in talking around deputies.  Other deputies, including Matt Peters, made racial statements about drugs being in cars with nice wheel rims driven by minorities.  Beau Hamlin referred to Doug Wydick's black dog as "nigger" in text messages he sent to Wydick.  At least one deputy had a tattoo of a Confederate flag.  Deputy Piepho testified that the racist Mario video was shown "numerous times," and that he used the word, "nigga" in speaking with Deputy Kerns.  Plaintiff testified that Deputy Kidd called him "boy" and told him to pick up trash "after the white folk" on countless occasions in a "continuing nagging, joking thing" whenever they worked together.  Plaintiff also told Sheriff Groves "I don't know why [Deputy Kidd] won't stop with the jokes."  *See* **plaintiff's Ex. 1**, Johnson, 144/12-25; 179/3-25; and 182/25-183/17.  *See also* **plaintiff's Ex. 4**, Piepho, 16/5-17/14; and 22/21-23/10.   *See also* **plaintiff's Ex. 5**, Hartman, 22/13-26/23; 37/10-38/11; 39/3-40/14; and 63/1-64/12.   *See also* **plaintiff's Ex. 6**, Rosenberg, 73/11-75/17; 75/23-76/24; 79/9-83/7; 109/22-110/9; 114/7-116/21; 125/15-126/14; 134/17-136/14; and 137/13-138/19.   *See also* **plaintiff's Ex. 7**, Kerns, 29/23-32/16; 33/11-23; 54/22-56/17; 57/1-58/3; 58/13-60/4; 60/11-62/19; 65/19-67/3; 97/6-98/22; and 100/20-101/3.

| **Response** | Objection.  This is argument.  This purported fact fails to comply with Local Rule 56.1 which requires that "the party opposing summary judgment … set forth each additional fact in a separately numbered paragraph, supposed by references to the record, in the manner required by subsection (a)[.]"  Subsection (a) requires statements of fact to be "concise." |
| --- | --- |
| | This purported fact is compound and includes improper argument more appropriately suited for the body of *Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment*.  Nevertheless, Defendants attempt to respond to the same as follows. |
| | Controverted in part. |
| | Plaintiff's broad statement that "[r]acial discrimination permeated the Sheriff's Office both before and during plaintiff's tenure of employment there" is not supported by the deposition testimony in this matter and thus, fails to comply with Fed. R. Civ. P. 56(c)(1). |
| | Uncontroverted that Deputy Kidd utilized the terms "grape Kool-Aid" and "watermelon" in his interaction with Deputy Kerns. |
| | Controverted that Deputy Kidd repeatedly asked Deputy Kerns whether, |

*because he was African-American*, he liked "grape Kool-Aid" and "watermelon." The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1). Any testimony as to *why* those terms were utilized is unsubstantiated hearsay and/or opinion testimony and lacks proper foundation.

---

Controverted that Deputy Kidd used the word "nigger" in talking around deputies. The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1). Deputy Kerns testified as follows:

Q.  So you've named two, grape Kool-Aid and watermelon. Anything else?

A.  Yeah, he showed me a video once.

Q.  Well, before we get to the video, what other words would he use, if any, or phrases?

A.  I don't think he'd use any other words. I mean he would just make some jokes like that.

Q.  Grape Kool-Aid, grape soda and watermelon?

A.  Yeah.

***

Q.  Did he ever – and I hate asking this question, call you the "N" word?

A.  Not to my knowledge, I don't think he did.

***

Q.  Did he ever use the "N" word with other deputies, whether he was calling somebody that or simply using it in the context of a sentence?

A.  *He may have.* I don't think he ever called anyone to my knowledge that.

Plaintiff's Ex. 7, Kerns, 31:10-33:23 (emphasis added). As seen from the foregoing, any such testimony is mere speculation and lacks proper foundation.

---

Uncontroverted that Deputy Matt Peters, on one occasion, made a statement about drugs being in cars with nice wheel rims.

Controverted that "deputies" made "racial" statements about drugs being in cars with nice wheel rims "driven by minorities." The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1).  Deputy Kerns testified as follows:

Q.  Prior to this remark about grape Kool-Aid at West Mineral, do you remember any prior instances where a deputy said something that interpreted as being directed either at you or at African Americans generally?

A.  It was things that *probably could have been*.

[Mr. Case: I'll object as being vague.]

Q.  (By Mr. Lucas) Things that *probably could have been*?

A.  Yes.

Q.  Like what?

A.  Like if there was a car that drove by,  nice looking car that had some rims on it, or something and they would say something, it could have been a racial statement, or it may not have been, "There's probably drugs in that car," that, or something, you know, because it had rims and it lifted or something.

Q.  And why in your mind did you interpret that as being directed at your race?

A.  It could have been my race or Hispanic males *or anything*.

Q.  Your *perception* is that they were making a racial stereotype about the type of car driven and assuming that there would be drugs in it?

[Mr. Case: Object, leading.]

Q.  (By Mr. Lucas) True?

A.  True.

Q.  Who would make that kind of remark?

A.  I remember one instance, it was Matthew Peters.

***
Q.  Were there other deputies beyond Matthew Peters who would make

remarks or observations that you, in your mind, associated with race?

[Mr. Case: Object, vague.]

A.  No, I don't think so.

Plaintiff's Ex. 7, Kerns, 60:11-63:1 (emphasis added).  As seen from the foregoing, any such testimony is mere speculation and/or opinion and lacks proper foundation.

---

Uncontroverted that Beau Hamlin referred to Doug Wydick's black dog as "nigger" in text messages he sent to Wydick.  Please see Defendants' Statement of Fact Nos. 24 – 24.2.

---

Controverted that "[a]t least one deputy had a tattoo of a Confederate flag." The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1).  Deputy Kerns testified as follows:

Q.   Did you ever see any sheriff's deputy or employee display a Confederate flag or a symbol of the South?

[Mr. Case: Objection, vague.]

A.  I'm wanting to say yes, *but I'm not 100 percent for sure*.  I know there was a deputy that did work for the Sheriff's Office, he started at the jail, I believe, and then he went to bailiff, he had a tattoo of a Confederate flag.

Q.  (By Mr. Lucas) Who was that?

A.  I believe it was Kyle West, I believe, *but since then, it's covered up*.

Plaintiff's Ex. 7, Kerns, 100:20-101:6 (emphasis added).

---

Controverted that Deputy Piepho testified that the racist Mario video was shown "numerous times" as Deputy Piepho's testimony is unsubstantiated hearsay and lacks proper foundation.  Deputy Piepho specifically testified as follows:

Q.  Okay. What did Dean Kidd tell you, as far as you can recall, about either his termination or the lawsuit involving my client, Brandon Johnson?

A.  What he told me was – *you'll have to excuse me if these come out incorrect or –*

Q.  Sure.

A.  It's been a good while since I was told.

***

And another instance was he was showing a video that had been shown numerous times before, which doesn't make it right, that *possible* had racist overtones or blatant racism in it, and [Plaintiff] took offense to it.

*Again, not there for either instance, so I can't either say it happened or it did not happen.*

Plaintiff's Ex. 4, Piepho, 16:21-17:11 (emphasis added).

Uncontroverted that Deputy Piepho testified to having used the word, "nigga" in speaking with Deputy Kerns, but immaterial and irrelevant as Deputy Piepho testified that he asked permission before using the word with Deputy Kerns, never used the word in front of Plaintiff, and never used the word while working.  Deputy Piepho specifically testified as follows:

Q.  I have to use this word because it's at issue in this case and it's a – an offensive word. So I apologize for using it. The "N" word, meaning nigger, did you ever hear anybody use that word while employed at the sheriff's office?

A.  I worked in both the jail and on patrol, so I probably heard it more time than once. Did I hear any fellow professional say it? No. I heard inmates say it.

I heard the word "nigga" used more than once, and it was never in a serious or endearing or offensive tone.  It was more when you're talking about music lyrics or coming from a mixed deputy or an African-American deputy.

I can safety say that I don't remember any Caucasian or white deputies using it towards Deputy Kerns or [Plaintiff].

Q.  When you – you say "nigga," you mean N-I-G-G-A?

A.  That is correct.

Q.  Okay. But you don't recall any white deputies using that term in the presence of Deputy Kerns or [Plaintiff]?

A.  Not to my knowledge unless –

I may have said it once or twice to Deputy Kerns, but Deputy Kerns and I had a close personal relationship at the time, and I knew no offense would be taken and none would be taken by anybody else in the room should they be present.

Q.  So you – you had used the word "nigga," N-I-G-G-A, in front of Deputy Kerns?

A.  That is correct.

Q.  Have you done that as well with [Plaintiff]?

A.  I did not. We did not have that close relationship where he wouldn't take offense to it. And judging off of his person, it was safe to assume that he would not have been okay with that.

And, again, I wasn't close to him; so I wouldn't be okay with saying that to him. And the last thing I would want to do is cause personal offense to somebody that was not only my coworker but was supposed to be my lifeline in a life-threatening event.

Q.  Why would you say – or why do you say that you assume [Plaintiff] would not have been okay with that?

A.  Because he and I were not close.

Q.  Okay. Do you know whether Kerns, Deputy Kerns, was okay with you using the word "nigga"?

A.  As far as my knowledge.  I talked to him numerous times before, and he never took offense to it.

Q.  Did he ever say that he was okay or that it didn't – well, did he ever say, in response to using that word, that it didn't bother him or that it was okay?

A.  Yes.

Q.  He did?

A.  Yes.

Q.  Did you ask him before you used it?

A.  Yes.

Q.  So it's your testimony that, in the presence of Deputy Kerns, you would use the word "nigga," N-I-G-G-A; that you at least once asked him if that was okay, and he said yes?

A.  Yes. And let me be clear that this was not a frequent occurrence. It did not happen every other word out of my mouth, every day, every week, and 10 times out of 10 it never occurred while we were on the job.

It would occur at his residence, while we were having a couple drinks, or whatever the case may be. It was strictly personal life stuff, not professional.

Q.  Are you – are you saying that you never used that word in the Cherokee County Sheriff's Office around Deputy Kerns?

A.  Yeah.

Q.  Okay.

A.  Yes.

Q.  Did you ever use it at all around anybody at the sheriff's office?

A.  No.

Plaintiff's Ex. 4, Piepho, 22:4 – 25:12.

---

Controverted that Plaintiff testified that Deputy Kidd specifically called him "boy" and told him to pick up trash "after the white folk" *on countless occasions* in a "continuing nagging, joking thing" whenever they worked together.  The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1).  Rather, Plaintiff testified that Deputy Kidd made this comment "when we were working one day[.]" Plaintiff's Ex. 1, Plaintiff, 183:1-7.

---

Controverted that Plaintiff told Sheriff Groves "I don't know why [Deputy Kidd] won't stop with the jokes."  Per the deposition testimony of Sheriff Groves;

Q.  (By Mr. Lucas) And it's your testimony that prior to Deputy Johnson's termination you had no knowledge one way or the other about whether Deputy Kidd was telling Mr. Johnson to pick up trash after the white folks or calling him boy?

A.  That's correct.

|  | Plaintiff's Ex. 2, Groves, 209:9-15. |
| --- | --- |

84.   Plaintiff found the racial harassment and discrimination to which he was subjected at the Sheriff's Office offensive, severe, abusive, and upsetting. *See* **plaintiff's Ex. 1**, Johnson, 146/13-147/4; 147/22-148/23; 153/5-10; 154/16-156/14; 158/2-15; and 158/23-160/3. *See also* **plaintiff's Ex. 7**, Kerns, 42/10-43/22; 45/15-25; 51/4-16; 53/25-54/21; 68/8-69/6; 74/4-75/2; 76/6-9; and 89/8-24. *See also* **plaintiff's Ex. 17**, Johnson interrogatory answers to Groves, at question Nos. 3 and 9. *See also* **plaintiff's Ex. 18**, Johnson interrogatory answers to County, at question Nos. 1 and 10.

| **Response** | Objection. This purported fact fails to comply with Local Rule 56.1 which requires that "the party opposing summary judgment … set forth each additional fact in a separately numbered paragraph, supposed by references to the record, in the manner required by subsection (a)[.]" Subsection (a) requires statements of fact to be "concise." |
| --- | --- |
|  | This purported fact is vague, overly broad, and unduly compound, making a response to the same virtually impossible without simply citing to the record as a whole. This purported fact includes improper argument more appropriately suited for the body of *Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment*. Nevertheless, Defendants attempt to respond to the same as follows. |
|  | Controverted in part. |
|  | Uncontroverted that Plaintiff found the racist Mario video shown by Deputy Kidd to be offensive. |
|  | The remainder of this purported fact is controverted including, but not limited to, the assertion that Plaintiff was subjected to "racial harassment and discrimination" or that the same was "offensive, severe, abusive, and upsetting." The cited-to testimony does not support the same and thus, Plaintiff has failed to comply with Fed. R. Civ. P. 56(c)(1). Please see *Defendants' Memorandum in Support of their Joint Motion for Summary Judgment*, as a whole, which presents argument in direct contravention of this purported statement of fact. |

## III.   Reply in Support of Motion for Summary Judgment.

As a preliminary matter, Defendants note that *Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment*, including his Statement of Additional *purportedly* Uncontroverted Material Facts, is riddled with vague and conclusory argument unsupported by the record in this matter.

**A.      Defendants' alleged "admission" is no more than an inconsistent and unintentional scrivener's error by prior counsel.**

Plaintiff argues that *Defendants' Joint Motion for Summary Judgment* must be denied based on an alleged "admission" found in paragraph 13 of Defendants' Answer to Plaintiff's Complaint.  Plaintiff's argument is without basis.  The alleged "admission" is no more than an inconsistent and unintentional scrivener's error made by prior counsel.  We provide the details of this alleged "admission" below:

> 13.      During the majority of his tenure at the Sheriff's Office, Mr. Johnson worked full time as a patrol deputy, making approximately $14.00 per hour at the time of his unlawful discharge.  He also had benefits including health insurance, life insurance and a retirement plan.  [Doc. 1, Complaint, ¶ 13.]

> 13.      Defendants admit the allegations in paragraph 13 of Plaintiff's Complaint. [Doc. 3, Answer, ¶ 13.]

Defendants' actions and representations throughout the course of this litigation have consistently represented to both Plaintiff and the Court that Plaintiff was not unlawfully discharged but rather, was terminated for a legitimate, non-discriminatory reason.  In support of the same, Defendants note that even the preceding paragraph of Plaintiff's Complaint and Defendants' corresponding Answer denies Plaintiff's assertion that Defendants' have "admitted" to unlawfully terminating Plaintiff.

> 12.      On or about March 28, 2013, Mr. Johnson began working at the Cherokee County Sheriff's Office ("Sheriff's Office").  As described more fully below, defendants unlawfully terminated Mr. Johnson from the Sheriff's Office on June 25, 2015. [Doc. 1, Complaint, ¶ 12.]

> 12.      Defendants admit that Plaintiff began working at Cherokee County on or about March 28, 2013, *but deny the remaining allegations in paragraph 12 of Plaintiff's Complaint.*  [Doc. 3, Answer, ¶ 12 (emphasis added).]

81

This is supported by the following related paragraph of Plaintiff's Complaint and Defendants' corresponding Answer:

> 22.   … He continued with such behavior until Mr. Johnson's unlawful termination. … [Doc. 1, Complaint, ¶ 22.]

> 22.   Defendants deny the allegations in paragraph 22 of Plaintiff's Complaint.  [Doc. 3, Answer, ¶ 22.]

As the foregoing demonstrates that this alleged "admission" was no more than a mere scrivener's error, the same cannot be legitimately relied upon by Plaintiff as creating a genuine issue of material fact.  Defendants submit a Motion for Leave to File an Amended Answer Out of Time to remedy the same.

**B.   *Nielander* is applicable to the matter at hand.**

Plaintiff asserts that *Bd. of County Comm'rs of County of Lincoln v. Nielander*, is inapplicable to the matter at hand.  Defendants disagree.  *Nielander* holds as follows:

> We find that the legislative history of S.B. 46 and K.S.A. 19-805(a) demonstrates the legislature's intent to vest sheriffs, not boards of county commissioners, with the authority to "appoint, promote, demote and dismiss additional deputies and assistants."  Moreover, under the plain language of K.S.A. 2001 Supp. 19-101a(a)(15), boards of county commissioners are prohibited from effecting changes to the provisions of K.S.A. 19-805(a).

> ***

> The introductory phrase of K.S.A. 19-805(d), "[a]ny personnel action taken by the sheriff,"… must not be ignored.  While personnel actions taken by sheriffs are "subject to" personnel policies, payment plans, collective bargaining agreements, and budgets established by boards of county commissioners, K.S.A. 19-805(d) does not give county commissioners the ability to supersede a sheriff's power to appoint, promote, demote, or dismiss his or her personnel.[4]

As provided by the District of Kansas' own Judge Murguia in *Blume v. Meneley*, "[t]he court interprets [the] holding [in *Nielander*] as stating that a county board of commissioners has no

---

[4] *Bd. of County Comm'rs of County of Lincoln v. Nielander*, 275 Kan. 257, 266-67, 62 P.3d 247, 253-54 (2003).

oversight over a sheriff's department, and therefore no vicarious liability for employment practices of the sheriff."[5]  Plaintiff's assertion to the contrary is without basis.[6]

C.   *Loum, Trujillo, and Wemimo* remain "current governing federal law."

Plaintiff asserts that Defendants' analysis of his claim for hostile work environment pursuant to the standards put forth in *Loum, Trujillo,* and *Wemimo* is improper, as such cases were "decided in the late 1990s, [and] fail to represent more current federal jurisprudential trends in analyzing hostile work environment claims[.]"[7]  According to Plaintiff, this Court must look to *Hernandez v. Valley View Hosp. Ass'n* for the *current* standard.[8]  Defendants disagree and reiterate that *Loum, Trujillo,* and *Wemimo* remain good law.  Regardless, the law as presented by the Tenth Circuit in *Hernandez* and *Trujiillo* varies little:

| *Hernandez* | *Trujillo* |
|---|---|
| "We have recognized that 'Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim.'  'To survive summary judgment on a claim alleging a racially hostile work environment, [the plaintiff] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and | "Normal job stress does not constitute a hostile or abusive work environment. As the Seventh Circuit explained, federal law 'does not guarantee a utopian workplace, or even a pleasant one.... [P]ersonality conflicts between employees are not the business of the federal courts.'"[10]<br><br>"To survive summary judgment, Plaintiff must show that 'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'"[11] |

---

[5] *Blume v. Meneley*, 283 F.Supp.2d 1171, 1174-75 (D. Kan. 2003).

[6] Plaintiff cites to *Hudson v. Leavenworth County Sheriff's Office*, No. 14-CV-02065-JAR, 2015 WL 6738681 (D. Kan. Nov. 4, 2015) and references employer liability, but fails to provide any argument in support of the same. *Hudson* is inapplicable to the matter at hand as it does not address the liability of a board of county commissioners for employment practices of the sheriff.

[7] Doc. 113, Plaintiff's RIO to Defendants' Joint MSJ, pp. 31, n. 5; *see Loum v. Houston's Restaurants, Inc.*, 985 F. Supp. 1315 (D. Kan. 1997); *Trujillo v. Univ. of Colo. Health Sciences Cntr.*, 157 F.3d 1211 (10th Cir. 1998); *Wemimo v. Personal Marketing Co.*, No. 97-2544-JWL, 1998 WL 709605 (D. Kan. Sept. 28, 1998).

[8] *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950 (10th Cir. 2012).

| | |
|---|---|
| that the victim 'was targeted for harassment because of [her] race or national origin.'"[9] | |
| "'The applicable test for a hostile work environment has both objective and subjective components. A dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended,' and both must be proved."[12] | |
| "'[There] is not, and by its nature cannot be, a mathematically precise test' for a hostile work environment claim.  Courts determine whether an environment is hostile or abusive by looking at such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'  '[T]he severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact.'"[13] | "In evaluating the first prong of a hostile work environment claim, we look at all the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' As we previously stated in *Bolden,* a few isolated incidents of racial enmity are insufficient to survive summary judgment."[14] |

As such, and as the following will reiterate, Defendants are entitled to summary judgment on Plaintiff's claim for hostile work environment regardless of the standard applied by this Court.

Defendants do not dispute that "'the cumulative weight of ... several 'isolated' racial comments' may give rise to a hostile work environment claim."[15]  However "a plaintiff cannot survive summary judgment 'by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs.  Instead, there must be a steady barrage of opprobrious racial comments."[16]

---

[10] *Trujillo,* 157 F.3d at 1214; *see also Wemimo,* No. 97-2544-JWL, 1998 WL 709605, at *4.

[11] *Trujillo,* 157 F.3d at 1214.

[9] *Hernandez,* 684 at 957 (internal citations omitted).

[12] *Id.*

[13] *Id.,* at 957-58 (internal citations omitted).

[14] *Trujillo,* 157 F.3d at 1214.

[15] *Hudson v. Leavenworth County Sheriff's Office,* No. 14-CV-02065-JAR, 2015 WL 6738681, at *12 (D. Kan. Nov. 4, 2015).

[16] *Id.*

As outlined between pages 20 and 24 of *Defendants' Joint Motion for Summary Judgment*, no such steady barrage of opprobrious racial comments can be found in this case.

Plaintiff argues that he has "adduced evidence to establish that racial harassment and discrimination pervaded the workplace at the Sheriff's Office and that it was sufficiently severe, hostile, and abusive, to alter the conditions of plaintiff's working environment." In support of the same, Plaintiff points to five (5) categories of information. We reiterate why each, independently and cumulatively, is insufficient to support a claim for hostile work environment:

---

1.    Deputy Kidd allegedly called Plaintiff "boy" and told him to "pick up trash after the white folks" one time.

---

Plaintiff improperly conflates the alleged racial insults in an effort to make it appear as though Plaintiff was present for each of the same. He was not.

The only alleged racial statement Plaintiff heard was from Deputy Kidd – on one occasion – allegedly calling Plaintiff a "boy" and saying he "needed to pick up trash after the white folk."[17] [SOF, ¶ 39.]

Plaintiff was not present for any statement to Deputy Kerns regarding "grape Kool-Aid" or "watermelon" as the same (along with the tasing incident) occurred prior to the commencement of his employment. [SOF, ¶¶ 5 – 5.10.]

Plaintiff did not witness Deputy Hamlin calling Investigator Wydick's black dog a "nigger." [SOF, ¶¶ 24.1.] Indeed, he did not learn of the same until after his termination. [SOF, ¶¶ 24-24.4.]

---

[17] Doc. 96, Defendant's Joint MSJ, pp. 21-24.

Plaintiff's vague statement that "Deputy Kidd *and others* lodged repeated racial insults ... toward plaintiff and Deputy Kerns" is unsupported by the record of fact.

---

2.      Deputy Kidd showed the Mario video to Plaintiff one time.

---

Plaintiff improperly conflates the perceived allegations of non-party Kerns in an attempt to bolster his claims.

While Deputy Kidd may have shown the Mario video on more than one occasion to different individuals, the evidence demonstrates that the video as it pertains to Plaintiff, was shown one time. [SOF, ¶ 40.] When Sheriff Groves learned that the video had been shown, he terminated Kidd's employment for violation of the code of conduct. [SOF, ¶ 28.]

Plaintiff's vague statement that "Deputy Kidd displayed racially offensive *things*" is a blatant attempt to try and create material issues of fact where none exist.  As demonstrated by the foregoing, this blanket statement is unsupported by the evidence in this matter.

---

3.      Alleged commiseration is irrelevant to the Court's analysis.

---

Defendants assume that Plaintiff intended his argument to read "Deputy Kerns and Plaintiff commiserated about the racist behavior, which they found offensive and insulting." Either way, Defendants note that Plaintiff has not included this as a Statement of Additional Material Fact (presumably because the same is not supported by the evidence in this matter). Alleged commiseration about racist behavior does not alter the underlying behavior itself and thus, does not effect the Court's analysis of *Defendants' Joint Motion for Summary Judgment*,

but-for to confirm the subjective component of an alleged hostile work environment claim

(which was unlikely to be denied given the fact that Plaintiff has brought a lawsuit).

---

4.      Plaintiff's had an exchange with Chief Deputy Gibson unrelated to race.

---

As addressed on pages 20 and 21 of *Defendants' Joint Motion for Summary Judgment*,

Plaintiff's exchange with Chief Deputy Gibson does not reflect animosity on account of race.

[SOF ¶¶ 19 and 38 – 38.7.]  As "[g]eneral harassment if not racial .. is not actionable[,]"[18] this

assertion cannot support Plaintiff's claim for hostile work environment.

---

5.      Sheriff's Groves' duty to monitor the workplace for racial harassment is
        irrelevant to whether or not Plaintiff can make out a claim for hostile work
        environment.

---

While Defendants concede that the issue re: Sheriff Groves' monitoring of the workplace

is in dispute, the same is not material such that it should prevent the Court from granting

summary judgment in favor of Defendants on Plaintiff's claim for hostile work environment.

Indeed, even under the standard put forth by Plaintiff, whether or not Sheriff Groves fulfilled a

duty to monitor the workplace for racial harassment and hostile behavior, knew harassment or

hostile behavior was present, or was informed of harassment or hostile behavior, is irrelevant as

to whether or not Plaintiff can make out a claim for hostile work environment.

Plaintiff argues that Defendants' request for summary judgment must be denied based on

*Lounds v. Lincare, Inc.*[19] and *Herrera v. Lufkin Industries, Inc.*[20]  The matter at hand is

---

[18] *Loum*, 985 F.Supp. at 1321; *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).
[19] *Lounds v. Lincare, Inc.*, 812 F.3d 1208 (10th Cir. 2015).
[20] *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675 (10th Cir. 2007).

distinguishable from those decisions based on the sheer number of alleged incidents.

Additionally, in *Lounds,* the Tenth Circuit Court of Appeals advised as follows:

> In the end, the district court committed legal error by focusing on whether the alleged harassers intended to be offensive or to cause harm ... rather than on whether a reasonable jury could find on this record that the subjective and objective effect of their conduct was to pollute the environment with harassing conduct that was, *inter alia*, racially humiliating, offensive, or insulting.[21]

Here, *Defendants' Joint Motion for Summary Judgment* addresses why a reasonably jury could not find (based on the record) that the objective effect of the alleged harassers conduct would have been to create a hostile work environment. Based on the foregoing, summary judgment on Plaintiff's claim for hostile work environment is proper.

### D. Defendants have sought summary judgment on Plaintiff's Count I claim for race discrimination.

Argument B of *Defendants' Memorandum in Support of their Joint Motion for Summary Judgment* requests that summary judgment be granted in Defendants' favor on Plaintiff's claim for race discrimination (Count I), where: (1) Plaintiff cannot demonstrate that any delay in his pay raise was due to his race; and (2) Plaintiff's claim for delay in pay raise, failure to promote, denial of equipment, and denial of training are time barred.[22]

Despite the same, footnote 4 of *Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment* states as follows:

> Count I of plaintiff's complaint also advances a claim for "racial discrimination" under Title VII but defendants have not specifically sought summary judgment on this claim. As such, plaintiff's racial discrimination claim remains pending.

Plaintiff is mistaken.

No genuine factual issues remain on Plaintiff's claim for race discrimination based on delayed pay raise, failure to promote, denial of equipment and denial of training. [*See*

---

[21] *Lounds*, 812 F.3d at 1232.
[22] Doc. 96, Defendant's Joint MSJ, pp. 25-29.

*Defendants' Reply in Support of their SOF*, at ¶¶30-37.2.  *See Defendants' Response in Opposition to Plaintiff's SOF*, ¶¶ 73, 76, and 78.]  Indeed, Plaintiff generally failed to respond to Defendants' specific arguments addressing the same.

Where Plaintiff did respond, he misstated federal law by concluding, without basis, that his claims based on delayed pay raise, failure to promote, denial of equipment, and denial of training are compensable – regardless of theory (*i.e.* race discrimination or hostile work environment) – despite falling outside the applicable 300 day time period for filing a charge of discrimination.

The Supreme Court has specifically "held that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."[23]  In short, and as addressed in *Defendants' Memorandum in Support of their Joint Motion for Summary Judgment*, Plaintiff cannot recover for race discrimination based on the alleged delayed pay raise, failure to promote, denial of equipment, and denial of training.  Such information may only be considered as part of Plaintiff's hostile work environment claim.[24]

To the extent Plaintiff attempts to argue that such information pertains to Plaintiff's claim for hostile work environment, Defendants reiterate that the timing of Plaintiff's pay raise was based on a pre-planned method of rolling out raises premised upon employee's months of hire. [SOF, ¶¶ 3.4, 10, 34-34.1, 35, 36, 37.]

   **E.    Plaintiff cannot establish the "causation" element of his retaliation claim; no "genuine issue of material fact" remains about the cause for Plaintiff's termination.**

---

[23] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 122 S. Ct. 2061, 2071, 153 L.Ed.2d 106 (2002).
[24] *Id.* at 118, 122 S. Ct. at 2075, 153 L.Ed.2d 106 ("Given therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.").

By virtue of failing to respond to the same, Plaintiff has conceded that no causal connection existed between his termination and the alleged protected activity taken when he held, or *attempted to hold*, conversations with: (1) Deputy Brian Kerns; (2) Chief Deputy Shane Gibson; (3) Deputy Mike Potter; (4) Chief Investigator Wydick; and (6) Jason Daniels.  Rather, Plaintiff argues only that "a genuine issue of material fact remains about the cause for plaintiff's termination in view of his complaints to Sheriff Groves[.]"[25]

As discussed in *Defendants' Memorandum in Support of their Joint Motion for Summary Judgment*, Plaintiff alleges he complained to Sheriff Groves  regarding race discrimination sometime between December, 2014 and January, 2015.  [SOF, ¶ 45.]  Plaintiff was terminated over five months later on June 25, 2015.  [SOF, ¶ 23.]  As such, Plaintiff "must rely on additional evidence beyond temporal proximity to establish causation."[26]

First, Plaintiff asserts in a conclusory fashion that "there is more than sufficient evidence to establish that Deputy Kidd and others at the Sheriff's Office subjected plaintiff to racial discrimination and harassment."  While Defendants dispute the same, as discussed in their *Memorandum in Support of their Joint Motion for Summary Judgment*, the same is irrelevant to the issue at hand as the alleged "racial discrimination and harassment" occurred prior to Plaintiff's alleged complaint to Sheriff Groves in December 2014 or January 2015 (hence, what Plaintiff alleges he was reporting).  [*See* SOF, ¶¶ 45-46, and 48; *see Plaintiff's* Ex. 17, ROG No. 3.]  Plaintiff fails to produce, or cite to, any evidence to the contrary.  Indeed, Plaintiff specifically fails to produce evidence in support of his unfounded assertion "that plaintiff thereafter further complained to Sheriff Groves about Deputy Kidd's increasingly hostile behavior after Kidd's failure to get the part-time job at the Columbus Police Department (when

---

[25] Doc. 113, Plaintiff's RIO to Defendants' Joint MSJ, pp. 34.
[26] *Downs v. Jostens, Inc.,* 23 F. Supp. 3d 1332, 1338 (D. Kan. 2014).

Sheriff Groves was already aware Kidd had applied for the job in question)."[27]   Rather, his own Interrogatory Answers allege that in December, 2014 or January, 2015, he "also told Sheriff Groves about Deputy Kidd's failure to get the part-time job at the Columbus Police Department and about Deputy Kidd's increasingly hostile behavior toward me thereafter."  [Plaintiff's Ex. 17, ROG No. 3.]  As such, the same cannot establish causation.

Second, Plaintiff asserts that his "attempt" to report the alleged assault by Chief Deputy Gibson is sufficient to establish causation.  Plaintiff's argument is without basis.  The alleged assault by Chief Deputy Gibson did not involve Sheriff Groves and Plaintiff admits that he did not actually inform Sheriff Groves about the same.[28]  This is directly supported by Sheriff Groves' own testimony:

> Q.   Between Chief Deputy Gibson and Mr. Johnson.  In short, there had been a death and there was a funeral, and the allegation is that Chief Deputy Gibson yelled and berated Mr. Johnson with foul language and told him to get out of his office.  He leapt out of his chair violently and rushed at Mr. Johnson as though he would hit him, and then eventually told Mr. Johnson to get out of here.  Did you ever become aware of that incident prior to June 25, 2015?
>
> A.   I don't believe so.
>
> Q.   Did you ever witness it or overhear it?
>
> A.   No.  And my office i[s] two doors down from [Chief Deputy Gibson's], and again, he is a loud talker, just in general.  If this would have occurred and I was in the building, I would have heard it.

Plaintiff's Ex. 2, Groves, 219:12-220:3.  As, it is uncontroverted that Sheriff Groves determines who to fire at the Sheriff's Department [SOF, ¶ 3.3.] and made the decision to terminate Plaintiff [SOF, ¶¶ 3.2 and 23.], the record is void of any evidence to support Plaintiff's assertion.  Indeed, Plaintiff's own citations do not support a finding of causation.

---

[27] Doc. 113, Plaintiff's RIO to Defendants' Joint MSJ, pp. 36.
[28] Doc. 113, Plaintiff's RIO to Defendants' Joint MSJ, pp. 36.

[NOTE: *Plaintiff's Response in Opposition to Defendants' Joint Motion for Summary Judgment* generally alleges that Plaintiff made "multiple complaints … the last of which [was] made no more than 14 days before his termination."  In support of the same, Plaintiff cites only to SOF, ¶¶ 45.4 and 74.  SOF, ¶ 45.4. provides that "Plaintiff cannot recall telling Sheriff Groves anything else."  SOF, ¶ 74 provides that "Sheriff Groves prefers that Sheriff's Office employees work out any differences amongst themselves and by themselves before coming to him."  Neither SOF stands for the proposition proffered by Plaintiff.  Rather, Plaintiff's own deposition testimony alleges only that he complained to Sheriff Groves in December, 2014 or January, 2015 [SOF, ¶¶ 45-46, and 48].  While Plaintiff alleges he "attempted" to complain to Sheriff Groves in June, 2015, he failed to do so as outlined in the foregoing paragraph.]

Third, Plaintiff asserts that causation is established by virtue of Chief Deputy Gibson having spoken with Sheriff Groves about Plaintiff's forthcoming termination before it occurred on June 25, 2015.  [SOF, ¶ 79.]  In so asserting, Plaintiff concedes that the decision to terminate Plaintiff had already been made at the time this conversation occurred.  As such, it is axiomatic that the conversation cannot – in and of itself – establish causation for the termination.  Plaintiff is without evidence to support his assertion to the contrary.

Fourth, Plaintiff asserts that causation is established via Sheriff Groves having failed to tell Plaintiff why he had been terminated.  It is uncontroverted that when Sheriff Groves terminated Plaintiff on June 25, 2015, he did not give Plaintiff a specific reason for his termination but told him "we could discuss it at a later time."  [SOF, ¶ 80.]  Nevertheless, the same does not support an inference that no such reason existed or was "pretextual" where Chief Deputy Gibson spoke with Sheriff Groves about Plaintiff's forthcoming termination (including specific reasons for the same) before it occurred on June 25, 2015.  [SOF, ¶ 79.]

Fifth and finally, Plaintiff asserts that causation is established via Sheriff Groves having supposedly "tolerated poor work performance and infractions from other similarly situated white employees."  More specifically, Plaintiff claims that while Sheriff Groves followed progressive disciplinary measures with white employees, he failed to do so with Plaintiff by failing to confront Plaintiff about alleged work deficiencies.  Defendants disagree because like Plaintiff,

92

both Deputy Kidd and Deputy Piepho were terminated from their employment with the Cherokee County Sheriff's Department.  [SOF, ¶ 28; Ex. 4, Piepho, 77:24-78:1.]  Furthermore, like Deputy Kidd and Deputy Piepho, Plaintiff was confronted with work deficiencies.  On February 5, 2014, Plaintiff's first performance review was issued. [SOF, ¶ 11.]  That review:

- Stated that Plaintiff's "paper service completion had been below average but is recently improving." [SOF, ¶ 11.2.]

- Stated that Plaintiff "had multiple opportunities for additional work that were not sought out." [SOF, ¶ 11.3.]

- Stated that Plaintiff "has a difficult time accepting constructive criticism. He should understand when given advice or suggestions, they are given in order to better our agency as a whole." [SOF, ¶ 11.4.]

- Stated that Plaintiff "can seem to be excessive in asking for equipment, assignment changes, etc." [SOF, ¶ 11.5.]

On July 1, 2014, Plaintiff's second performance review was issued. [SOF, ¶ 13.]  That review:

- Rated Plaintiff's performance as "below average" for reliability and dependability. [SOF, ¶ 13.2.]

- Stated that Plaintiff "is not willing to work extra shifts / events when opportunities arise and was reluctant to assist in providing coverage during the Baxter Springs tornado response." [SOF, ¶ 13.4.]

- Stated that Plaintiff "should recognize the importance of teamwork, which includes helping co-workers when they need time off or pitching in when an event occurs requiring all hands on deck." [SOF, ¶ 13.5.]

- Rated Plaintiff's performance as "below average" for working relationships. [SOF, ¶ 13.3.]

- Stated that Plaintiff "struggles with creating strong relationships with co-workers, which does not go towards creating an overall positive work environment." [SOF, ¶ 13.6.]

- Stated that Plaintiff "needs to work on his relationships with other Sheriff's Officer personnel in each division." [SOF, ¶ 13.7.]

On September 5, 2014, Plaintiff was issued a written reprimand for violation of the Rules of Conduct Policy and the Agency Driving Policy. [SOF, ¶ 15.3.]  Additionally, Plaintiff was consistently reprimanded for poor performance as outlined on pages 35 through 38 of *Defendants' Joint Motion for Summary Judgment* [SOF, ¶¶ 12, 14, 15-21, 22.4-22.9.]  Again, Plaintiff's vague and generalized assertion cannot establish causation.  No genuine issue of material fact remains as to why Plaintiff was terminated: poor performance – a legitimate, non-discriminatory reason.  Furthermore, his blanket statement that Sheriff's Groves concerns "were based on unsupported assumptions, speculation, and unsubstantiated 'chatter' or hearsay" is not reflective of the information presented in Plaintiff's personnel file and evidenced above.

**F.**   **Plaintiff has failed to adequately respond to Defendants' argument regarding any claim for workers' compensation retaliation.**

Plaintiff's response fails to address Defendants' two-part argument that Title VII does not contemplate a cause of action for workers' compensation retaliation and that no such assertion has been made under State law.  Rather, Plaintiff merely doubles down on his "workers' compensation retaliation" claim by asserting he was discriminated against *because of his race* after he decided to pursue a worker's compensation claim.  This is - in and of itself – an admission that Plaintiff's claim is not one for workers' compensation retaliation.  Any assertion to the contrary is without basis.

**G.**   **Plaintiff's claims for violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 should be dismissed.**

In *Baker v. Birmingham Bd. of Education*, the plaintiff's "complaint alleged that the Board violated his rights under 42 U.S.C. § 1981, *by and through* 42 U.S.C. § 1983[.]"[29] Because the plaintiff's claim properly alleged a § 1981 violation *by and through* § 1983, the Eleventh Circuit determined that "[w]ere it not for the 1991 Act of Congress, [plaintiff's]

---

[29] *Baker v. Birmingham Bd. of Educ.,*531 F.3d 1336, 1336 (11th Cir. 2008) (emphasis added).

complaint would fail to state a claim under § 1983."[30]  As such, they applied § 1658's 4-year statute of limitations."[31]  The same result would be inappropriate here.

Plaintiff Complaint fails to allege that the BOCC and Sheriff Groves violated his rights under 42 U.S.C. § 1981 *by and through* 42 U.S.C. § 1983, as is required under *Jett v. Dallas Indep. Sch. Distr.*[32]  Rather, in Plaintiff's own words, he brings "counts III, IV, and V, which respectively allege violation of § 1981 (as amended by the Civil Rights Act of 1991), violation of § 1983 (procedural due process), and violation of § 1983 (substantive due process)."[33]  This is inconsistent, and arguably insufficient, under *Baker,*[34] as cited to by this Court in *Robinson v. City of Arkansas City, Kan.*[35]  Rather, because Plaintiff's brings his §1981 and §1983 separately and distinctly, they must be treated and analyzed as such.

1.      Plaintiff's stand-alone § 1981 claim.

Even assuming Plaintiff is correct in asserting that § 1658's 4-year statute of limitations is applicable to this claim, Plaintiff's response has conceded that a § 1983 claim is the sole means for a plaintiff to pursue a § 1981 claim against a state actor.  As such, summary judgment must be granted as to Plaintiff's stand-alone § 1981 claim.

2.      Plaintiff's stand-alone § 1983 claims.

---

[30] *Id.*, at 1338.
[31] *Id.*
[32] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).
[33] Doc. 113, Plaintiff's RIO to Defendants' Joint MSJ, pp. 37-38.
[34] *Baker,* 531 F.3d at 1336.
[35] *Robinson v. City of Arkansas City, Kan.*, 896 F. Supp.2d 1020, 1041 (D. Kan. 2012).

Section 1983 does not have a statute of limitations provision and was not enacted or amended after December 1, 1990. Indeed, the District of Kansas has regularly applied a two-year statute of limitations to Title VI and § 1983 claims. For instance, in *Dockery v. Unified School Dist. No. 231*, Judge Lungstrum held as follows:

> It is well-settled that state statutes of limitations applicable to general personal injury claims supply the limitations period for Title VI and § 1983 claims. Here, the Kansas two year statute of limitations applies to the Title VI and § 1983 claims of discrimination presented ... and these claims accrued under federal law when the plaintiff kn[e]w or should have know[n] about them.[36]

As such, summary judgment must be granted as to Plaintiff's stand-alone § 1983 claims.

## IV.    Conclusion.

For the reasons set forth above, Defendants Board of County Commissioners of Cherokee County and David M. Groves respectfully request that this Court grant summary judgment in their favor and against Plaintiff Brandon L. Johnson on the entirety of Plaintiff's claims against Defendants, and for such other and further relief as the Court deems to be reasonable, appropriate, and just.

---

[36] *Dockery v. Unified School Dist. No. 231*, 382 F.Supp.2d 1234, 1244 (D. Kan. 2005) (internal citations omitted).

Respectfully submitted,

**Case Linden P.C.**


s/ Kevin D. Case
Kevin D. Case, MO 41491; KS 14570
Jennifer G. Ahlbrandt, MO 67434; KS 26980
2600 Grand Boulevard, Suite 300
Kansas City, MO  64108
Tel:   (816) 979-1500
Fax:  (816) 979-1501
kevin.case@caselinden.com
jennifer.ahlbrandt@caselinden.com
Attorneys for Defendant


### Certificate of Service

        I hereby certify that on October 25, 2019, a true and correct copy of the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Christopher J. Lucas
Norris Keplinger Hicks & Welder, L.L.C.
32 Corporate Woods, Suite 750
9225 Indian Creek Parkway
Overland Park, KS  66210
Attorney for Plaintiff


s/ Kevin D. Case
Kevin D. Case